ROB BONTA
Attorney General of California
DAVID G. ALDERSON
Supervising Deputy Attorney General
State Bar No. 231597
JESSICA A. BONITZ
Deputy Attorney General
State Bar No. 348048
 1515 Clay Street, 20th Floor
 P.O. Box 70550
 Oakland, CA  94612-0550
 Telephone:  (510) 879-0003
 Fax:  (510) 622-2270
 E-mail:  David.Alderson@doj.ca.gov
 E-mail:  Jessica.Bonitz@doj.ca.gov
*Attorneys for Defendants*
*California Coastal Commission et al.*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA COASTAL COMMISSION ET AL., <br><br> Defendants. | 2:24-cv-08893 SB (SKx) <br><br> **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: March 14, 2025 <br> Time: 8:30 a.m. <br> Courtroom: 6C <br> Judge: The Honorable Stanley Blumenfeld, Jr. <br> Trial Date: Not set. <br> Action Filed: 10/15/2024 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 14, 2025, at 8:30 a.m., or as soon thereafter as the matter may be heard before the Honorable Stanley Blumenfeld, Jr. in Courtroom 6C of the United States District Court for the Central District of California, located at the First Street Courthouse, 350 W. First Street, Los Angeles,

1  California 90012, Defendant California Coastal Commission, Defendants Paloma

2  Aguirre, Dayna Bochco, Linda Escalante, Meagan Harmon, Susan Lowenberg, Ann

3  Notthoff, Effie Turnbull-Sanders, Roberto Uranga, Kate Huckelbridge, and Cassidy

4  Teufel, all sued in their official capacities, and Defendants Caryl Hart, Justin

5  Cummings, Catherine Rice, Mike Wilson, and Gretchen Newsom, all sued in their

6  official and personal capacities, will and hereby do move the Court for an order

7  dismissing Plaintiffs' First Amended Complaint ("FAC") under Rule 12(b)(1) and

8  12(b)(6) of the Federal Rules of Civil Procedure. Defendants' Rule 12(b)(1) motion

9  is brought as a facial attack.

10  Defendants move for dismissal on the following grounds. First, Counts I, II,

11  III, and IV of the FAC are defective for lack of constitutional and prudential

12  ripeness. Second, Count V is defective for lack of constitutional standing. Third,

13  Count VI is defective for lack of constitutional standing, and for failure to state a

14  claim, particularly the failure to allege facts showing a constitutionally protected

15  interest and deprivation thereof. Fourth, all Counts in the FAC are barred against

16  Defendant California Coastal Commission under the Eleventh Amendment and

17  principles of sovereign immunity. Fifth, Counts V and VI are barred against all the

18  individual Defendants in their official capacities under the Eleventh Amendment

19  and principles of sovereign immunity.

20  This motion is based on this Notice of Motion and Motion, the accompanying

21  Memorandum of Points and Authorities, the Request for Judicial Notice and

22  exhibits thereto, the Declaration of Cassidy Teufel, the Declaration of Jessica

23  Bonitz, any Reply Memorandum of Points and Authorities, and such other matters

24  as may properly come before the Court.

25  ///

26  ///

27  ///

28  ///

1      This motion is made following the conference of counsel pursuant to Local

2   Rule 7-3 which took place on December 13, 2024 and January 7, 2025.

3   Dated:  January 14, 2025                    Respectfully submitted,

4                                               ROB BONTA
                                                Attorney General of California
5

6
                                                /s/ David G. Alderson
7                                               DAVID G. ALDERSON
                                                Supervising Deputy Attorney General
8                                               JESSICA A. BONITZ
                                                Deputy Attorney General
9                                               *Attorneys for Defendants California*
                                                *Coastal Commission et al.*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

STATEMENT OF THE CASE ..............................................................................2

    I.    Regulatory Background ..............................................................2

    II.   Factual Background ...................................................................4

    III.  Procedural Background..............................................................7

LEGAL STANDARDS ........................................................................................7

ARGUMENT.........................................................................................................8

    I.    SpaceX's Claims Regarding Potential Requirements to Submit a Consistency Certification or Obtain a Coastal Development Permit Are Not Ripe ..............................................8

        A.   Constitutional and Prudential Ripeness Principles....................8

        B.   SpaceX's Claim Regarding a Potential Consistency Certification (Count I) Is Not Ripe............................................10

        C.   SpaceX's Claims Regarding a Potential Coastal Development Permit (Counts II, III, and IV) Are Not Ripe.....11

    II.   SpaceX's First Amendment Retaliation Claim (Count V) Fails for Lack of Standing .................................................................13

    III.  SpaceX's Procedural Due Process Claim (Count VI) Is Legally Deficient...................................................................................15

        A.   SpaceX Lacks Standing to Assert a Procedural Due Process Claim ............................................................................15

        B.   SpaceX's Factual Allegations Also Fail to State a Procedural Due Process Claim .............................................17

    IV.  Sovereign Immunity Precludes the FAC As to the Commission and Counts V and VI as to the Individual Defendants in Their Official Capacities...................................................................19

CONCLUSION....................................................................................................20

i

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Air Brake Sys., Inc. v. Mineta*
   357 F.3d 632 (6th Cir. 2004) ............................................................... 12

*Alden v. Maine*
   527 U.S. 706 (1999) ........................................................................... 19

*Am. Petroleum Inst. v. Knecht*
   456 F. Supp. 889 (C.D. Cal. 1978) ..................................................... 3

*Arizona All. for Retired Ams. v. Mayes*
   117 F.4th 1165 (9th Cir. 2024) ........................................................... 9

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................... 8

*Beck v. California*
   479 F. Supp. 392 (C.D. Cal. 1979) ................................................... 19

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................... 7

*Chandler v. State Farm Mut. Auto. Ins. Co.*
   598 F.3d 1115 (9th Cir. 2010) ........................................................... 8

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*
   527 U.S. 666 (1999) ......................................................................... 18

*Dep't of Educ. v. Brown*
   600 U.S. 551 (2023) ......................................................................... 15

*Ex parte Young*
   209 U.S. 123 (1908) ......................................................................... 20

*Fed. Trade Comm'n v. Standard Oil Co. of Cal.*
   449 U.S. 232 (1980) ................................................................... 11, 13

*Howlett By & Through Howlett v. Rose*
   496 U.S. 356 (1990) ......................................................................... 19

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3
4

*Jones v. L.A. Central Plaza*
    74 F.4th 1053 (9th Cir. 2023) ................................................................ 8

5
6

*Knievel v. ESPN*
    393 F.3d 1068 (9th Cir. 2005) .............................................................. 4

7
8

*Lujan v. Defs. of Wildlife*
    504 U.S. 555 (1992) ............................................................................ 15

9
10

*Lund v. Cowan*
    5 F.4th 964 (9th Cir. 2021) ................................................................ 20

11

*Lutge v. Harrington*
    No. 23-15057, 2024 WL 654915 (9th Cir. Feb. 16, 2024) ............... 19

12
13

*McAllister v. Cal. Coastal Comm'n*
    169 Cal. App. 4th 912 (Ct. App. 2008) ......................................... 4, 11

14
15

*Minn. State Bd. for Cmty. Colls. v. Knight*
    465 U.S. 271 (1984) ............................................................................ 19

16
17

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*
    429 U.S. 274 (1977) ............................................................................ 19

18
19

*Murthy v. Missouri*
    603 U.S. 43 (2024) .............................................................................. 15

20
21

*Native Am. Arts, Inc. v. Specialty Merch. Corp.*
    451 F. Supp. 2d 1080 (C.D. Cal. 2006) ......................................... 15, 16

22

*Navajo Nation v. Dep't of the Interior*
    876 F.3d 1144 (9th Cir. 2017) ............................................................ 16

23
24

*Ohio Forestry Ass'n, Inc. v. Sierra Club*
    523 U.S. 726 (1998) ............................................................................ 12

25
26

*Pac. Palisades Bowl Mobile Ests., LLC v. City of L.A.*
    55 Cal. 4th 783 (Cal. 2012) .................................................................. 3

27
28

*Peace Ranch, LLC v. Bonta*
    93 F.4th 482 (9th Cir. 2024) ................................................................. 9

# TABLE OF AUTHORITIES
**(continued)**

Page

*Pennhurst State Sch. & Hosp. v. Halderman*
    465 U.S. 89 (1984) ...................................................................... 19

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*.
    506 U.S. 139 (1993) ...................................................................... 20

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*
    324 F.3d 726 (D.C. Cir. 2003) ..................................................... 12

*Sato v. Orange Cnty. Dep't of Educ.*
    861 F.3d 923 (9th Cir. 2017) .......................................................... 8

*Seattle Pac. Univ. v. Ferguson*
    104 F.4th 50 (9th Cir. 2024) ........................................................... 9

*Shanks v. Dressel*
    540 F.3d 1082 (9th Cir. 2008) ..................................................... 17

*Stannard v. State Ctr. Cmty. Coll. Dist.*
    733 F. Supp. 3d 946 (E.D. Cal. 2024) ......................................... 20

*Susan B. Anthony List v. Driehaus*
    573 U.S. 149 (2014) ........................................................................ 9

*Thomas v. Anchorage Equal Rts. Comm'n*
    220 F.3d 1134 (9th Cir. 2000) ..................................................... 12

*Trump v. New York*
    592 U.S. 125 (2020) (per curiam) ............................................ 9, 10

*Tuchman v. Connecticut*
    185 F. Supp. 2d 169 (D. Conn. 2002) ......................................... 18

*Twitter, Inc. v. Paxton*
    56 F.4th 1170 (9th Cir. 2022) .................................................... 8, 13

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*
    535 U.S. 635 (2002) ...................................................................... 20

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*
    5 F.4th 997 (9th Cir. 2021) .......................................................... 17

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*WMX Techs., Inc. v. Miller*
    197 F.3d 367 (9th Cir. 1999) (en banc) ........................................................ 18, 19

*Wright v. Serv. Emps. Int'l Union Loc. 503*
    48 F.4th 1112 (9th Cir. 2022) ........................................................ 16

**STATUTES**

Federal Rules of Civil Procedure
    12(b)(1) ........................................................ 8
    12(b)(6) ........................................................ 7

United States Code, Title 16
    § 1453(1) ........................................................ 2
    § 1455(d) ........................................................ 2
    § 1456(c)(1)(A) ........................................................ 2
    § 1456(c)(1)(C) ........................................................ 2
    § 1456(c)(3)(A) ........................................................ 3

California Public Resource Code
    § 30008 ........................................................ 3
    § 30315(b) ........................................................ 4, 10, 11
    § 30315.1 ........................................................ 10, 11
    § 30330 ........................................................ 3
    § 30600(a) ........................................................ 3
    § 30809 ........................................................ 3
    § 30809(b) ........................................................ 4

**REGULATIONS**

Code of Federal Regulations, Title 15
    § 930.35 ........................................................ 5
    § 930.36 ........................................................ 2
    § 930.41(a) ........................................................ 2
    § 930.43(d) ........................................................ 1, 3, 14
    § 930.52 ........................................................ 3

# TABLE OF AUTHORITIES
## (continued)

Page

§ 930.53 ................................................................................................................10
§ 930.53(c) ...........................................................................................................10
§ 930.54 ................................................................................................................10
§ 930.57 ..................................................................................................................3
§ 930.62 ..................................................................................................................3
§ 930.63 ..................................................................................................................3
§ 930.120 *et seq.* ...................................................................................................3

California Code of Regulations, Title 14
§ 13096(a)...............................................................................................................4
§ 13181(a)...........................................................................................................3, 4
§ 13191(a)............................................................................................................... 4

**INTRODUCTION**

The United States Department of the Air Force ("Air Force") proposed a project to allow Plaintiff Space Exploration Technologies Corp. ("SpaceX") to launch up to 50 rockets per year from the Vandenberg Space Force Base ("Base") in Santa Barbara County. As part of the environmental review for the project, the Air Force submitted a determination to the California Coastal Commission ("Commission") under the Coastal Zone Management Act ("CZMA") that the project is consistent with California's coastal policies. The Commission objected to the Air Force's consistency determination, but the Air Force, as allowed by federal regulations, chose to proceed with the project over the Commission's objection. *See* 15 C.F.R. § 930.43(d) (Dec. 8, 2000).

Even though the Air Force makes the final decision under the regulations and is proceeding with the project, SpaceX brings this lawsuit, challenging the Commission's decision on constitutional grounds. SpaceX seeks declaratory and injunctive relief against the Commission. SpaceX also seeks damages, including punitive damages, from five of the Commissioners who took part in the Commission's decision, three of whom concurred with the Air Force's consistency determination.

SpaceX further alleges that, for its launches from the Base, the Commission has unlawfully required it to (1) submit a consistency certification to the Commission under the CZMA (as required for certain federally licensed activities), and (2) obtain a coastal development permit from the Commission under California's Coastal Act. SpaceX, and the Air Force, contend that SpaceX's launch program is a "federal agency activity" under the CZMA, and these potential requirements do not apply to such activities. SpaceX seeks declaratory and injunctive relief prohibiting these potential obligations.

The Commission strongly supports the rights and protections guaranteed under the First Amendment and is committed to following it. It takes SpaceX's First

1

Amendment allegations, and its other claims, seriously. Nevertheless, Article III limits the power of federal courts to deciding actual cases and controversies. Under well-established judicial precedent, SpaceX's claims are not justiciable. SpaceX fails to allege an injury-in-fact from the Commission's objection to the Air Force's consistency determination—an objection that the Air Force chose to disregard, as federal law allows it to do. Additionally, any potential future requirement for a consistency certification is speculative and contingent on approvals by the federal government that SpaceX has not and cannot allege have occurred. Any potential requirement for a state coastal development permit is speculative as well. For these and other reasons below, SpaceX's lawsuit should be dismissed.

## STATEMENT OF THE CASE

### I.    REGULATORY BACKGROUND

The Coastal Zone Management Act ("CZMA") authorizes the United States Secretary of Commerce ("Secretary") to review and approve coastal management programs submitted by the states. 16 U.S.C. § 1455(d). The CZMA, as relevant here, sets forth two categories of consistency review with approved coastal management programs.

First, when a "federal agency activity" affects any coastal use or resource in the "coastal zone," as defined in the CZMA, the federal agency must submit a "consistency determination" to the affected State for its review. 16 U.S.C. § 1456(c)(1)(C); 15 C.F.R. § 930.36 (Dec. 8, 2000); *see* 16 U.S.C. §§ 1453(1) (definition of "coastal zone"). For this submission, the federal agency must determine whether the activity will be fully consistent with the enforceable policies of the State's program. 16 U.S.C. § 1456(c)(1)(A); 15 C.F.R. § 930.36 (Dec. 8, 2000). The State may concur or object to the determination. 15 C.F.R. § 930.41(a) (Dec. 8, 2000). If the State objects, the federal agency may proceed with the project if it concludes that "its proposed action is fully consistent with the enforceable

policies of the [State's] management program" or if it concludes that existing law prohibits full consistency. *Id.* § 930.43(d) (Dec. 8, 2000).

Second, when an applicant seeks a license or permit from a federal agency to conduct an activity that affects coastal resources, the applicant must provide the agency and the affected State with a "consistency certification" if the license or permit activity is subject to State review. 16 U.S.C. § 1456(c)(3)(A); 15 C.F.R. §§ 930.52 (defining applicant), 930.53 & 930.54 (Dec. 8, 2000) (procedures for listed and unlisted federal license or permit activities), § 930.57 (Dec. 8, 2000). The applicant must certify "that the proposed activity complies with the enforceable policies of the state's approved program and that such activity will be conducted in a manner consistent with the program." 16 U.S.C. § 1456(c)(3)(A); *see* 15 C.F.R. § 930.57 (Dec. 8, 2000). The State may concur or object to the certification, and the Secretary may override an objection. 16 U.S.C. § 1456(c)(3)(A); *see* 15 C.F.R. §§ 930.62 & 930.63, 930.120 *et seq.* (Dec. 8, 2000).

California has a federally approved management program, and the program includes provisions in the California Coastal Act of 1976. Cal. Pub. Res. Code § 30008; *Am. Petroleum Inst. v. Knecht*, 456 F. Supp. 889, 893-94 (C.D. Cal. 1978), *aff'd*, 609 F.2d 1306 (9th Cir. 1979). The Commission is one of California's designated coastal zone-planning and management agencies and may exercise all powers authorized in the CZMA. Cal. Pub. Res. Code § 30330.

Apart from the CZMA, the California Coastal Act requires that "any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit" ("CDP"). *Pac. Palisades Bowl Mobile Ests., LLC v. City of L.A.*, 55 Cal. 4th 783, 794 (Cal. 2012); *see* Cal. Pub. Res. Code § 30600(a).

The Commission's Executive Director has the discretion to enforce the CDP requirement. Cal. Pub. Res. Code § 30809; Cal. Code Regs., tit. 14, § 13181(a). For instance, "[i]f the executive director determines that any person . . . is threatening to undertake [a violation], the executive director *may* issue an order." Cal. Pub. Res.

3

Code § 30809(a) (Executive Director cease and desist order) (emphasis added).
Similarly, the Executive Director has discretion to bring a proposed enforcement
order before the Commission for its consideration. Cal. Code Regs., tit. 14, §§
13181(a) (the Executive Director "*may* commence" an enforcement hearing before
the Commission) (emphasis added), 13191(a) (same). The Executive Director must
provide an alleged violator with notice of intent to commence enforcement
proceedings as a prerequisite to any formal administrative enforcement action
(unless the alleged violator waives this notice requirement). *See* Cal. Pub. Res.
Code § 30809(b) (Executive Director cease and desist order); Cal. Code Regs., tit.
14, §§ 13181(a) (Commission cease and desist order), 13191(a) (Commission
restoration order).

     An action by the Commission requires a majority vote. Cal. Pub. Res. Code §
30315(b). Likewise, "[a]doption of findings for any action taken by the
[C]ommission requires a majority vote of the members from the prevailing side."
*Id.* § 30315.1. The Commission's findings must be in writing. *See McAllister v.
Cal. Coastal Comm'n*, 169 Cal. App. 4th 912, 941 (Ct. App. 2008); Cal. Code
Regs., tit. 14, § 13096(a).

## II.    FACTUAL BACKGROUND[1]

     "For decades, the Air Force has treated commercial space operations by
SpaceX and other commercial operators at the Base as 'federal agency activity'
under the CZMA and determined that launches are consistent to the maximum
extent practicable with the California coastal management program." FAC ¶ 69.

---

[1] Defendants recount the facts as alleged in SpaceX's First Amended
Complaint ("FAC"), facts subject to judicial notice, and facts incorporated by
reference in the FAC. Defendants do not admit the truth of allegations in the FAC.
As set forth more fully in Defendants' Request for Judicial Notice ("RJN"),
Defendants request that the Court consider Exhibits A, B, and C to the RJN as
incorporated by reference into the FAC, especially Exhibit C, as it forms much of
the basis for the claims in the FAC. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th
Cir. 2005).

From 2010 through May 2023, the Commission concurred in determinations by the Air Force that projects involving SpaceX's Falcon 9 launch program at the Base would not have adverse coastal effects. FAC ¶¶ 76, 79, 80. *See* 15 C.F.R. § 930.35 (Dec. 8, 2000) (negative determinations for federal agency activities). In a May 5, 2023 concurrence with the Air Force's negative determination, the Commission's Executive Director, Defendant Kate Huckelbridge, concurred that a project increasing the launch cadence from six to 36 annual launches would not adversely affect coastal zone resources. FAC ¶¶ 79, 80 & Ex. H at 1, 5.

Shortly thereafter, the Commission – according to a letter to the Air Force from Defendant Cassidy Teufel, who is the Commission's Deputy Director of its Energy, Oceans, and Federal Consistency Division – received information about adverse impacts to public coastal access and recreation from the 36-launch cadence increase that the Air Force had not identified in its negative determination. FAC Ex. I at 2. The Commission therefore asked the Air Force to submit a consistency determination for the project for the Commission's review. *Id*. at 3.

After the Air Force submitted the consistency determination for the 36-launch cadence increase in March 2024, a disagreement came to light between Commission staff and some Commissioners, on one hand, and the Air Force, on the other hand, about whether the project was a federal agency activity or a private activity. FAC ¶¶ 84-85, 88-91. Nonetheless, at the Commission's public hearing on August 8, 2024, the Commission concurred in the Air Force's consistency determination. FAC ¶ 92. The staff report adopted by the Commission for its findings stated that Commission staff was evaluating the "Commission's authority to review the proposed activity under the Coastal Act and Coastal Zone Management Act," and "[p]ending the results of those efforts, SpaceX *may* be required to seek the Commission's authorization through submittal of a coastal development permit application *and/or* consistency certification." RJN Ex. A at 12 (emphasis added). The report further stated that "future projects" will "be

5

1    considered on a case-by-case basis and different review approaches will be used

2    when appropriate." RJN Ex. A at 13.

3         SpaceX alleges that on September 13, 2024, Mr. Teufel, in a call with SpaceX

4    and in several emails, "demanded" that SpaceX obtain a CDP for future commercial

5    launches, "threatened enforcement," and stated that the Commission will not agree

6    to cadence increases if SpaceX does not obtain a CDP. FAC ¶ 96. In a subsequent

7    letter dated September 27, 2024, to SpaceX, Mr. Teufel, after explaining

8    Commission staff's position that the Falcon 9 launch program at the Base is not a

9    federal agency activity, "*requests* that SpaceX submit a CDP application." FAC Ex.

10   O at 2 (emphasis added).

11        Also on September 27, 2024, in advance of the Commission's October 10,

12   2024, public meeting, Commission staff published its report in response to the Air

13   Force's consistency determination for another project to increase the cadence

14   further from 36 to 50 launches per year. RJN Ex. B; FAC ¶ 97. The staff report

15   recommended that the Commission concur with the consistency determination. RJN

16   Ex. B at 5. Still, the report stated that "[i]t is the Commission's position that

17   SpaceX's space launch activities are not a government program." *Id.* at 7. Staff

18   summarized its discussions with SpaceX and the Air Force regarding staff's

19   position that a CDP is needed. *Id.* at 7-8. The staff report further stated that staff is

20   "separately pursuing application of other aspects of its Coastal Zone Management

21   Act authority." *Id.* at 8. Staff concluded: "Pending the results of these efforts, it is

22   Commission staff's expectation that SpaceX will be required to seek the

23   Commission's authorization through submittal of a consistency certification and/or

24   coastal development permit application." *Id.* at 8.

25        On October 10, 2024, the Commission, during its public meeting, considered

26   the Air Force's consistency determination for the project for SpaceX's Falcon 9

27   launch program to conduct up to 50 launches per year at the Base. RJN Ex. C; FAC

28   ¶ 99. Following testimony by Commission staff, the Air Force, SpaceX, and

members of the public, and following discussion and deliberation by the Commissioners, the Commission voted 6-4 not to concur with the consistency determination. RJN Ex. C at 124:20-25, 130:14. Voting not to concur were individual Defendants Chair (and Commissioner) Hart, Commissioners Aguirre, Bochco, Escalante, and Uranga, and Alternate Commissioner Newsom; voting to concur were Defendants Commissioners Cummings, Rice, Wilson, and Lowenberg. RJN Ex. C at 126-30; FAC ¶ 104.

On November 1, 2024, the Air Force informed the Commission that it was proceeding with the project notwithstanding the Commission's objection to the consistency determination and would conduct up to 14 additional launches during the last two months of 2024. FAC ¶ 107.

### III.  PROCEDURAL BACKGROUND

On October 15, 2024, SpaceX filed the above-entitled lawsuit for declaratory and injunctive relief against the Commission and fifteen individuals in their official capacities. The individual Defendants include the twelve Commissioners, Alternate Commissioner Newsom (who participated in the Commission's October 10, 2024, meeting), Executive Director Huckelbridge and Mr. Teufel. (Dkt No. 1.) On November 26, 2024 – after the Air Force said it was moving forward with the annual increase in SpaceX launches at the Base – SpaceX filed a First Amended Complaint ("FAC"). (Dkt No. 31.) The FAC contains the same six Counts as the original complaint and the same Defendants but adds claims for compensatory, nominal, and punitive damages against five of the individual Defendants in their personal capacities.

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Id*. (quotations and citation omitted).

The same standard applies to survive a Rule 12(b)(1) motion to dismiss, brought as a facial attack, for lack of subject matter jurisdiction. *Jones v. L.A. Central Plaza*, 74 F.4th 1053, 1056-1058 & n.1 (9th Cir. 2023). The burden of proof is on the party asserting federal subject-matter jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Finally, "[a] sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion. *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).

## ARGUMENT

### I. SPACEX'S CLAIMS REGARDING POTENTIAL REQUIREMENTS TO SUBMIT A CONSISTENCY CERTIFICATION OR OBTAIN A COASTAL DEVELOPMENT PERMIT ARE NOT RIPE

Counts I through IV seek judicial intervention before SpaceX is potentially required to submit any consistency certification (Count I) or obtain any CDP (Counts II-IV). These claims are brought against the Commission and the individual Defendants in their official capacities and seek injunctive and declaratory relief. These claims are not ripe for judicial resolution.

#### A. Constitutional and Prudential Ripeness Principles

"The constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (quotations and citations omitted). "Whether framed as an issue of standing or ripeness, an injury must involve an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quotations and citations omitted). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there

8

is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotations and citation omitted). "[T]he case must be 'ripe'—not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam) (quotations and citation omitted).

For "pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent," "a plaintiff satisfies the injury-in-fact requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 158-59 (quotations and citation omitted). The "threat of future enforcement must be substantial." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487, 490 (9th Cir. 2024) (quotations and citation omitted). Factors the Ninth Circuit considers include "(1) whether plaintiffs have articulated a concrete plan to violate the law in question, (2) whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and (3) the history of past prosecution or enforcement under the challenged statute." *Arizona All. for Retired Ams. v. Mayes*, 117 F.4th 1165, 1181-82 (9th Cir. 2024) (quotations and citation omitted). While the element "often rises or falls with the enforcing authority's willingness to disavow enforcement," "we cannot go so far as to say that a plaintiff has standing whenever the Government refuses to rule out use of the challenged provision." *Peace Ranch*, 93 F.4th at 490 (quotations and citations omitted).

Unlike constitutional ripeness, "[p]rudential ripeness is discretionary." *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 65 (9th Cir. 2024) (citation omitted). The two "overarching considerations" are "the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration." *Id.* (quotations and citations omitted).

## B. SpaceX's Claim Regarding a Potential Consistency Certification (Count I) Is Not Ripe

SpaceX fails to allege facts establishing any of the criteria for constitutional ripeness. The main defect is the Falcon 9 launch program does not presently fall within either of the classes of activities for which a consistency certification is required. As the FAC admits, the launch program is not a listed license or permit activity in California's coastal management program, nor is it an unlisted federal license or permit activity approved for review by the National Oceanic and Atmospheric Association ("NOAA"). FAC ¶ 117; *see* 15 C.F.R. §§ 930.53 & 930.54 (procedures for listed and unlisted activities), 930.11(f) (defining Director of NOAA) (Dec. 8, 2000).

The FAC is also devoid of allegations of any notifications or other steps taken by the Commission, much less approvals by NOAA, that would trigger a requirement for a consistency certification for the Falcon 9 program. *See* 15 C.F.R. §§ 930.53(c) & 930.54(a)-(b) (Dec. 8, 2000) (procedures for listed and unlisted activities), 923.80(b) & 923.84(d) (Aug. 6, 2019) (procedures for amending State management program). Thus, any potential consistency certification requirement, let alone enforcement of it by the Commission, is "dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump*, 592 U.S. at 131 (citation omitted).

Although SpaceX alleges the Commission "demanded" a consistency certification at the Commission's October 10, 2024, hearing (FAC ¶ 158), that is a legal conclusion and an incorrect characterization of the Commission's action at that hearing. The Commission only voted not to concur with the Air Force's consistency determination for the 50-launch cadence increase project. RJN Ex. C at 124:20-25; 126-30. The Commission can only act by majority vote (Cal. Pub. Res. Code §§ 30315(b), 30315.1), and it did not vote to demand a consistency certification (RJN Ex. C).

Count I also does not fulfill the requirements for prudential ripeness. In addition to the above reasons, the court should decline jurisdiction because it risks entangling this proceeding with the process and efforts by federal agencies, including NOAA, to decide, if at all, whether SpaceX's launch program should be subject to a consistency certification requirement. *See Fed. Trade Comm'n v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980) ("the effect of the judicial review sought by Socal is likely to be interference with the proper functioning of the agency").

### C.    SpaceX's Claims Regarding a Potential Coastal Development Permit (Counts II, III, and IV) Are Not Ripe

SpaceX fails to demonstrate constitutional ripeness for Counts II through IV because it fails to allege facts of a substantial threat of enforcement of a potential CDP requirement. The Commission has not determined whether a CDP is required. Although the FAC alleges that Commission staff took the position in September 2024 that a CDP was needed, the Commission has not adopted or endorsed that position. *See McAllister*, 169 Cal. App. 4th at 952-53 (Commission makes the final determinations and is not bound by its staff's position). At the Commission's hearing on October 10, 2024, the Commission, as discussed above in Argument I.B, did not vote to require a CDP, and it can only act by majority vote. RJN Ex. C. *See* Cal. Pub. Res. Code §§ 30315(b), 30315.1. Statements by select Commissioners at the Commission's October 10, 2024 hearing (or any other Commission hearing) regarding a CDP requirement do not constitute an action or findings by the Commission either. *See* Cal. Pub. Res. Code §§ 30315(b), 30315.1. Furthermore, the FAC does not and cannot allege that Commission staff have issued any notice of violation or notice of intent to commence enforcement proceedings with respect to any CDP requirement.

The alleged statements by Mr. Teufel in paragraph 96 of the FAC do not show a genuine risk of imminent enforcement. Conclusory phrases like "threatened

11

enforcement" are the type of generic and formulaic labels devoid of factual content considered insufficient to be plausible. The FAC also makes no allegations (and cannot) that Mr. Teufel has authority to enforce a possible CDP requirement or somehow bind the Commission. *See Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 640, 643 (6th Cir. 2004) (letters from subordinate official without authority to make final determinations were not final agency action subject to review). On this same basis, the September 27, 2024 letter from Mr. Teufel to SpaceX does not evince a credible threat of enforcement. The letter also just "*requests* that SpaceX submit a CDP application." FAC Ex. O at 2 (emphasis added). *See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731-32 (D.C. Cir. 2003) (agency request for voluntary compliance had no legal consequences). Commission staff's September 27, 2024 report, after briefly recapping staff's communications with SpaceX and the Air Force, likewise demonstrates uncertainty about a potential CDP requirement. RJN Ex. B at 8 (see the phrasing "[p]ending the results," "expectation," and "and/or").

SpaceX's burden is further undercut by Mr. Teufel's representation at the Commission's October 10, 2024 hearing, regarding the status of the discussion between Commission staff and SpaceX about a possible CDP: "We're still very much in that space of discussing each party's perspectives, and hopefully trying to find an amicable path forward." RJN Ex. C at 59:7-9. Thus, whether and when any possible CDP requirement would be enforced is guesswork at this juncture. SpaceX falls well short of alleging a substantial threat of enforcement.

The prudential component of ripeness warrants declining jurisdiction as well. "[T]he absence of any real or imminent threat of enforcement, particularly criminal enforcement, seriously undermines any claim of hardship." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1142 (9th Cir. 2000). SpaceX also "will have ample opportunity later to bring its legal challenge at a time when harm is more imminent and more certain." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S.

726, 734 (1998). Additionally, judicial review now will "interfere[] with the proper functioning of the agency." *See Fed. Trade Comm'n*, 449 U.S. at 242-43 (discussing reasons to withhold judicial review due to the absence of a final agency decision).

## II.    SPACEX'S FIRST AMENDMENT RETALIATION CLAIM (COUNT V) FAILS FOR LACK OF STANDING

"To establish standing in a First Amendment retaliation case, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Twitter, Inc.*, 56 F.4th at 1174 (quotations and citations omitted). In *Twitter,* the Ninth Circuit applied this framework to Twitter's claim that the Texas Attorney General served Twitter with a Civil Investigative Demand ("CID") in retaliation for Twitter's decision to ban President Trump from its platform for life. *Id.* at 1172. The court held that Twitter's claim did not satisfy the "injury in fact" prong because Twitter "fails to allege any chilling effect on its speech or any other legally cognizable injury" due to the CID and the Texas AG's related investigation. *Id.* at 1175.

Like in *Twitter*, SpaceX's retaliation claim fails to allege an injury in fact, and SpaceX fails to allege the other necessary standing elements as well. For its claim against the Commission and the individual defendants in their official capacities, SpaceX rests its retaliation claim on the Commission's decision not to concur with the Air Force's consistency determination on October 10, 2024 for the project to allow SpaceX's Falcon 9 launch program to conduct up to 50 launches per year at the Base. FAC ¶ 147. SpaceX also rests its retaliation claim against Commissioners Hart and Newsom in their personal capacities on their votes not to concur. FAC ¶ 160.

SpaceX, however, does not allege any facts showing a legally cognizable injury, much less causation or redressability, due to the Commission's decision not

to concur, including the votes of Commissioners Hart and Newsom. Indeed, the Commission's decision was not the final decision under the CZMA's regulations. As the FAC admits in multiple places, the CZMA's regulations authorized the Air Force to proceed with the project over the Commission's objection to its consistency determination. FAC ¶¶ 44:20-21, 118:10-13; 126:25-28. The applicable regulation provides in pertinent part: "the Federal agency shall not proceed with the activity over a State agency's objection unless: . . . (2) the Federal agency has concluded that its proposed action is fully consistent with the enforceable policies of the management program, though the State agency objects." 15 C.F.R. § 930.43(d) (Dec. 8, 2000). Pursuant to this authority, the Air Force informed the Commission on November 1, 2024, that it was proceeding with the project. FAC ¶ 107. This decision was consistent with the Air Force's long-standing, uninterrupted position on space operations by SpaceX and other commercial operators at the Base. FAC ¶ 69.

In addition to the Commission's decision not to concur, SpaceX bases its retaliation claim against the Commission and the individual defendants in their official capacities on the Commission's supposed demand at the October 10, 2024 hearing that SpaceX submit a consistency certification and obtain a CDP. FAC ¶ 158. The FAC further alleges that at the hearing, Commissioners Hart, Newsom, Wilson, and Cummings demanded that SpaceX obtain a CDP, and these purported demands serve as a basis for SpaceX's retaliation claim against them in their personal capacities. FAC ¶ 161.

But as discussed above in Argument Section I.B & C, the Commission did not demand a consistency certification or a CDP at that hearing. The Commission can only act by majority vote, and it did not vote to require either obligation. For the same reason, the alleged demands by Commissioners Hart, Newsom, Wilson, and Cummings have no effect. The individual Commissioners have no independent authority to require a consistency certification or a CDP.

While SpaceX makes conclusory allegations of injury and damage, they are
not supported by any factual allegations and are insufficient to confer standing.
FAC ¶ 159. *See Native Am. Arts, Inc. v. Specialty Merch. Corp.*, 451 F. Supp. 2d
1080, 1082 (C.D. Cal. 2006) (conclusory allegations of injury in fact are
insufficient).

As SpaceX fails to allege any facts of an injury in fact arising from the
Commission's hearing on October 10, 2024, nor facts showing causation or
redressability, Count V should be dismissed. *See Murthy v. Missouri*, 603 U.S. 43,
61 (2024) ("'[P]laintiffs must demonstrate standing for each claim that they press'
against each defendant, 'and for each form of relief that they seek.'").

## III. SPACEX'S PROCEDURAL DUE PROCESS CLAIM (COUNT VI) IS LEGALLY DEFICIENT

### A. SpaceX Lacks Standing to Assert a Procedural Due Process Claim

Count VI asserts that the Commission and the individual defendants in their
official capacities, as well as Commissioners Hart, Cummings, Rice, Wilson, and
Newsom in their personal capacities, violated SpaceX's procedural due process
rights during the Commission's hearing on the Air Force's consistency
determination on October 10, 2024, and other unspecified proceedings. FAC ¶¶
169, 173. Count VI fails for lack of standing.

No injury in fact. To establish an injury in fact, SpaceX must show that it had
some "concrete interest" affected by the alleged deprivation of its procedural due
process rights. *See Dep't of Educ. v. Brown*, 600 U.S. 551, 562 (2023) ("the
'deprivation of a procedural right without some concrete interest that is affected by
the deprivation—a procedural right *in vacuo*—is insufficient to create Article III
standing.'"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572-573 & ns. 7 & 8 (1992)
(discussing concrete-interest requirement). A plaintiff must establish that "it is
'reasonably probable' that the challenged action threatens that concrete interest."

*Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1160 (9th Cir. 2017)
(citation omitted). The Ninth Circuit recently held that a plaintiff lacked standing to
assert a procedural due process claim because the plaintiff did not have a concrete
interest affected by the alleged deprivation. *Wright v. Serv. Emps. Int'l Union Loc.
503*, 48 F.4th 1112, 1120-21 (9th Cir. 2022), *cert. denied*, 143 S. Ct. 749 (2023).

    Here, SpaceX likewise fails to allege facts showing it had some "concrete
interest" affected by the alleged deprivation of its procedural due process rights.
Specifically, SpaceX has not alleged facts establishing that it is reasonably probable
that the primary challenged action – the Commission's decision not to concur in the
Air Force's consistency determination on October 10, 2024, for the project to allow
SpaceX's Falcon 9 launch program to conduct up to 50 launches per year at the
Base – threatened some concrete interest of SpaceX's. The lack of allegations in
this regard is hardly surprising. As discussed above in Argument Section II, the
Commission's decision not to concur was not the final decision under the CZMA's
regulations. As between the Commission and the Air Force, the Air Force was the
final decision-maker under the regulations. In line with its consistency
determination and its long-standing, unbroken position on space operations by
SpaceX and other commercial operators at the Base (FAC ¶ 69), the Air Force
elected to proceed with the project over the Commission's objection. FAC ¶ 107.
Although SpaceX makes conclusory allegations of injury and damage, they are not
supported by any factual allegations and are insufficient to confer standing. FAC ¶
172. *See Native Am. Arts, Inc.*, 451 F. Supp. 2d at 1082 (conclusory allegations of
injury in fact are insufficient).

    SpaceX's allegations of supposed demands by the Commission at the October
10, 2024 hearing – that SpaceX submit a consistency certification and obtain a CDP
(FAC ¶ 171) – do not assist it. As discussed above in Argument Sections I.B & C
and II, the Commission did not demand a consistency certification or a CDP at the
hearing, and the individual Commissioners had no ability to make such demands.

The FAC does not and cannot allege any "concrete interest" threatened by such alleged demands at the hearing.

While SpaceX rests its procedural due process claim on unspecified Commission proceedings besides the October 10, 2024 hearing (FAC ¶ 169), it similarly fails to allege any "concrete interest" threatened by such proceedings.

No causation or redressability. SpaceX's claim arises from the Commission's purported decision not to concur in the Air Force's – not SpaceX's – consistency decision. SpaceX must therefore "adduce facts showing that the choices of independent actors not before the court"—i.e., the Air Force—"have been or will be made in such manner as to produce causation and permit redressability of injury." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1013-14 (9th Cir. 2021) (quotations and citation omitted). "In such circumstances, involving independent actors, the Court has cautioned that 'standing is not precluded, but it is ordinarily substantially more difficult to establish.'" *Id*. (quotations and citation omitted).

SpaceX alleges no facts allowing the Court to find causation or redressability, especially considering that the Air Force had the final decision to proceed with the project and, in fact, did so.

**B.    SpaceX's Factual Allegations Also Fail to State a Procedural Due Process Claim**

To state a procedural due process claim, SpaceX must allege facts showing "the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quotations and citation omitted). SpaceX fails to allege facts showing (1) and (2).

No protected property interest or deprivation. SpaceX alleges it "has a constitutionally protected property interest in its business of launching Falcon 9 rockets on the Base." FAC ¶ 170. The Supreme Court foreclosed such an interest in

*Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999), holding that "'property' within the meaning of the Due Process Clause" does not include "business in the sense of *the activity of doing business*, or *the activity of making a profit*." *Id.* at 675. *See Tuchman v. Connecticut*, 185 F. Supp. 2d 169, 174 (D. Conn. 2002) (holding that conducting business "does not implicate a property interest for the procedural due process claim.")

Even assuming *arguendo* that SpaceX had such a protected property interest, it fails to allege any facts showing deprivation of that interest. The FAC merely asserts that the Commission has "interfered" with such interest. FAC ¶ 170. This conclusory allegation is insufficient to state a claim. The FAC is further devoid of any factual allegations of deprivation of a protected property interest by the five individual Defendants sued in their personal capacities. FAC ¶ 173.

No protected liberty interest or deprivation. SpaceX alleges that it has "constitutionally protected interests to petition the government, including proceedings before the Commission." FAC ¶ 169. By characterizing these interests as "liberty interests," SpaceX apparently attempts to assert a liberty interest in a First Amendment right to petition the government. *Id.*

SpaceX's supposed liberty interest is precluded by *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 372-73 (9th Cir. 1999) (en banc). There, the Ninth Circuit held that an application for a major use permit was not "a petition to 'the Government for a redress of grievances' under the First Amendment," because the application did not implicate the applicant's "associational or speech interests." *Id.* Likewise here, SpaceX does not allege that the Air Force's March 2024 and July 2024 consistency determinations (not even SpaceX's consistency determinations) that are the subject of the Commission's proceedings alleged in the FAC, implicated SpaceX's associational or speech interests. FAC Exs. J & P; FAC ¶¶ 83-99, 169. Accordingly, the Air Force's consistency determinations were not petitions to the Commission for a redress of grievances under the First Amendment and cannot somehow

constitute a protected liberty interest for SpaceX's procedural due process claim. *See WMX Techs. Inc.*, 197 F.3d at 372-73; *Lutge v. Harrington*, No. 23-15057, 2024 WL 654915, at *2 (9th Cir. Feb. 16, 2024) (following *WMX Techs*, *Inc.*).

SpaceX fails to allege facts showing deprivation of its purported liberty interest as well. FAC ¶¶ 169, 173. SpaceX cannot allege deprivation in any event. *See Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues.").

## IV. SOVEREIGN IMMUNITY PRECLUDES THE FAC AS TO THE COMMISSION AND COUNTS V AND VI AS TO THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES

First, sovereign immunity precludes the FAC as to the Commission because it is an arm of the State of California and does not consent to suit. There is no question that the Commission is an arm of the State of California. *See*, *e.g.*, FAC ¶ 2 (conceding that the Commission is an agency of the State of California); *Beck v. California*, 479 F. Supp. 392, 396 (C.D. Cal. 1979) (holding that the Coastal Commission is an arm of the State of California for purposes of sovereign immunity). There is also no question sovereign immunity applies to an "arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *see Alden v. Maine*, 527 U.S. 706, 713 (1999) (discussing sovereign immunity). Sovereign immunity applies "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It specifically immunizes "arms of the State" from "suit under § 1983." *Howlett By & Through Howlett v. Rose*, 496 U.S. 356, 365 (1990). Based on these well-established principles, the court in *Beck* dismissed a federal section 1983 lawsuit against the Commission. *Beck*, 479 F. Supp. at 396.

Second, sovereign immunity precludes Counts V and VI in the FAC as to the fifteen individual defendants sued in their official capacities. *See Lund v. Cowan*, 5 F.4th 964, 969 (9th Cir. 2021) ("State officials sued in their official capacities are generally entitled to Eleventh Amendment immunity."). Although there is an exception to Eleventh Amendment sovereign immunity for state officials under the *Ex parte Young* doctrine, that exception is narrow and inapplicable here. *Ex parte Young*, 209 U.S. 123, 159-60 (1908). To determine whether the exception applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (citations omitted).

Here, Counts V and VI seek impermissible retrospective declaratory and injunctive relief as to the legality of the Commission's past decision on October 10, 2024, not to concur in the Air Force's consistency determination. FAC ¶¶ 158, 171. There is no alleged on-going violation of law. As discussed above in Argument Section II, the Commission's decision was not the final decision under the CZMA's regulations and was superseded by the Air Force's subsequent decision to proceed with the project. The *Ex parte Young* exception therefore does not apply to bar the individual defendants' immunity. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993) (*Ex parte Young* exception "does not permit judgments against state officers declaring that they violated federal law in the past."); *Lund*, 5 F.4th at 969-70 (denying request for retrospective declaratory relief involving past conduct); *Stannard v. State Ctr. Cmty. Coll. Dist*., 733 F. Supp. 3d 946, 959-61 (E.D. Cal. 2024) (rejecting request for alleged prospective injunctive relief where allegations only raised past harm and did not present an ongoing violation).

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed.

Dated:  January 14, 2025                     Respectfully submitted,

                                             ROB BONTA
                                             Attorney General of California


                                             /s/ David G. Alderson
                                             DAVID G. ALDERSON
                                             Supervising Deputy Attorney General
                                             JESSICA A. BONITZ
                                             Deputy Attorney General
                                             *Attorneys for Defendants California
                                             Coastal Commission et al.*

1

**MEET AND CONFER CERTIFICATION**

2

I certify that the parties met in person or by videoconference, thoroughly

3

discussed each and every issue raised in the motion, and attempted in good faith to

4

resolve the motion in whole or in part.

5

6

Dated:  January 14, 2025                    Respectfully submitted,

7
                                            ROB BONTA
                                            Attorney General of California
8

9

10                                          /s/ David G. Alderson
                                            DAVID G. ALDERSON
11                                          Supervising Deputy Attorney General
                                            JESSICA A. BONITZ
12                                          Deputy Attorney General
                                            *Attorneys for Defendants California*
13                                          *Coastal Commission et al.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF COMPLIANCE**

2  The undersigned, counsel of record for Defendants, certifies that this brief

3  contains 6,455 words, which:

4   _X_  complies with the word limit of L.R. 11-6.1.

5   __ complies with the word limit set by court order dated [date].

6  Dated:  January 14, 2025                    Respectfully submitted,

7                                              ROB BONTA
                                               Attorney General of California
8

9
                                               /s/ David G. Alderson
10                                             DAVID G. ALDERSON
                                               Supervising Deputy Attorney General
11                                             JESSICA A. BONITZ
                                               Deputy Attorney General
12                                             *Attorneys for Defendants California*
                                               *Coastal Commission et al.*
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28