VENABLE LLP
Tyler G. Welti (SBN 257993)
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755
tgwelti@venable.com

Colin B. Vandell (SBN 240653)
2049 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901
cvandell@venable.com

Mitchell Y. Mirviss (*pro hac vice*)
750 East Pratt Street, 9th Floor
Baltimore, MD  21202
Telephone: (410) 244-7412
Facsimile: (410) 244-7742
mymirviss@venable.com

Attorneys for Plaintiff Space Exploration Technologies Corp.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA COASTAL COMMISSION, et al., <br><br> Defendants. | Case No. 2:24-cv-08893-SB-SK <br><br> **SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** <br><br> [*Filed concurrently with Declaration of Matthew Dunn; Request for Judicial Notice; Declaration of Tyler G. Welti; and [Proposed] Order*] <br><br> Date:  March 14, 2025 <br> Time:  8:30 a.m. <br> Courtroom:  6C <br> Judge:  Hon. Stanley Blumenfeld, Jr. <br><br> Action Filed:  October 15, 2024 <br> Trial Date:  Not Set |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................1

II.     BACKGROUND ................................................................................3

III.    ARGUMENT ......................................................................................5

    A.     Standard of review ..................................................................5

    B.     Counts I–IV are ripe. ..............................................................6

        1.    The Commission's actions cause SpaceX economic and competitive harm. .........................................6

        2.    The Commission's enforcement threats harm SpaceX. .................................................................................7

    C.     Counts I–IV are prudentially ripe. ........................................11

    D.     SpaceX has standing to bring its First Amendment retaliation claim (Count V). ...........................................................13

    E.     SpaceX's procedural due process claim (Count VI) is proper. .....16

        1.    SpaceX has standing. ...............................................16

        2.    SpaceX has plausibly pled a procedural due process violation. ..........................................................18

    F.     Sovereign immunity does not warrant dismissal of any defendant. .........................................................................21

        1.    The Commission is appropriately named in this action. ...................................................................21

        2.    *Ex Parte Young* applies to the official capacity claims. ....................................................................22

IV.     CONCLUSION ................................................................................22

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Arizona v. Yellen*,
34 F.4th 841 (9th Cir. 2022) ............................................................................10

*Armstrong v. Reynolds*,
22 F.4th 1058 (9th Cir. 2022) ..........................................................................19

*Bishop Paiute Tribe v. Inyo Cnty.*,
No. 1:15–cv–00367, 2018 WL 347797 (E.D. Cal. Jan. 10, 2018) ....................22

*Cal. Coastal Comm'n v. Granite Rock Co.*,
480 U.S. 572 (1987).............................................................................................9

*Cal. Pro-Life Council, Inc. v. Getman*,
328 F.3d 1088 (9th Cir. 2003) ..........................................................................13

*Cal. Trucking Ass'n v. Bonta*,
996 F.3d 644 (9th Cir. 2021) ........................................................................9, 11

*Cantrell v. City of Long Beach*,
241 F.3d 674 (9th Cir. 2001) ............................................................................17

*City of Auburn v. Qwest Corp.*,
260 F.3d 1160 (9th Cir. 2001) ............................................................................7

*City of Las Vegas v. FAA*,
570 F.3d 1109 (9th Cir. 2009) ..........................................................................17

*Clapper v. Amnesty Int'l*,
568 U.S. 398 (2013)....................................................................................10, 14

*Cleveland v. Loh*,
No. 2:22-CV-03387, 2022 WL 18231786 (C.D. Cal. Oct. 14, 2022) .................5

*In re Coleman*,
560 F.3d 1000 (9th Cir. 2009) ..........................................................................12

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
657 F.3d 936 (9th Cir. 2011) ..............................................................................6

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Czyzewski v. Jevic Holding Corp.*,
  580 U.S. 451 (2017)..................................................................................14

*Dorsett v. Cnty. of Nassau*,
  732 F.3d 157 (2d Cir. 2013) ....................................................................14

*Flaa v. Hollywood Foreign Press Ass'n*,
  No. 2:20-cv-06974, 2020 WL 8256191 (C.D. Cal. Nov. 20, 2020)....................5

*Fuentes v. Shevin*,
  407 U.S. 67 (1972)..................................................................................20

*Goss v. Lopez*,
  419 U.S. 565 (1975)................................................................................20

*Isaacson v. Mayes*,
  84 F.4th 1089 (9th Cir. 2023) ............................................................7, 11

*Italian Colors Rest. v. Becerra*,
  878 F.3d 1165 (9th Cir. 2018) ...................................................................7

*La Asociacion De Trabajadores De Lake v. City of Lake Forest*,
  624 F.3d 1083 (9th Cir. 2010) ................................................................14

*Lacey v. Maricopa Cnty.*,
  693 F.3d 896 (9th Cir. 2012) ..................................................................13

*LSO, Ltd. v. Stroh*,
  205 F.3d 1146 (9th Cir. 2000) .............................................................9, 13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)............................................................................5, 15

*Manchester Pac. Gateway LLC v. Cal. Coastal Comm'n*,
  No. 07-cv-1099, 2007 WL 2900475 (S.D. Cal. Oct. 2, 2007) .................9, 21

*Mashiri v. Epsten Grinnell & Howell*,
  845 F.3d 984 (9th Cir. 2017) .....................................................................5

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)................................................................................16

*In re Murchison*,
  349 U.S. 133 (1955)................................................................................16

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Nat'l Audubon Soc'y v. Davis*,
   307 F.3d 835 (9th Cir. 2002) ...................................................................10

*Nat'l Council of La Raza v. Cegavske*,
   800 F.3d 1032 (9th Cir. 2015) .................................................................14

*Nieves v. Bartlett*,
   587 U.S. 391 (2019)..................................................................................13

*Pac. Bell v. Pac-West Telecomm, Inc.*,
   325 F.3d 1114 (9th Cir. 2003) .................................................................21

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev.*
   *Comm'n*,
   461 U.S. 190 (1983)..................................................................................12

*Pagan v. Calderon*,
   448 F.3d 16 (1st Cir. 2006).......................................................................13

*Peace Rach, LLC v. Bonta*,
   93 F.4th 482 (9th Cir. 2024) ......................................................................7

*Planned Parenthood of Idaho, Inc. v. Wasden*,
   376 F.3d 908 (9th Cir. 2004) ...................................................................21

*Portman v. Cnty. of Santa Clara*,
   995 F.2d 898 (9th Cir. 1993) ...................................................................16

*Reno v. Catholic Soc. Servs., Inc.*,
   509 U.S. 43 (1993)....................................................................................12

*Sayles Hydro Assocs. v. Maughan*,
   985 F.2d 451 (9th Cir. 1993) ...................................................................12

*Smith v. Cnty. of Suffolk*,
   776 F.3d 114 (2d Cir. 2015) .....................................................................15

*Stivers v. Pierce*,
   71 F.3d 732 (9th Cir. 1995) .....................................................................16

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014)...............................................................................7, 13

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Tingley v. Ferguson,*
    47 F.4th 1055 (9th Cir. 2022) ............................................................... 11

*Twitter, Inc. v. Paxton,*
    56 F.4th 1170 (9th Cir. 2022) ............................................................... 14

*Unified Data Servs., LLC v. Fed. Trade Comm'n,*
    39 F.4th 1200 (9th Cir. 2022) ................................................................. 7

*United States v. Concentrated Phosphate Export Ass'n,*
    393 U.S. 199 (1968) ............................................................................... 10

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*
    535 U.S. 635 (2002) ............................................................................... 21

*Wedges/Ledges of Cal., Inc. v. City of Phoenix,*
    24 F.3d 56 (9th Cir. 1994) .............................................. 17, 18, 19, 20

*Whitewater Draw Nat. Res. Conserv. Dist. v. Mayorkas,*
    5 F.4th 997 (9th Cir. 2021) .................................................................. 17

*Wilkinson v. Austin,*
    545 U.S. 209 (2005) ............................................................................... 20

*Wolfson v. Brammer,*
    616 F.3d 1045 (9th Cir. 2010) ............................................................. 15

**Federal Statutes**

16 U.S.C. § 1456(c)(3)(A) ........................................................................... 4

**California Statutes**

Cal. Pub. Res. Code
    § 30320(a) ............................................................................................... 19
    § 30334(b) ............................................................................................... 21
    § 30600 ..................................................................................................... 11
    § 30604 ..................................................................................................... 19
    § 30803 ..................................................................................................... 11
    § 30810 ..................................................................................................... 11
    § 30820 ............................................................................................... 11, 12
    § 30821.6 ................................................................................................. 12
    § 30821 ..................................................................................................... 11
    § 30822 ..................................................................................................... 12

**Other Authorities**

15 C.F.R.

§ 930.57 ................................................................................................4
§ 930.60(a) ............................................................................................4
§ 930.62(a) ............................................................................................4

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## I.    INTRODUCTION

This case seeks to stop the California Coastal Commission (Commission) from exceeding its authority and violating the Constitution by regulating a critical space launch program operated by Plaintiff Space Exploration Technologies Corp. (SpaceX) at Vandenberg Space Force Base (the Base).

Having active, stable commercial space launch programs at federal launch facilities is critical to operation of the U.S. national security space launch program. For this reason, the U.S. Department of Air Force has long held that the Base's commercial launch programs are "federal agency activities" under the federal Coastal Zone Management Act (CZMA) that are not subject to state-agency control. SpaceX's Falcon 9 launch program at the Base is particularly critical to the United States. Federal agencies rely on Falcon 9 to deliver national security, intelligence, and civil space payloads to orbit, and to help return NASA crew and cargo to Earth. Falcon 9 launches supporting these missions occur at the Base, which is the only federal launch facility on the West Coast and the world's second busiest spaceport.

For many years, the Commission agreed with the Air Force that commercial launches from the Base are federal agency activities. But last year it abruptly changed course only with respect to SpaceX. It now asserts that the Falcon 9 program is a "federally licensed or permitted activity" requiring a "consistency certification" under the CZMA and a "coastal development permit" (CDP) under the California Coastal Act (Coastal Act). Since making this about-face, the Commission has repeatedly demanded that SpaceX obtain its approval to launch from the Base, threatened enforcement, and refused to concur in Air Force findings that the launch program complies with the California coastal program. In a series of extraordinary admissions, Commissioners affirmed that their motivation for singling out SpaceX for regulation is extreme bias against SpaceX for the political beliefs and employment practices of its CEO Elon Musk.

SpaceX sued to stop the Commission's violations of the U.S. Constitution and

other federal laws. SpaceX asserts that the Commission's actions to regulate Falcon 9 launches as federal agency activity and to require SpaceX to obtain a consistency certification and CDP violate the CZMA (Count I), the Supremacy Clause (Count II), the Federal Enclave Clause (Count III), the Coastal Act applied as federal law (Count IV), and the Fourteenth Amendment's protections of the fundamental rights to free speech (Count V) and due process (Count VI). SpaceX seeks declaratory and injunctive relief, as well as consequential and punitive damages against several Commissioners to redress and deter their blatantly unconstitutional conduct.

Defendants' Motion to Dismiss does not challenge SpaceX's allegations that the Commission employed a biased, partisan process in seeking to regulate SpaceX. Nor do Defendants dispute that they retaliated against SpaceX based on its CEO's protected political speech and labor practices. Indeed, Governor Newsom publicly agreed that the Commission's treatment of SpaceX violates the U.S. Constitution. Instead, Defendants argue that this Court cannot hear SpaceX's claims because SpaceX has not alleged harms showing ripeness, standing, or a deprivation of a constitutionally protected interest. Their arguments fail.

SpaceX has suffered economic and competitive harms from Defendants' unlawful actions, and it faces a credible threat of enforcement and a continued chilling effect on its freedom of speech. SpaceX's interests in its leases, launch licenses, and federal contracts, and in running its business free from biased interference by an oppressive state actor are protected property and liberty interests.

Defendants' arguments disputing these allegations are contrary to the minimal burden of pleading and contradicted by the facts. For example, Defendants point to the Air Force's rejection of the Commission's objection to its consistency determination as mooting this case. But the Commission has not denounced its unlawful demands. It has continued them, further harming SpaceX and threatening national security.

For all these reasons, the Motion to Dismiss should be denied.

## II.    BACKGROUND

SpaceX is the world's leading space transportation company. Since its founding in 2002, SpaceX has substantially reduced the cost of access to space by developing innovative, reliable, reusable launch vehicles, including Falcon 9. FAC ¶¶ 53-54. These advancements have made SpaceX and Falcon 9 essential parts of the U.S. space program, which, as directed by Congress, relies on commercial launch service providers. *Id.* ¶¶ 55-59, 61-62.

U.S. defense and intelligence agencies entrust SpaceX to launch critical and sensitive national security assets to space, including position, navigation, and timing satellites; intelligence, reconnaissance, and surveillance spacecraft; missile-warning satellites; classified assets; and other national security payloads. FAC ¶¶ 55-59. SpaceX is one of only two providers certified to perform the most critical launches for the national security and intelligence communities under the National Security Space Launch (NSSL) program. *Id.* ¶ 55. It has launched nearly 50% of all NSSL payloads since 2020. *Id.* SpaceX also launches payloads for NASA and other federal agencies. *Id.* Federal agencies also use satellite infrastructure that SpaceX launches and maintains. For example, SpaceX implements the U.S. Department of Defense's Proliferated Low Earth Orbit Satellite-Based Services program. *Id.* ¶ 58. As part of this work, SpaceX delivers Starlink and Starshield satellites into orbit and maintains a satellite constellation and supporting ground infrastructure. *Id.* ¶ 57.

Many SpaceX-operated launches supporting these missions occur from the Base, which is the only federal launch facility on the West Coast. FAC ¶¶ 54, 66. The Base is a federal enclave that the military has owned and operated for almost 85 years. *Id.* ¶¶ 34, 44, 50, 65. SpaceX leases land at the Base, where SpaceX has invested over $540 million to develop launch infrastructure. *Id.* ¶ 75; *see* Declaration of Matthew Dunn ("Dunn Decl.") ¶ 11. SpaceX also holds licenses from the Federal Aviation Administration authorizing it to launch from the Base in compliance with the Commercial Space Launch Act. *Id.*

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

SpaceX first launched Falcon 9 from the Base in 2013 and has been conducting launch operations there ever since. FAC ¶ 54. Due to high demand for launch services, and to meet new national security and space priorities, the Air Force has increased launches from the Base. *See id.* ¶¶ 79, 115. In 2023, it approved up to 36 Falcon 9 launches annually. *Id.* ¶¶ 79-80. In 2024, it increased cadence to 50 launches annually. *Id.* ¶¶ 3, 99. Now, the Air Force is considering up to 100 Falcon 9 launches annually. *See* Dunn Decl. ¶ 22.

For decades, the Commission agreed that commercial launch programs at the Base are "federal agency activities" under the CZMA—meaning no consistency certification or state permit is required. FAC ¶ 2. And for decades, the Commission concurred with the Air Force's determinations that the launch programs are consistent to the maximum extent practicable with California's coastal management program.[1] *Id.* ¶¶ 2, 112.

However, the Commission now contends that SpaceX's Falcon 9 launch program at the Base is not federal agency activity but instead is federally permitted activity requiring a consistency certification and CDP. FAC ¶¶ 3, 95. The Commission has threatened to enforce the Coastal Act against SpaceX absent compliance. *Id.* ¶¶ 96-99. It also demands that SpaceX implement costly monitoring and mitigation measures to address alleged impacts on resources on the Base, even though federal land is not part of the coastal zone subject to the Commission's regulation. *See id.* ¶ 93; Dunn Decl. ¶¶ 13, 24. Based on SpaceX and the Air Force not meeting its unlawful demands and other political concerns unrelated to

---

[1] The CZMA imposes stricter, more burdensome requirements on "federally licensed or permitted activity" (hereinafter "federally permitted activity") than it does on "federal agency activity." Federally permitted activities are subject to a longer review timeline, must be fully consistent with the enforceable policies of a coastal management program, and may require state permits. *See* 16 U.S.C. § 1456(c)(3)(A); 15 C.F.R. §§ 930.57, 930.60(a), 930.62(a); FAC ¶¶ 39-45.

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

protecting the coastal zone, the Commission declined to concur in the Air Force's consistency determination regarding the 50-launch cadence increase. FAC ¶¶ 99-104. The Air Force disagreed with the Commission and notified it that the 50-launch cadence increase may proceed. FAC ¶ 107. But the Commission has since continued its position and demands. Dunn Decl. ¶ 15.

The Commission has not required other commercial space operators at the Base to obtain a CDP or consistency certification, nor has it opposed their consistency determinations. FAC ¶¶ 2-6, 69-71, 157. Commissioners admitted that their disparate treatment of SpaceX is motivated by animus toward the political beliefs and labor practices of SpaceX's largest shareholder and CEO, Elon Musk. *Id.* ¶¶ 6, 8, 100-103. In fact, Governor Newsom agreed that the Commission's treatment of SpaceX violates the U.S. Constitution. *Id.* ¶ 106.

SpaceX sued the Commission and fifteen of its officials, asserting six counts for violations of federal law.

## III.  ARGUMENT

### A.  Standard of review

Under Rule 12(b)(6), the Court assumes the FAC's allegations are true and draws all inferences in SpaceX's favor. *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017). Under Rule 12(b)(1), SpaceX "bears the burden of establishing the Court's jurisdiction." *Flaa v. Hollywood Foreign Press Ass'n*, 2020 WL 8256191, at *3 (C.D. Cal. Nov. 20, 2020). This burden is minimal at the pleading stage, where "general factual allegations of injury resulting from the defendant's conduct may suffice" to show standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992).  In a factual attack on jurisdiction, "[a] court may consider extrinsic evidence … so long as it is not deciding genuinely disputed material facts." *Cleveland v. Loh*, 2022 WL 18231786, at *1 n.1 (C.D. Cal. Oct. 14, 2022) (citation omitted).

### B. Counts I-IV are ripe.

Counts I-IV challenge the Commission's position that the Falcon 9 launch program is federal permitted activity subject to its regulatory authority, and its related demands that SpaceX obtain a consistency certification and CDP and implement measures to mitigate alleged impacts to federal land. Defendants argue that these claims must be dismissed as unripe. *See* Mot. 8-11. Equating ripeness with standing, they argue that SpaceX has not shown harm from the Commission's demands and enforcement threats. *Id.* at 8 (citing *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022)). But SpaceX's allegations easily clear the low bar for showing injury sufficient to show ripeness at the pleading stage.

### 1. The Commission's actions cause SpaceX economic and competitive harm.

SpaceX has already suffered substantial economic and competitive harm from the Commission's unlawful efforts to regulate SpaceX's launch program as federally permitted activity, require SpaceX to obtain a consistency certification and CDP, and force SpaceX to implement measures addressing effects outside of the coastal zone. *See* FAC ¶ 159; Dunn Decl. ¶¶ 18-20, 22-24. SpaceX has diverted hundreds of hours of its employees' time and spent thousands of dollars to address the Commission's unlawful demands and enforcement threats, and to plan time-sensitive launch operations confronted by threatened cease-and-desist orders. *Id.* ¶ 23; *see Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943-44 (9th Cir. 2011) (finding concrete harm where challenged conduct caused plaintiff to divert resources).

As a result of the Commission's unlawful assertion of authority over impacts occurring on the Base, SpaceX also will spend significant employee resources and millions of dollars to implement monitoring and mitigation measures on federal land. FAC ¶ 91; Dunn Decl. ¶ 24. The Commission's disparate treatment of SpaceX also causes SpaceX competitive harm. Other commercial space operators have not been

subjected to repeated demands to obtain a consistency certification and CDP to launch. FAC ¶¶ 157, 168; Dunn Decl. ¶ 25.

### 2. The Commission's enforcement threats harm SpaceX.

The "credible threat of enforcement" by the Commission is sufficient to establish jurisdiction. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161 (2014). *See* Dunn Decl. ¶¶ 22-25 (explaining the "intolerable position" in which the Commission's demands place SpaceX). Courts recognize that "[t]he injury requirement does not force a plaintiff to 'await the consummation of threatened injury to obtain preventive relief.'" *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171 (9th Cir. 2018) (citation omitted). In deciding whether a threat is realistic, courts consider: (1) whether a plaintiff has "articulated a concrete plan to [allegedly] violate the law in question," (2) whether "prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and (3) the "history of past … enforcement" of the challenged law. *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022). Each factor is met here.[2]

**Factor 1 (Concrete Plan):** Defendants do not dispute that SpaceX will continue launch operations at the Base without the Commission's approval. Courts routinely find this factor is met where, as here, plaintiffs intend to continue operating without obtaining allegedly required entitlements. *See*, *e.g.*, *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1170-72 (9th Cir. 2001) (met where plaintiff operated despite

---

[2] SpaceX also meets the alternative pre-enforcement ripeness test some courts use, which considers a plaintiff's "intention to engage in a course of conduct arguably affected with a constitutional interest." *Driehaus*, 573 U.S. at 158-59. SpaceX's conduct and claims implicate constitutional rights to free speech and due process, threats to its abilities to use its leased property and launch licenses, and federal preemption of adverse state action concerning activities on a federal enclave. *See, e.g.*, *Peace Rach, LLC v. Bonta*, 93 F.4th 482, 488 (9th Cir. 2024) (landowner's allegation he would raise rents above a challenged cap implicated constitutional interests); *Isaacson v. Mayes*, 84 F.4th 1089, 1098-99 (9th Cir. 2023) (challenge to law that threatened plaintiff's medical license implicated constitutional interests).

new ordinance requiring a permit).

**Factor 2 (Specific Threat):** The Commission has repeatedly demanded that SpaceX meet the requirements applicable to federally permitted activity by obtaining a consistency certification and CDP, and threatened enforcement absent compliance. FAC ¶¶ 2-4, 70-74, 79-102; Dunn Decl. ¶ 13. Among other examples:

- A May 30, 2024, staff report found that the Falcon 9 launch program is not federal agency activity and recommended objecting to increasing launch cadence on that ground. The Report finds that federal law does not prohibit the Commission from requiring SpaceX to obtain a CDP and concludes that "if Space Force does not further support its position that SpaceX's proposed project is a federal agency activity…, SpaceX must submit a CDP application to the Commission to authorize the project …." FAC ¶ 88.

- A July 25, 2024, staff report stated that "[i]t is the Commission's position that SpaceX's space launch activities are not a government program …." Dkt. 40-5 at 12. The report said, "SpaceX may be required to seek the Commission's authorization through submittal of a [CDP] application and/or consistency certification." *Id.* On August 8, 2024, the Commission adopted the July 25, 2024 report. FAC ¶ 93.

- On a September 13, 2024, call with SpaceX and in several emails, the Commission demanded that SpaceX obtain a CDP to conduct launches and threatened enforcement. *Id.* ¶ 96.

- A September 27, 2024, report explained "the Commission and Commission staff have consistently rejected [the Air Force's] characterization of the project as a 'federal agency activity' …." *Id.* ¶ 97; Dkt. 40-6 at 9. The report stated the Commission's "expectation that SpaceX will be required to seek the Commission's authorization through submittal of a consistency certification and/or coastal development permit application." FAC ¶ 97; Dkt. 40-6 at 8. It explained that the Commission has "informed [SpaceX] of its position and the

need for SpaceX to submit an application for a coastal development permit seeking after-the-fact and continuing authorization for its ongoing rocket launch, landing and associated activities." *Id.*

- And at an October 10, 2024, hearing on the 50-launch cadence increase, at least six of the ten voting Commissioners unequivocally stated that SpaceX's launch program is not federal agency activity and SpaceX must obtain a CDP. *See* FAC ¶¶ 99-104.

Federal courts have found pre-enforcement challenges to the Commission's regulatory authority justiciable based on far slimmer allegations than these. *See, e.g.*, *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 576-77 (1987) (adjudicating pre-enforcement challenge to the Commission's permitting authority where a letter from the Commission demanded a CDP); *Manchester Pac. Gateway LLC v. Cal. Coastal Comm'n*, 2007 WL 2900475, at *2-3 (S.D. Cal. Oct. 2, 2007) (adjudicating a similar pre-enforcement challenge where the Commission demanded a CDP in reopening consistency review of a development on a Navy base).

Defendants argue that SpaceX's allegations do not show a realistic threat of enforcement. They are wrong.

Defendants first argue that there is no credible threat of enforcement of the consistency certification requirement because they now concede that commercial launches are not a "listed licensed federal activity … [or] an unlisted permit activity approved for review." Mot. 10; *see* FAC ¶¶ 17, 45, 73. But the Commission has not "disavow[ed] enforcement" of the demand that the launch program is federal agency activity requiring a consistency certification and CDP. *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) (finding sufficient enforcement threat where the agency acknowledged a challenged law might be preempted but did not disavow enforcement); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1154-55 (9th Cir. 2000) (finding refusal "to rule out use of the challenged provision … impart[s] some substance to the [plaintiff's] fears") (citation omitted)). Indeed, Defendants' brief maintains that

the Falcon 9 launch program *is* federally permitted activity. And the Commission continues to seek to regulate SpaceX's operations as federally permitted activity. Dunn Decl. ¶¶ 15-17. Nor does the Commission's concession render this case unripe because it "depend[s] on contingent future events." Mot. 10 (quotation marks and citation omitted). To show ripeness, SpaceX need only show a realistic enforcement threat, not "demonstrate that it is literally certain that the harms [it] identif[ies] will come about." *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 n.5 (2013).[3]

Defendants also argue that SpaceX cannot show a credible enforcement threat because its allegations about the Commission's demands are "legal conclusions." Mot. 10; *see also* 11-12 (arguing that enforcement threats by Commission officials lacking independent enforcement authority are not credible threats). Not only do Defendants mislabel SpaceX's factual allegations as legal conclusions, but they also miss the point. What matters for ripeness is whether there is a credible threat of enforcement, not whether the government has taken a final agency action.[4] *See, e.g.*, *Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) (finding agency's "affirmative

---

[3] Defendants' concession clearly does not moot SpaceX's claims. Even assuming that the Commission's illegal conduct has ceased—which SpaceX disputes— "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). The Commission cannot meet its heavy burden of showing that its litigation statements make "it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.*; *see Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 850-51 (9th Cir. 2002) (finding state defendant's stipulation that the challenged law was not enforceable against plaintiffs did not moot the pre-enforcement challenge because the state was "not constrained from later adopting a different interpretation").

[4] Neither of Defendants' cases applies the "credible threat" analysis. *See* Mot. 12 (citing *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 640, 643 (6th Cir. 2004); *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731-32 (D.C. Cir. 2003)). Both address whether federal agency action is reviewable under Administrative Procedure Act, not Article III justiciability.

---

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

conduct" "evincing an intent to enforce" without a final agency action showed a credible threat); *Cal. Trucking*, 996 F.3d at 653 (finding a credible threat where an agency "sent letters to businesses notifying them" of its interpretation of a new regulation); *Isaacson*, 84 F.4th at 1100 (explaining that courts "take[] a broad view of this factor" and often do not require specific enforcement threats). Defendants' argument also mischaracterizes the Commission's October 10 hearing and ignores the Commission's numerous other demands that SpaceX obtain a consistency certification and CDP.[5] *See* FAC ¶¶ 79-102; Dunn Decl. ¶¶ 13-14; RJN Decl., Exs. A-B.

**Factor 3 (Past Enforcement):** Defendants fail to address and thus concede that the third pre-enforcement review factor also shows this case is ripe. The Commission has a long history of aggressively enforcing its authority to regulate activities affecting the coastal zone. *See* RJN Decl., Exs. C-D (summarizing 2023-2024 enforcement). The fact that the Commission has less history of enforcing against commercial space operators carries "little weight" because the issue is "relatively new" and the Commission has specifically threatened SpaceX. *Tingley v. Ferguson*, 47 F.4th 1055, 1069 (9th Cir. 2022). Indeed, the Commission's demands against SpaceX mark an about-face of longstanding practice, reflecting deliberate, disparate treatment motivated by animus towards SpaceX. FAC ¶¶ 2-3, 84-85, 112, 151-55. These facts demonstrate the high risk of enforcement against SpaceX.

## C.    Counts I-IV are prudentially ripe.

Counts I-IV also meet prudential ripeness requirements, which Defendants address only in passing. Prudential ripeness is a discretionary consideration based on "the fitness of the issues for judicial decision" and "the hardship to the parties of

---

[5] Contradicting their argument that an enforcement threat is not credible if the Commission has not voted to enforce it, Defendants concede that Commission staff has independent authority to enforce against SpaceX. Mot. at 6; *see, e.g.*, Cal. Pub. Res. Code §§ 30600, 30803, 30810, 30820, 30821.

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

withholding court consideration." *In re Coleman*, 560 F.3d 1000, 1004 (9th Cir. 2009). Both considerations favor justiciability.

First, issues are fit for judicial decision when they are "predominantly legal" in nature. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983). Here, SpaceX challenges the Commission's authority on preemption grounds (Counts II & III) and as contrary to law (Counts I & IV). These claims primarily raise legal questions of the sort Courts routinely find fit for review. *See, e.g., id*. Defendants claim that "involving" the Court "risks entangling this proceeding with the process and efforts by federal agencies." Mot. at 11, 13. They provide *no* explanation for and thus waive this argument. The facts also contradict it: the Air Force and other federal agencies reject the position that the Base's launch program is federal permitted activity. FAC ¶¶ 2, 8, 10, 71-76.

Second**,** postponing judicial resolution would impose undue hardship on SpaceX. Absent relief, SpaceX must either: (i) suspend its launch operations and submit to additional burdensome, costly, and political regulatory processes before a hostile state agency lacking authority; or (ii) proceed with launching Falcon 9 and risk enforcement, civil fines and penalties, and third-party litigation seeking to enjoin SpaceX's launches. *See* Cal. Pub. Res. Code §§ 30820, 30821.6, 30822 (authorizing the Commission and third parties to seek civil penalties and exemplary damages). The "hardship" inquiry is met in these circumstances. *See Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993) (finding claim ripe where plaintiffs must "choose between complying with newly imposed, disadvantageous restrictions [or] risking serious penalties for violation"); *Sayles Hydro Assocs. v. Maughan*, 985 F.2d 451, 454 (9th Cir. 1993) (finding sufficient hardship where federal licensee must "proceed without knowing whether the [state regulation] is valid" (citation omitted) (alteration in original)). The Commission does not argue otherwise or claim any competing hardship, and thus concedes these issues.

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### D.    SpaceX has standing to bring its First Amendment retaliation claim (Count V).

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (citation omitted). Thus, where a person's protected speech was a "substantial or motivating factor" for an official's adverse action, the injured person can seek relief by bringing a First Amendment claim. *See Lacey v. Maricopa Cnty.*, 693 F.3d 896, 916 (9th Cir. 2012) (citation omitted). When adverse action is taken "against a corporation based on a protected trait of a corporate agent," the corporation has standing. *Pagan v. Calderon*, 448 F.3d 16, 30 (1st Cir. 2006).

The FAC alleges that Defendants' retaliatory decision not to concur in the consistency determination on the 50-launch increase and to require a consistency certification and CDP are adverse actions against SpaceX based on the constitutionally protected speech of its owner, Elon Musk. FAC ¶¶ 151-53. Indeed, Defendants do not dispute that SpaceX has pled conduct that establishes a First Amendment retaliation claim. Instead, essentially repeating their ripeness arguments on Counts I-IV, they argue only that SpaceX fails to show a legally cognizable injury due to the Commission's decision not to concur.

Standing requires: "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Driehaus*, 573 U.S. at 157-58. To avoid the "chilling effect" of governmental action that seeks to restrict private speech, "the Supreme Court has dispensed with rigid standing requirements" in the First Amendment context. *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003). When, as here, "the threatened enforcement effort implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing." *LSO*, 205 F.3d at 1155. "[A] loss of even a small amount of money is ordinarily an

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

'injury'" supporting Article III standing. *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 464 (2017). Standing is established "based on a 'substantial risk' that the harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Clapper*, 568 U.S. at 414 n.5.

SpaceX alleges an injury sufficient to support the Court's jurisdiction over Count V for the same reasons it adequately alleges harms sufficient to show Counts I-IV are ripe. Due to Defendants' retaliatory animus, SpaceX has submitted to costly regulatory processes and expended substantial time and resources responding to burdensome and unnecessary demands, countering enforcement threats, and planning time-sensitive launch operations in the face of these threats. FAC ¶¶ 80-83, 88-94; Dunn Decl. ¶¶ 18-24. Now, SpaceX must either suspend its launch operations and submit to additional, burdensome, and costly permitting processes, or proceed with its federally approved Falcon 9 launch program and risk enforcement, civil fines, and penalties. FAC ¶¶ 96, 118, 156; Dunn Decl. ¶¶ 22-23. The Commission's unconstitutional conduct has also caused SpaceX to suffer harmful, repressive uncertainty and concern about whether the protected speech of SpaceX's officers will result in further regulatory action harming SpaceX's ability to use its property, exercise its rights under its launch licenses, and run its business. *Id.* ¶¶ 25-26.

Given these harm allegations, Defendants' reliance on *Twitter, Inc. v. Paxton*, 56 F.4th 1170 (9th Cir. 2022), is misplaced. In *Twitter*, the only asserted injury from the alleged retaliation was Twitter's chilled speech; Twitter did not allege it had "suffered any other legally cognizable harm" or seek damages. *Id.* at 1176. But "[a] plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation *or that he has suffered some other concrete harm*." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (emphasis added). Other harms include "diversion of [an organization's] resources and a frustration of its mission" and economic injuries. *La Asociacion De Trabajadores De Lake v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010); *see also Nat'l*

*Council of La Raza v. Cegavske*, 800 F.3d 1032, 1040 (9th Cir. 2015) ("[A] diversion-of-resources injury is sufficient to establish organizational standing at the pleading stage, even when it is broadly alleged."). Unlike Twitter, SpaceX alleges these other harms, in addition to chilled speech, and seeks damages to redress Defendants' unconstitutional conduct.

SpaceX shows a causal connection between these injuries and Defendants' retaliatory animus. *See Smith v. Cnty. of Suffolk*, 776 F.3d 114, 118 (2d Cir. 2015) ("A plaintiff may establish causation … through a showing of retaliatory animus, or … that the protected activity was followed closely by the adverse action."). Defendants' numerous statements at the October 10, 2024, hearing reflect political bias based on disagreement with Mr. Musk's protected speech. *See, e.g.*, FAC ¶ 152. Indeed, these comments were offered precisely to explain their decision not to concur and to demand that SpaceX obtain a consistency certification and CDP, providing ample causal nexus between the injury and Defendants' biased conduct.

As to redressability, "[a] plaintiff meets the redressability requirement if it is likely, although not certain, that his injury can be redressed by a favorable decision." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010). If a plaintiff is "an object of the [challenged action] ... there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561-62. Here, the Commission asserts it can regulate SpaceX's Falcon 9 launch program at the Base as federally permitted activity and require SpaceX to obtain a CDP and consistency certification. The statements by Commissioners Hart, Newsom, Wilson, and Cummings show clear retaliatory animus as the motivation for its decision to continue these demands and not concur in the 50-launch cadence increase. FAC ¶ 152. Enjoining Defendants from retaliatory enforcement and declaring their conduct unlawful will redress SpaceX's prospective injuries, and damages will compensate SpaceX for injuries already suffered. *See Wolfson*, 616 F.3d at 1057 ("Enjoining the defendants from

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

enforcing the challenged canons will redress Wolfson's injury … [because they] will no longer have a chilling effect on speech.").

### E.    SpaceX's procedural due process claim (Count VI) is proper.

The Due Process Clause of the Fourteenth Amendment prevents a government entity from depriving protected interests without "a fair trial in a fair tribunal," which "of course requires an absence of actual bias." *In re Murchison*, 349 U.S. 133, 136 (1955). "This requirement applies … to state administrative agencies charged with applying eligibility criteria for licenses" and similar approvals. *Stivers v. Pierce*, 71 F.3d 732, 741 (9th Cir. 1995) (citation omitted); *see Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "A section 1983 claim based upon procedural due process … has three elements: (1) a liberty or property interest protected by the Constitution; (2) deprivation of the interest by the government; (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Critically, Defendants do not challenge SpaceX's allegations that the Commission has employed a blatantly biased and partisan process for deciding the conditions for SpaceX's business activities on the Base. Nor do Defendants dispute that they retaliated against SpaceX based on its CEO's protected political speech and labor practices. Defendants assert only that SpaceX lacks standing and has not sufficiently alleged deprivation of a protected interest.

### 1.    SpaceX has standing.

Defendants first contend that SpaceX fails to allege facts showing it had a "concrete interest" harmed by the alleged deprivation of its procedural due process rights sufficient to create standing. Mot. 15-17. In essence, Defendants contend that only the Air Force, not SpaceX, has a concrete interest in fair treatment by the Commission. They appear to argue that the Air Force was the only required participant in the hearing on the 50-launch cadence increase where Defendants made their animus against SpaceX clear, and so only the Air Force's interests were harmed. This argument fails on several levels.

First, the Commission voted not to concur in the Air Force's consistency determination and continued its demands that SpaceX's launches are federally permitted activity requiring a consistency certification and CDP. *See* FAC ¶¶ 99, 108, 151, 160-61; Dunn Decl. ¶ 15. The Commission's biased actions thus are against SpaceX, not only the Air Force. Indeed, SpaceX attended the October hearing to comply with the Commission's repeated demands that SpaceX appear before it in person. *See id.* ¶ 14(i), (k).

Contrary to Defendants' arguments, *see* Mot. 17, the Air Force's decision to proceed despite the Commission's nonconcurrence did not eliminate or supersede SpaceX's injury or prevent its redressability. The issue here is Defendants' regulation of SpaceX. Thus, Defendants' reliance on *Whitewater Draw Nat. Res. Conserv. Dist. v. Mayorkas*, 5 F.4th 997 (9th Cir. 2021), is misplaced. That case addresses circumstances where "an asserted injury arises from the government's allegedly unlawful regulation … of *someone else*…." *Id.* at 1013 (internal quotation marks and citation omitted). Defendants' biased actions interfere directly with *SpaceX's* ability to conduct the Falcon 9 launch program, use its property and launch licenses, and run its business, which is ample evidence of "redressability and immediacy." *Cantrell v. City of Long Beach*, 241 F.3d 674, 682 (9th Cir. 2001); *see also City of Las Vegas v. FAA*, 570 F.3d 1109, 1114 (9th Cir. 2009).

Second, standing is not limited to actual participants in an administrative proceeding. Direct beneficiaries with an economic interest have standing, too. As the Ninth Circuit has held, "it is well settled" that a business directly affected by a government decision regarding another entity has standing to challenge that decision. *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 61 (9th Cir. 1994) (collecting cases). As explained above, the Air Force's consistency determination on the Falcon 9 launch program benefits SpaceX. Moreover, at every stage, the Commission treated its review of the Air Force's determination under the CZMA and its demand that SpaceX obtain a CDP and consistency certification as

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

parallel, linked processes. *See* FAC ¶¶ 79-94. As also explained above, Defendants' actions have adversely affected SpaceX's concrete interests.

### 2. SpaceX has plausibly pled a procedural due process violation.

Defendants argue that Count V should be dismissed because SpaceX has not alleged a protected property or liberty interest or shown any such interest has been deprived. Mot. 17-19. Both arguments fail.

**Property interest.** Procedural due process attaches to state actions that unfairly infringe upon protected property interests. "A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'" *Wedges/Ledges*, 24 F.3d at 62 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)). "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Id.* (citation omitted). "[S]uch an interest is created if the procedural requirements are intended to be a 'significant substantive restriction' on ... decision making." *Id.* (citations omitted).

This translates into a simple test: does Defendants' bias against SpaceX violate their permissible discretion under the law, such that SpaceX was denied its expectation of a fair process for regulatory approvals to operate its launch program and use its property and licenses? That test is met. Personal bias is not a valid basis for the Commission to impose a permit requirement on SpaceX, and thus deprives SpaceX of its entitlement to a fair application of the Coastal Act to SpaceX's protected property interests in its lease, launch license, and business operations at the Base.

Like other California administrative agencies, the Commission may not render decisions based upon personal bias against a party or its owners or officers. As the Coastal Act states, "the public interest and principles of fundamental fairness

and due process of law require that the commission conduct its affairs in an open, objective, and impartial manner free of undue influence and the abuse of power and authority." Cal. Pub. Res. Code § 30320(a). The Commission must assure "due process, fairness, and the responsible exercise of authority," which are "essential elements of good government." *Id.* Subs. b. Thus, Commissioners must be fair and impartial and may not act from personal animosity toward an applicant when applying the Coastal Act's criteria for when a CDP and consistency certification are required. *See id.* § 30604. SpaceX is entitled to an administrative process that follows and applies these requirements, not a process driven by personal animus. Defendants do not, and cannot, contend that the CDP or consistency certification criteria are wholly discretionary and lack articulable standards, or allow for action based on bias.

SpaceX thus does not merely assert a property interest in the "'the activity of doing business, or the activity of making a profit.'" Mot. 18 (citation omitted). Instead, SpaceX has a property interest in ensuring that it can secure and continue to use, free from bias, all necessary approvals needed to conduct its launch business. *See* FAC ¶ 165; Dunn Decl. ¶¶ 19-22. This interest comes not from the simple "activity of doing business," but from SpaceX's existing leases, licenses, and contracts with the federal government (*see* FAC ¶¶ 55-58), and its entitlement to continue that business without interference by Commission officials acting on personal animosity instead of established statutory criteria. *See, e.g.*, *Wedges/Ledges*, 24 F.3d at 63-64 (statutory requirement that new licenses should be granted if a coin-operated game qualifies as a "game of skill" established an "articulable standard" and thus created a protected claim of entitlement on the part of license applicants); *Armstrong v. Reynolds*, 22 F.4th 1058, 1076 (9th Cir. 2022) (criteria requiring "notice and consent along with a broad directive to consider 'the public interest' … 'define[d] an articulable standard' sufficient to give rise to a property interest….") (citation omitted)).

Accordingly, SpaceX has a protected property interest in remaining free to operate its launches on the Base without restrictions imposed on it by the Commission due to bias.

**Liberty interest.** "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' … or it may arise from an expectation or interest created by state laws…." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). SpaceX's liberty interest stems not solely from a right to petition the government, Mot. 18, but, rather, from its right to pursue its business at the Base without biased, retaliatory interference by the Commission. *See Wedges/Ledges*, 24 F.3d at 65 n.4 ("[I]t is well-recognized that the pursuit of an occupation or profession is a protected liberty interest…. [C]orporations … also can assert a right to pursue an occupation."). For example, SpaceX has a liberty interest in being free from the Commission's oppression and bias based on the political views and/or labor practices of its CEO that have nothing to do with Commission's Coastal Act authority. Indeed, Defendants do not dispute that the Commission retaliated against SpaceX based on the labor practices and beliefs of Mr. Musk. This retaliation plainly implicates SpaceX's right to run and expand its business using its leases and licenses.

**Deprivation.** In arguing that the "FAC merely asserts that the Commission has 'interfered' with" SpaceX's interests, Mot. 18, Defendants apply the wrong test for an actionable deprivation. A party is "deprived" of a protected interest when state action adversely affects or unlawfully interferes with that interest. *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (explaining the "the central meaning of procedural due process" is "Parties whose rights are affected are entitled to be heard") (citations omitted). Plaintiffs must allege that a deprivation is material, not total. *See Goss v. Lopez*, 419 U.S. 565, 576 (1975) ("[A]s long as a property deprivation is not de minimis, its gravity is irrelevant to the question whether account must be taken of the Due Process Clause.").

SpaceX has adequately alleged a material deprivation. In rejecting the Air

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Force's request for concurrence and demanding that SpaceX obtain a CDP and consistency certification based on illegal animus and bias, the Commission infringed upon SpaceX's legally protected statutory and contractual rights, licenses, leases, and duties to the U.S. Government to perform launches on the Base. The Commission has not withdrawn its demands, which continue to harm SpaceX, as explained above. The Commission cannot interfere with SpaceX's protected interests simply because of bias against Mr. Musk.

### F. Sovereign immunity does not warrant dismissal of any defendant.

#### 1. The Commission is appropriately named in this action.

The Court should not dismiss the Commission for two reasons.

***First,*** the Court need not reach the question of "[w]hether the Commission waived its immunity … because … even absent waiver, [SpaceX] may proceed against the individual commissioners in their official capacities." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *see also Pac. Bell v. Pac-West Telecomm, Inc*., 325 F.3d 1114, 1124 (9th Cir. 2003). For this reason, this same immunity argument was rejected in a similar case challenging the Commission's permitting authority over a military base. *Manchester*, 2007 WL 2900475, at \*1, \*4; *see also, e.g.*, *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 914 n.3 (9th Cir. 2004) (explaining that "the true party in interest" is the state). Indeed, the Court's Civil Sheet Instructions direct plaintiffs to "identify the agency first, then the official" where the "defendant is an official within a government agency." *See* Civ. Cover Sheet Instructs. at I(a).

***Second***, the Commission waived immunity. Section 30334 of the Coastal Act states, without qualification, that "[t]he commission may ... [s]ue and be sued" and "[t]he Attorney General shall represent the commission in any litigation or proceeding before any court...." Cal. Pub. Res. Code § 30334(b). Section 30803 provides that "[a]ny person may maintain an action for declaratory and equitable relief to restrain any violation of this division." Together, these provisions allow the

Commission to "be sued" in federal court.

### 2. *Ex Parte Young* applies to the official capacity claims.

The individual defendants named in Counts V and VI should not be dismissed because SpaceX seeks prospective relief under *Ex Parte Young*. Defendants' argument to the contrary recasts their mootness arguments discussed above. The argument fails because SpaceX seeks prospective declaratory and injunctive relief. *Supra at* § III.B.2 & n.3; FAC ¶¶ 156, 158, 162, 171 & Requests for Relief D, E; *see also id.* ¶¶ 108, 126, 127-29, 140 145,153-54 (facts showing the need for prospective relief). Even if some portion of the relief were retrospective, that would "not, by itself, defeat the application of the *Ex Parte Young* doctrine." *Bishop Paiute Tribe v. Inyo Cnty.*, 2018 WL 347797, at *9 (E.D. Cal. Jan. 10, 2018).

## IV. CONCLUSION

Defendants' Motion to Dismiss should be denied.

Dated: February 7, 2025

VENABLE LLP

By:    */s/ Tyler Welti*
      Tyler G. Welti
      Colin B. Vandell
      Mitchell Y. Mirviss (*pro hac vice*)

      Attorneys for Plaintiff Space Exploration Technologies Corp.

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff SpaceX, certifies that this brief contains 6,992 words, which:

 _X_  complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

VENABLE LLP

Dated:  February 7, 2025

By:   _/s/ Tyler Welti_
Tyler G. Welti

Attorneys for Plaintiff Space Exploration Technologies Corp.

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS