VENABLE LLP
Tyler G. Welti (SBN 257993)
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755
tgwelti@venable.com

Colin B. Vandell (SBN 240653)
2049 Century Park East, Suite 2300
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901
cvandell@venable.com

Mitchell Y. Mirviss (*pro hac vice*)
750 East Pratt Street, 9th Floor
Baltimore, MD 21202
Telephone: (410) 244-7412
Facsimile: (410) 244-7742
mymirviss@venable.com

Attorneys for Plaintiff Space Exploration Technologies Corp.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA COASTAL COMMISSION, et al., <br><br> Defendants. | Case No. 2:24-cv-08893-SB-SK <br><br> **DECLARATION OF MATHEW DUNN IN SUPPORT OF SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |

1. I, Mathew Dunn, declare as follows:

2. I am over the age of 18, of sound mind, and if called upon, could testify under oath as to the following.

3. I have worked at Space Exploration Technologies Corp. (SpaceX) for

14 years. I am currently the Senior Director of Government Affairs at SpaceX. I have held that position for eight years. Currently, my responsibilities include managing SpaceX's global, federal, and state government relations. I have been involved in and/or aware of every major aspect of governmental review of SpaceX's Falcon 9 launch program at Vandenberg Space Force Base (the Base) during the last several years, including regulatory actions by the California Coastal Commission (the Commission).

4.      I understand that SpaceX filed a lawsuit against the Commission and several individual Commissioners and staff members based on violations of federal law that, among other things, challenges (i) the Commission's position that SpaceX's launch operations at the Base are not federal agency activity for purposes of the Coastal Zone Management Act (CZMA), (ii) the Commission's repeated demands that SpaceX must obtain a Coastal Development Permit and submit a consistency certification to the Commission to launch from the Base, and (iii) related enforcement threats. *See* Dkt. 31 (First Amended Complaint (FAC)).

5.      I make this Declaration in support of SpaceX's Opposition to Defendants' Motion to Dismiss the First Amended Complaint. Except to the extent specifically noted, the facts stated herein are based on my personal knowledge or upon information collected at my direction from SpaceX personnel operating under my supervision, at my direction, and within the scope of their respective duties.

**I.    Background about SpaceX and its work for the U.S. Government**

6.      SpaceX was founded in 2002 with the ultimate goal of making life multi-planetary. Since its founding, SpaceX has substantially reduced the cost of access to space by developing innovative, reliable, and reusable launch vehicles, including Falcon 9. This has made SpaceX the world's leading commercial space transportation company and an essential part of the U.S. space program.

7.      U.S. defense and intelligence agencies have entrusted SpaceX to launch critical and sensitive national security assets to space, including position, navigation,

and timing satellites; intelligence, reconnaissance, and surveillance spacecrafts; missile warning satellites; space surveillance capabilities; classified assets; and other national security payloads. In fact, SpaceX is one of only two providers certified to perform the most critical launches for the national security and intelligence communities under the National Security Space Launch (NSSL) program. In 2020, the U.S. Space Force (Space Force) selected SpaceX to launch not less than 40% of all NSSL payloads for the U.S. Government through at least 2027. Since the award of that contract, SpaceX has been assigned nearly 50% of NSSL missions. Many of these missions that SpaceX performs under this contract launch from the Base.

8.   SpaceX also launches payloads for the National Aeronautics and Space Administration (NASA) and other U.S. Government agencies like the National Oceanic and Atmospheric Administration (NOAA). SpaceX now handles about two-thirds of NASA's launches, including crew and cargo flights to the International Space Station (ISS) and high-value scientific spacecraft. Falcon 9/Dragon is the only American system certified by NASA to transport astronauts to the ISS and back to Earth. NASA uses SpaceX's Dragon spacecraft to launch and return crew and cargo from the ISS to Earth. With the support of NASA, SpaceX is currently moving Dragon landings from Florida to California, with splashdowns off the coast of California expected to begin in 2025. SpaceX conducts many launches for federal agencies from the Base, with that number growing as a result of realigned national security space objectives.

9.   The Base is the only federal launch facility on the West Coast. Increasing the Base's launch capacity is critical to U.S. national security, America's civil space program, and the commercial space industry. All three of these interests are inextricably intertwined because the U.S. Government does not itself own and operate any currently operational space launch systems. Rather, it currently procures launch services from commercial space launch providers like SpaceX and relies on commercial operators to provide the launch infrastructure needed to rapidly deploy

assets to space. Federal agencies also operate using satellite infrastructure that commercial providers like SpaceX launch and maintain.

10. SpaceX would not be able to fulfill some of its government and commercial contracts to launch assets to space without launching from the Base. First, both government and commercial customers have payloads that require trajectories that can best—or only—be achieved from the Base, and even to the extent SpaceX could physically achieve such trajectories from Florida, capacity constraints at its launch facilities would prevent SpaceX from doing so. Third, the infrastructure required to integrate some government payloads exists only at the Base.

**II.    The Commission's demands and enforcement threats against SpaceX.**

11. SpaceX leases land from the U.S. Department of the Air Force at the Base, where I understand that SpaceX has invested over $540 million to develop launch sites, supporting infrastructure, and ongoing operational expenses. In addition to the leaseholds, SpaceX holds launch licenses from the Federal Aviation Administration that authorize SpaceX to conduct launch operations from the Base in compliance with the Commercial Space Launch Act. SpaceX first launched a Falcon 9 from the Base in 2013 and has been conducting launch operations at the Base ever since.

12. Until late 2023, the Commission never claimed that SpaceX's launch operations at the Base are not federal agency activity under the CZMA or demanded a consistency certification or Coastal Development Permit.

13. Over the past year, however, the Commission has repeatedly taken the position that SpaceX's Falcon 9 launches at the Base are not federal agency activity under the CZMA but instead are federally licensed activity. Based on this position, the Commission has also repeatedly demanded that SpaceX submit a consistency certification to the Commission and obtain a Coastal Development Permit authorizing its launch operations. The Commission has also demanded that SpaceX

implement many costly monitoring and mitigation measures with respect to alleged impacts on resources on federal land, even though federal land is not part of the coastal zone subject to the Commission's authority. In several public hearings, meetings, and other communications in which I have been involved, the Commission has threatened to enforce the California Coastal Act against SpaceX absent compliance with its demands.

14. Specifically, contrary to the Commission's statements in its Motion to Dismiss, the Commission has made enforcement threats and stated its position that SpaceX must obtain a Coastal Development Permit and consistency certification on at least the following occasions:

a. On March 28, 2024, Commission staff released a detailed report disputing that launch operations are federal agency activity. *See* Declaration of Tyler G. Welti ("RJN Decl."), Ex. A. The report stated that "SpaceX's space launch activities are not a government program and are carried out solely by a private entity," and that the program "would be operated by a private company to serve its business objectives and would only occasionally launch materials at the behest of the Air Force." FAC ¶ 84; RJN Decl., Ex. A at 6.

b. At an April 10, 2024, meeting, the Commission voted not to concur in the Air Force's consistency determination (ND-0009-23) addressing increasing the number of Falcon 9 launches at the Base from 6 to up to 36 launches a year. At the hearing, Commission Chair Hart stated that "everyone has agreed" that the Commission should distinguish SpaceX's "private" launches from Department of Defense payloads, and she pushed for "consideration of whether a [Coastal Development Permit] should be required," which a majority of the Commissioners supported. *See* FAC ¶ 85.

c. In a May 30, 2024, report, Commission staff again stated that the

Falcon 9 launch program at the Base is not federal agency activity and recommended that the Commission object to the proposed cadence increase from 6 to 36 launches on that ground. *See id.* ¶ 88; RJN Decl., Ex. B. The report stated that the "Space Force must demonstrate that SpaceX is performing all its launch activities on behalf of Space Force and that Space Force is responsible and accepts liability for all of SpaceX's launch activities" to show that the Falcon 9 program is federal agency activity. *Id.* at 7. The report finds that federal law does not prohibit the Commission from demanding that SpaceX obtain a Coastal Development Permit. The report concludes that "if Space Force does not further support its position that SpaceX's proposed project is a federal agency activity . . . , SpaceX must submit a [coastal development permit] application to the Commission to authorize the project . . . ." *Id* at 14.

d. In a July 25, 2024, report, Commission staff stated that "[i]t is the Commission's position that SpaceX's space launch activities are not a government program and are carried out solely by a private entity on a portion of Vandenberg Space Force Base (VSFB) leased to SpaceX by the Department of the Air Force (DAF)." The report said, "SpaceX may be required to seek the Commission's authorization through submittal of a coastal development permit application and/or consistency certification." The report also states that "[t]he Coastal Zone Management Act and its regulations do not preclude a coastal management agency like the Commission from reviewing the same project through both a consistency determination and consistency certification if it requires a federal license or permit and would affect one or more coastal uses or resources." *See id.* ¶ 91;

July 25 Report at 12.[1]

e. On August 8, 2024, the Commission voted to adopt the July 25, 2024, report in full. The Commission also demanded implementation of numerous, burdensome measures related to mitigating and monitoring impacts to resources on the Base. FAC ¶ 93.

f. On August 19, 2024, Defendant Cassidy Teufel sent to Sheila McCorkle and me an email requesting a meeting to discuss "the submittal of a coastal development permit application."

g. On August 23, 2024, Defendant Cassidy Teufel sent to Sheila McCorkle and me an email again requesting a call, noting that in October the Commission would be "considering Space Force's side of your proposed increase to 50 launches," and stating that "[p]rogress on your permit application will be key to that October hearing going well."

h. During a call with SpaceX on September 13, 2024, and in several emails, Defendant Cassidy Teufel demanded that SpaceX obtain a Coastal Development Permit to conduct future launches and threatened enforcement against the Falcon 9 launch program. FAC ¶ 96. The Commission also repeatedly demanded that SpaceX attend hearings before the Commission addressing the Falcon 9 launch program. Mr. Teufel stated that the "next hearing will not go well without SpaceX participation," and that SpaceX "needs to be engaged in the hearing and be committed to a process to obtain a

---

[1] *Available at* https://documents.coastal.ca.gov/reports/2024/8/Th9c/Th9c-8-2024-report.pdf.

permit." He clearly stated: "Without a permit, there is no path forward."

i. In a September 27, 2024 report, Commission staff found that Falcon 9 launches are federally permitted activities and stated that the Commission's "expectation [is] that SpaceX will be required to seek the Commission's authorization through submittal of a consistency certification and/or coastal development permit application." *Id.* ¶ 97; Dkt. 40-6 at 8 (Sept. 27 Report).[2] The report states that the Commission has "informed [SpaceX] of its position and the need for SpaceX to submit an application for a coastal development permit seeking after-the-fact and continuing authorization for its ongoing rocket launch, landing and associated activities." *Id*. The report explains that "[t]his position was conveyed both through a meeting between Commission and SpaceX staff held on September 13, 2024, and through correspondence in response to a letter received from SpaceX on September 10, 2024." *Id*. The report also states that "the Commission and Commission staff have consistently rejected [the Air Force's] characterization of the project as a 'federal agency activity' . . . ." *Id.* at 9. The report explained that Commission staff "also requested SpaceX's direct participation in the Commission's October 10, 2024, public meeting . . . ." *Id.* at 8.

j. In a September 27, 2024 letter to SpaceX, the Commission stated that "[t]he Commission disagrees with SpaceX's and the Department of Air Force's characterization that the launch of SpaceX rockets from a leased portion of [the Base] and associated

---

[2] *Available at* https://documents.coastal.ca.gov/reports/2024/8/Th9c/Th9c-8-2024-report.pdf.

activities and development outside of [the Base] are federal agency activities." FAC ¶ 98 & Ex. O at 2. The letter stated that "[t]he Commission continues to take the position that its [Coastal Development Permit] authority extends to SpaceX's Falcon 9 launches and landings and associated activities and development within and outside of [the Base]," referencing the June staff report that the Commission had adopted and approved. Ex. O at 2. The Commission directed SpaceX to obtain a Coastal Development Permit, including an "after-the-fact" Permit for past launches, and to attend in person the Commission's hearing on the proposal to increase SpaceX's launch cadence to up to 50 launches a year. *Id.* at 3.

k. I attended the Commission's October 10, 2024 hearing on the 50-launch cadence increase on SpaceX's behalf, as directed by the Commission. I explained the critical public interest in the Falcon 9 launch program and why the program is federal agency activity. The Commission again demanded that SpaceX obtain a Coastal Development Permit. The Commission abruptly cut my comments short, yet Commission Chair Hart later said that SpaceX should have participated "in a more significant way" at the hearing. The Commissioners voted to object to the Air Force's negative determination addressing the cadence increase to 50 launches. Consistent with prior demands, at least six of the ten voting Commissioners—Hart, Escalante, Bochco, Loewenberg, Wilson, Cummings, and Newsom—unequivocally stated that SpaceX must obtain a Coastal Development Permit before conducting future launches. *See* FAC ¶ 99. While the Commissioners had made other statements that were biased against SpaceX during prior hearings, I

was shocked by the reasons the Commissioners gave for treating SpaceX differently than other commercial space operators, demanding a Coastal Development Permit and consistency certification, and objecting to the 50-launch cadence increase. As explained in SpaceX's Complaint, the Commissioners made clear and expressed that their disparate treatment of SpaceX was rooted primarily in animosity toward SpaceX and the political beliefs and alleged labor practices of its largest shareholder and CEO, Elon Musk, not concern for the coastal zone. *See id.* ¶¶ 100-05.

15. Since the October 2024 hearing and after SpaceX filed suit, the Commission has not dropped, but rather has continued its position that the Falcon 9 launch program is federally permitted activity requiring a consistency certification and Coastal Development Permit.

16. Again, these actions by the Commission mark a sudden about-face. For decades prior, the Commission agreed with the Air Force and other federal agencies that commercial space launch programs at the Base are federal agency activities that are not subject to the Commission's permitting authority or control. Indeed, during the September 13, 2024, call, I specifically asked Commission staff if the Commission had ever required a Coastal Development Permit of any commercial operator at the Base before, such as in recently approving a different operator's proposal to launch at a higher launch cadence than was proposed for Falcon 9 at the time. The Commission staff responded that the Commission had not.

17. In taking these actions against SpaceX, the Commission has expressly treated SpaceX differently than other commercial space launch operators at the Base. For example, the Commission recently approved another commercial space launch operator launching up to 60 times a year from the Base. The Commission reviewed that launch program as federal agency activity and did not demand a Coastal Development Permit or consistency certification. As the Commission admitted at

the October hearing, the concern was not that a commercial operator with a space launch program at the Base was increasing its annual launch cadence, but rather that *SpaceX* was doing so. For example, Commissioner Hart acknowledged that, "[t]he concern is with *SpaceX* increasing its launches, not with the other companies increasing their launches . . . we're dealing with a company . . . the head of which has aggressively injected himself into the Presidential race and made it clear what his point of view is." *See id.* ¶ 100.

**III.    The Commission's actions harm SpaceX.**

18.    The Commission's actions and enforcement threats have disrupted SpaceX's business and harmed the company in several ways.

19.    As explained above, SpaceX has invested substantial resources into building launch infrastructure for the Falcon 9 program on its leased facilities at the Base, securing launch licenses, developing increased launch capacity, and securing contracts that depend on SpaceX's ability to launch from the Base. The Commission's unlawful demands and enforcement threats harm SpaceX's ability to use these vested rights and realize returns on its substantial investments. In investing in this infrastructure, SpaceX relied on the Commission's longstanding position that commercial space launch programs at the Base are federal agency activities that do not require Coastal Development Permits or consistency certifications from the Commission.

20.    SpaceX has substantial economic interests in continuing to operate its Falcon 9 launch program from its launch sites at the Base free of the Commission's retaliatory, biased, and unlawful interference. To take just one example, SpaceX has been the primary vendor for implementing the U.S. Department of Defense's Proliferated Low Earth Orbit (P-LEO) Satellite-Based Services program since its implementation in 2023. Under the original $900-million budget, most of the task orders were awarded to SpaceX. Many of the launches supporting this work occur from the Base. The Department of Defense recently increased its spending budget

on this project to more than $13 billion, and SpaceX anticipates that it will continue to serve as the primary vendor for these contracts. Compliance with the Commission's demands that SpaceX obtain a consistency certification and Coastal Development Permit to launch from the Base would delay or prevent SpaceX from performing work under these and other significant government contracts, and thereby delay SpaceX's receipt of billions of dollars.

21. SpaceX is also the primary launch provider deploying the Department of Defense's Proliferated Warfighter Space Architecture and National Reconnaissance Office's proliferated satellite constellation, which SpaceX does using Falcon 9.

22. The Commission's demands and enforcement threats place SpaceX in an intolerable position. SpaceX must either: (i) suspend its launch operations at the Base and submit to additional burdensome, costly, political, and unpredictable regulatory processes before a hostile and biased state agency that lacks regulatory authority over SpaceX and the U.S. Space Force, or (ii) proceed with operating the Falcon 9 launch program at the risk of a Commission enforcement action, civil fines, and penalties and/or third-party litigation seeking to enjoin SpaceX's launches because they are not authorized by a Coastal Development Permit. The Air Force is currently considering increasing the launch cadence of the Falcon 9 launch program to up to 100 Falcon 9 launches annually. SpaceX should not be required to invest the substantial capital and resources required to continue to operate and expand the Falcon 9 launch program at the Base in the face of enforcement threats by the Commission.

23. Indeed, SpaceX has already incurred substantial costs because of the Commission's unlawful and retaliatory demands and threatened enforcement. I would conservatively estimate that SpaceX has had to divert hundreds of hours of its employees' (including senior employees') time to addressing the Commission's unlawful demands, countering enforcement threats, and planning time-sensitive

launch operations in the face of threatened cease-and-desist orders by the Commission. SpaceX has also had to spend tens of thousands of dollars independent of this litigation on outside counsel and contractors to evaluate and counter the Commission's demands.

24. Additionally, SpaceX continues having to comply with costly measures that the Commission has demanded based on its unlawful view of the extent of its authority over SpaceX's operations. The Commission has repeatedly asserted authority to review effects of Falcon 9 launches on coastal resources that occur on the Base and other federal land that is not part of the coastal zone subject to the Commission's regulation under the CZMA or Coastal Act. Even though the Commission lacks any authority to regulate these impacts and the Air Force repeatedly found that the Commission's mitigation demands are burdensome and unnecessary, SpaceX has been required to implement measures demanded by the Commission to monitor and mitigate impacts on federal land. These mitigation and monitoring requirements demanded by the Commission are expected to cost SpaceX millions of dollars annually to implement and require significant employee resources. SpaceX would not be required to undertake these significant financial costs and administrative burdens but for the Commission's positions challenged in this case.

25. The Commission's disparate treatment of SpaceX, which the Commission's statements have shown to be motivated in substantial part by politically driven animus and retaliation against SpaceX and its owner Elon Musk, also causing SpaceX substantial competitive harm. The Commission has not refused to concur with the consistency review of other commercial space companies' operations at the Base. Nor has the Commission repeatedly demanded that those companies obtain Coastal Development Permits and consistency certifications from the Commission, and threatened enforcement.

26. The Commission's retaliation and animus against SpaceX for the

political speech and labor practices of its owner and Chief Executive Officer Elon Musk harm SpaceX in other ways too. The Commission's unconstitutional actions cause harmful, repressive uncertainty and concern for SpaceX about whether the protected speech of SpaceX's owners and executive officers will again result in adverse regulatory action by the Commission against SpaceX, thereby harming SpaceX's ability to use its property, exercise its rights under its launch licenses, and run its business. The Commission's unconstitutional actions also cause harmful, repressive uncertainty and concern for SpaceX regarding SpaceX's ability to petition the government for any needed approvals without oppressive action by the Commission based on disagreement with the alleged labor practices of SpaceX and its Chief Executive Officer Elon Musk, rather than any legitimate governmental concern of the Commission under the CZMA or Coastal Act.

27. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 7th day of February, 2025, in Washington, D.C.

_____
Mathew Dunn