1   ROB BONTA
    Attorney General of California
2   DAVID G. ALDERSON
    Supervising Deputy Attorney General
3   State Bar No. 231597
    JESSICA A. BONITZ
4   Deputy Attorney General
    State Bar No. 348048
5     1515 Clay Street, 20th Floor
      P.O. Box 70550
6     Oakland, CA  94612-0550
      Telephone:  (510) 879-0003
7     Fax:  (510) 622-2270
      E-mail:  David.Alderson@doj.ca.gov
8     E-mail:  Jessica.Bonitz@doj.ca.gov
    *Attorneys for Defendants*
9   *California Coastal Commission et al.*

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12

13

14

| | |
|---|---|
| 15  **Space Exploration Technologies Corp.,** | 2:24-cv-08893 SB (SKx) |
| 16 | **DEFENDANTS' NOTICE OF** |
| 17                          Plaintiff, | **MOTION AND MOTION TO DISMISS THE SECOND** |
| 18  **v.** | **AMENDED COMPLAINT; MEMORANDUM OF POINTS** |
| 19  **California Coastal Commission et al.,** | **AND AUTHORITIES IN SUPPORT THEREOF** |
| 20                          Defendants. | Date:        May 9, 2025 |
| 21 | Time:        8:30 a.m. |
| 22 | Courtroom:   6C |
| | Judge:       The Honorable Stanley |
| 23 | Blumenfeld, Jr. |
| | Trial Date:  March 9, 2026 |
| | Action Filed: 10/15/2024 |

24

25       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

26       PLEASE TAKE NOTICE that on May 9, 2025, at 8:30 a.m., or as soon

27  thereafter as the matter may be heard before the Honorable Stanley Blumenfeld, Jr.

28  in Courtroom 6C of the United States District Court for the Central District of

California, located at the First Street Courthouse, 350 W. First Street, Los Angeles, California 90012, Defendant California Coastal Commission, Defendants Paloma Aguirre, Dayna Bochco, Linda Escalante, Meagan Harmon, Susan Lowenberg, Ann Notthoff, Catherine Rice, Effie Turnbull-Sanders, Roberto Uranga, Kate Huckelbridge, and Cassidy Teufel, all sued in their official capacities, and Defendants Caryl Hart, Justin Cummings, Mike Wilson, and Gretchen Newsom, all sued in their official and personal capacities, will and hereby do move the Court for an order dismissing Plaintiffs' Second Amended Complaint ("SAC") under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Defendants' Rule 12(b)(1) motion is brought as a facial attack.

Defendants move for dismissal on the following grounds. First, Counts I, II, III, and IV of the SAC are defective for lack of constitutional and prudential ripeness. Second, the portion of Count I regarding a claim about mitigation and monitoring measures is defective for lack of constitutional standing. Third, Count V is defective for lack of constitutional standing. Fourth, Count VI is defective for lack of constitutional standing, and for failure to state a claim, particularly the failure to allege facts showing a constitutionally protected interest and deprivation thereof. Fifth, all Counts in the SAC are barred against Defendant California Coastal Commission under the Eleventh Amendment and principles of sovereign immunity. Sixth, Counts V and VI are barred against all the individual Defendants in their official capacities under the Eleventh Amendment and principles of sovereign immunity with respect to requested retrospective relief regarding a past decision by the Commission on October 10, 2024.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice and exhibits thereto, the Declaration of Cassidy Teufel, the Declaration of Jessica Bonitz, any Reply Memorandum of Points and Authorities, and such other matters as may properly come before the Court.

1    This motion is made following the conference of counsel pursuant to Local
2    Rule 7-3 which took place on April 2, 2025.
3
4    Dated:  April 11, 2025                    Respectfully submitted,
5                                              ROB BONTA
                                              Attorney General of California
6
7                                             /s/ David G. Alderson
8                                             DAVID G. ALDERSON
                                              Supervising Deputy Attorney General
9                                             JESSICA A. BONITZ
                                              Deputy Attorney General
10                                            *Attorneys for Defendants California
                                              Coastal Commission et al.*
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................ 1

Statement of the Case ....................................................................................... 1

   I.     Regulatory Background .............................................................. 1

        A.    Coastal Zone Management Act ...................................... 1

        B.    The California Coastal Act and Its Enforcement
            Provisions ...................................................................... 2

   II.    Procedural and Factual Background ........................................ 3

Legal Standards ................................................................................................ 4

Argument ........................................................................................................... 5

   I.     SpaceX's Claims Regarding Potential Requirements to Submit
       A Consistency Certification or Obtain a Coastal Development
       Permit (Counts I-IV) Are Not Ripe ......................................... 5

        A.    Constitutional and Prudential Ripeness Principles ...... 5

        B.    SpaceX's Claim Regarding A Potential Consistency
            Certification Is Not Ripe ............................................... 6

        C.    SpaceX's Claims Regarding A Potential Coastal
            Development Permit Are Not Ripe ............................... 7

            1.    The claims are not constitutionally ripe ........... 7

                 a.    No substantial threat of enforcement ..... 8

                 b.    SpaceX does not allege an actual or
                     imminent injury in fact ........................... 9

            2.    The claims are not prudentially ripe ............... 11

   II.    SpaceX Lacks Standing for Its Mitigation and Monitoring Claim
       in Count I .............................................................................. 12

   III.   SpaceX Lacks Standing for Its First Amendment Retaliation
       Claim (Count V) ................................................................... 13

   IV.   SpaceX's Procedural Due Process Claim (Count VI) Is Legally
       Deficient ............................................................................... 15

        A.    SpaceX Lacks Standing for Its Procedural Due Process
            Claim ........................................................................... 15

        B.    SpaceX Fails to State a Procedural Due Process Claim ...... 17

   V.    Sovereign Immunity Precludes the SAC as to the Commission
       and Requested Retrospective Relief in Counts V and VI as to the
       Individual Defendants in Their Official Capacity ................. 19

Conclusion ..................................................................................................... 20

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page**

CASES

*Alden v. Maine*
   527 U.S. 706 (1999) ......................................................................19

*Am. Petroleum Inst. v. Knecht*
   456 F. Supp. 889 (C.D. Cal. 1978) .................................................2

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ........................................................................4

*Ass'n of Am. Med. Colls. v. United States*
   217 F.3d 770 (9th Cir. 2000) ..............................................7, 10, 11

*Beck v. California*
   479 F. Supp. 392 (C.D. Cal. 1979) ...............................................19

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ........................................................................4

*Blair v. Bethel Sch. Dist.*
   608 F.3d 540 (9th Cir. 2010) .........................................................15

*Chandler v. State Farm Mut. Auto. Ins. Co.*
   598 F.3d 1115 (9th Cir. 2010) .........................................................4

*Clapper v. Amnesty Int'l USA*
   568 U.S. 398 (2013) ................................................................10, 13

*Dep't of Educ. v. Brown*
   600 U.S. 551 (2023) ......................................................................15

*Fed. Trade Comm'n v. Standard Oil Co. of Cal.*
   449 U.S. 232 (1980) ......................................................................10

*Howlett v. Rose*
   496 U.S. 356 (1990) ......................................................................19

*Jones v. L.A. Cent. Plaza*
   74 F.4th 1053 (9th Cir. 2023) ..........................................................4

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Knievel v. ESPN*

4

393 F.3d 1068 (9th Cir. 2005) ...................................................... 4

5

*Lujan v. Defs. of Wildlife*

6

504 U.S. 555 ............................................................................ 15

7

*Lund v. Cowan*

5 F.4th 964 (9th Cir. 2021) .................................................. 19, 20

8

*Lutge v. Harrington*

9

No. 23-15057, 2024 WL 654915 (9th Cir. Feb. 16, 2024) ............... 18

10

*McAllister v. Cal. Coastal Comm'n*

11

169 Cal. App. 4th 912 (2008) ........................................................ 3

12

*Miller v. City of Santa Monica*

13

No. CV 16-03142 SJO, 2017 WL 5974422 (C.D. Cal. Apr. 4, 2017) .............. 17

14

*Minn. State Bd. for Cmty. Colls. v. Knight*

15

465 U.S. 271 (1984) .................................................................. 19

16

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*

17

429 U.S. 274 (1977) .................................................................. 19

18

*Murthy v. Missouri*

19

603 U.S. 43 (2024) ........................................................ 13, 14, 16

20

*Olim v. Wakinekona*

461 U.S. 238 (1983) .................................................................. 18

21

*Pac. Palisades Bowl Mobile Ests., LLC v. City of L.A.*

22

55 Cal. 4th 783 (2012) ................................................................. 2

23

*Peace Ranch, LLC v. Bonta*

24

93 F.4th 482 (9th Cir. 2024) ........................................................ 6

25

*Pennhurst State Sch. & Hosp. v. Halderman*

26

465 U.S. 89 (1984) .................................................................... 19

27

*PSSI Glob. Servs., L.L.C. v. Fed. Commc'ns Comm'n*

28

983 F.3d 1 (D.C. Cir. 2020) ......................................................... 11

iii

1

2

**TABLE OF AUTHORITIES**
(continued)

Page

3

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*

4
    506 U.S. 139 (1993) ................................................................................20

5
*Sato v. Orange Cnty. Dep't of Educ.*

6
    861 F.3d 923 (9th Cir. 2017) ...................................................................5

7
*Seattle Pac. Univ. v. Ferguson*

8
    104 F.4th 50 (9th Cir. 2024) ...................................................................6

9
*Shanks v. Dressel*
    540 F.3d 1082 (9th Cir. 2008) ...............................................................17

10

*Stannard v. State Ctr. Cmty. Coll. Dist.*

11
    733 F. Supp. 3d 946 (E.D. Cal. 2024) ...................................................20

12
*Stormans, Inc. v. Selecky*

13
    586 F.3d 1109 (9th Cir. 2009) .................................................................9

14
*Susan B. Anthony List v. Driehaus*

15
    573 U.S. 149 (2014) .........................................................................5, 6, 7

16
*TransUnion LLC v. Ramirez*

17
    594 U.S. 413 (2021) ...............................................................................12

18
*Trump v. New York*

19
    592 U.S. 125 (2020) (per curiam) .......................................................5, 7

20
*Twitter, Inc. v. Paxton*
    56 F.4th 1170 (9th Cir. 2022).............................................5, 10, 13, 14

21

*Unified Data Servs., LLC v. Fed. Trade Comm'n*

22
    39 F.4th 1200 (9th Cir. 2022)...........................................................6, 10

23
*US W. Commc'ns v. MFS Intelenet, Inc.*

24
    193 F.3d 1112 (9th Cir. 1999)................................................................11

25
*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*

26
    535 U.S. 635 (2002) ...............................................................................20

27
*WMX Techs., Inc. v. Miller*

28
    197 F.3d 367 (9th Cir. 1999)...............................................14, 16, 18

iv

**TABLE OF AUTHORITIES**
(continued)

Page

*Ex parte Young*
209 U.S. 123 (1908) ....................................................................................... 20

**FEDERAL STATUTES**

16 United States Code
§ 1453(1) .................................................................................................. 1
§ 1455(d) .................................................................................................. 1
§ 1456(c)(1)(A) ........................................................................................ 1
§ 1456(c)(1)(C) ........................................................................................ 1
§ 1456(c)(3)(A) ........................................................................................ 2

**CALIORNIA STATUTES**

California Public Resource Code
§ 30008 ..................................................................................................... 2
§ 30315(b) ....................................................................................... 3, 8, 9, 15
§ 30315.1 ......................................................................................... 8, 9, 15
§ 30330 ..................................................................................................... 2
§ 30600(a) ................................................................................................ 2
§ 30809 ..................................................................................................... 2
§ 30809(b) ........................................................................................ 3, 8, 16

**FEDERAL RULES OF CIVIL PROCEDURE**

12(b)(6) .................................................................................................... 4
12(b)(1) ................................................................................................. 4, 5

**TABLE OF AUTHORITIES**
(continued)

Page

**FEDERAL REGULATIONS**

15 Code of Federal Regulations
§ 930.4(a)(2), (b) ........................................................................... 13
§ 930.36 ......................................................................................... 1
§ 930.41(a) ..................................................................................... 1
§ 930.43(d) ......................................................................... 2, 14, 16
§ 930.52 ......................................................................................... 2
§ 930.53(c) ..................................................................................... 7
§ 930.54(a)-(b) .............................................................................. 7
§ 930.53 ......................................................................................... 7
§ 930.54 ......................................................................................... 7
§ 930.57 ......................................................................................... 2
§ 930.62 ......................................................................................... 2
§ 930.63 ......................................................................................... 2
§ 930.120 *et seq.* ......................................................................... 2

**CALIFORNIA REGULATIONS**

California Code of Regulations, Title 14
§ 13096(a) ..................................................................................... 3
§ 13096(b)-(c) ............................................................................... 4
§ 13181(a) ............................................................................ 2, 3, 8
§ 13181(a)
§ 13191(a) ..................................................................................... 16

## INTRODUCTION

SpaceX's Second Amended Complaint (SAC) fails to cure the deficiencies found by the Court in its Order (Dkt. No. 51) dismissing SpaceX's First Amended Complaint. SpaceX still does not allege a justiciable claim arising from the Coastal Commission's objection to the Air Force's consistency determination for the 50-launch project on October 10, 2024. Nor can it. The Air Force, as allowed by federal law, disregarded the Commission's objection and proceeded with the 50-launch project. SpaceX also still does not allege a justiciable claim based on a potential coastal development permit (CDP). SpaceX points to no facts showing a substantial threat of enforcement, and its new allegations of injury are based on conjecture. For these and other reasons below, SpaceX's lawsuit should be dismissed without leave to amend.

## STATEMENT OF THE CASE

### I.    REGULATORY BACKGROUND

#### A.    Coastal Zone Management Act

The Coastal Zone Management Act ("CZMA") authorizes the Secretary of Commerce to review and approve coastal management programs submitted by the states. 16 U.S.C. § 1455(d). The CZMA, as relevant here, sets forth two categories of consistency review with approved coastal management programs.

First, when a "federal agency activity" affects any coastal use or resource in the "coastal zone," as defined in the CZMA, the federal agency must submit a "consistency determination" to the affected State for its review. 16 U.S.C. § 1456(c)(1)(C); 15 C.F.R. § 930.36; *see* 16 U.S.C. §§ 1453(1) (definition of "coastal zone"). For this submission, the federal agency must determine whether the activity will be fully consistent with the enforceable policies of the State's program. 16 U.S.C. § 1456(c)(1)(A); 15 C.F.R. § 930.36. The State may concur in or object to the determination. 15 C.F.R. § 930.41(a). If the State objects, the federal agency may proceed with the project if it concludes that "its proposed action is fully

consistent with the enforceable policies of the [State's] management program" or if it concludes that existing law prohibits full consistency. *Id.* § 930.43(d).

Second, when an applicant seeks a license or permit from a federal agency to conduct an activity that affects coastal resources, the applicant must provide the agency and the affected State with a "consistency certification" if the license or permit activity is subject to State review. 16 U.S.C. § 1456(c)(3)(A); 15 C.F.R. §§ 930.52 (defining applicant), 930.53 & 930.54 (procedures for listed and unlisted federal license or permit activities), § 930.57. The applicant must certify "that the proposed activity complies with the enforceable policies of the state's approved program and that such activity will be conducted in a manner consistent with the program." 16 U.S.C. § 1456(c)(3)(A); *see* 15 C.F.R. § 930.57. The State may concur in or object to the certification, and the Secretary may override an objection. 16 U.S.C. § 1456(c)(3)(A); *see* 15 C.F.R. §§ 930.62 & 930.63, 930.120 *et seq.*

California has a federally approved management program, and the program includes provisions in the California Coastal Act of 1976. Cal. Pub. Res. Code § 30008; *Am. Petroleum Inst. v. Knecht*, 456 F. Supp. 889, 893-94 (C.D. Cal. 1978), *aff'd*, 609 F.2d 1306 (9th Cir. 1979). The Commission is one of California's designated coastal zone-planning and management agencies and may exercise all powers authorized in the CZMA. Cal. Pub. Res. Code § 30330.

**B.    The California Coastal Act and Its Enforcement Provisions**

Apart from the CZMA, the California Coastal Act requires that "any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit" ("CDP"). *Pac. Palisades Bowl Mobile Ests., LLC v. City of L.A.*, 55 Cal. 4th 783, 794 (2012); *see* Cal. Pub. Res. Code § 30600(a).

The Commission's Executive Director has the discretion to enforce the CDP requirement. Cal. Pub. Res. Code § 30809; Cal. Code Regs., tit. 14, § 13181(a). For instance, "[i]f the executive director determines that any person . . . is threatening to undertake [a violation], the executive director *may* issue an order." Cal. Pub. Res.

Code § 30809 (Executive Director cease and desist order) (emphasis added).

Similarly, the Executive Director has discretion to bring a proposed enforcement

order before the Commission for its consideration. Cal. Code Regs., tit. 14, §§

13181(a) (the Executive Director "*may* commence" an enforcement hearing before

the Commission) (emphasis added), 13191(a) (same). The Executive Director must

provide an alleged violator with notice of intent to commence enforcement

proceedings as a prerequisite to any formal administrative enforcement action

(unless the alleged violator waives this notice requirement). *See* Cal. Pub. Res.

Code § 30809(b) (Executive Director cease and desist order); Cal. Code Regs., tit.

14, §§ 13181(a) (Commission cease and desist order), 13191(a) (Commission

restoration order).

An action by the Commission requires a majority vote. Cal. Pub. Res. Code §

30315(b). Likewise, "[a]doption of findings for any action taken by the

[C]ommission requires a majority vote of the members from the prevailing side."

*Id*. § 30315.1. The Commission's findings must be in writing. *See McAllister v.*

*Cal. Coastal Comm'n*, 169 Cal. App. 4th 912, 941 (2008); Cal. Code Regs., tit. 14,

§ 13096(a).

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Following the Court's order granting Defendants' motion to dismiss the FAC

(Dkt. No. 51), SpaceX filed the SAC on March 28, 2025. The SAC contains the

same six Counts as the FAC against the same Defendants but no longer sues

Defendant Rice in her personal capacity.

The factual background alleged in the SAC is largely the same as alleged in

the FAC and as set forth in the Court's Order granting Defendants' motion to

dismiss the FAC. Dkt. No. 31 (FAC) pp. 15-34; SAC pp. 15-40; Dkt. No. 51 (Court

Order dismissing the FAC) pp. 3-6. Thus, Defendants do not summarize the well-

pleaded allegations here.[1] The primary new allegations in the SAC are the allegations of injury in paragraphs 122 to 138, which are discussed in the Argument below.

Furthermore, on February 6, 2025, the Commission adopted written revised findings in support of its objection to the Air Force's consistency determination for the Air Force's 50-launch project. RJN Ex. B. *See* Cal. Code Regs., tit. 14, § 13096(b)-(c) (process for adopting revised findings when the Commission's decision is "substantially different" than staff's recommendation).

## LEGAL STANDARDS

To survive a Rule 12(b)(6) motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[L]abels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertion[s] devoid of further factual enhancement" are insufficient. *Id*. (quotations and citation omitted).

The same standard applies to survive a Rule 12(b)(1) motion to dismiss, brought as a facial attack, for lack of subject matter jurisdiction. *Jones v. L.A. Cent. Plaza*, 74 F.4th 1053, 1056-58 & n.1 (9th Cir. 2023). The burden of proof is on the party asserting federal subject-matter jurisdiction. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

---

[1] Defendants accept the SAC's well-pleaded allegations as true for purposes of this motion but do not admit the truth of the allegations. As set forth more fully in Defendants' Request for Judicial Notice ("RJN"), Defendants request that the Court consider Exhibit A to the RJN as incorporated by reference into the SAC, as it forms much of the basis for the claims in the SAC. *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

Finally, "[a] sovereign immunity defense is 'quasi-jurisdictional' in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion. *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).

## ARGUMENT

**I.    SPACEX'S CLAIMS REGARDING POTENTIAL REQUIREMENTS TO SUBMIT A CONSISTENCY CERTIFICATION OR OBTAIN A COASTAL DEVELOPMENT PERMIT (COUNTS I-IV) ARE NOT RIPE**

Counts I through IV seek judicial intervention before SpaceX is potentially required to submit a consistency certification or obtain a CDP (Counts I-IV).[2] These claims are brought against the Commission and the individual Defendants in their official capacities and seek injunctive and declaratory relief. These claims are not ripe for judicial resolution.

### A.    Constitutional and Prudential Ripeness Principles

"The constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (quotations and citations omitted). "Whether framed as an issue of standing or ripeness, an injury must involve an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (quotations and citations omitted). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotations and citation omitted). "[T]he case must be 'ripe'—not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Trump v. New York*, 592 U.S. 125, 131 (2020) (per curiam) (citation omitted).

For "pre-enforcement review under circumstances that render the threatened enforcement sufficiently imminent," "a plaintiff satisfies the injury-in-fact

_____

[2] Count I also seeks relief regarding mitigation and monitoring requirements. SAC ¶¶ 140, 147-149. That aspect of Count I is addressed below in Section II.

5

requirement where he alleges an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Driehaus*, 573 U.S. at 158-59 (quotations and citation omitted). The "threat of future enforcement must be substantial." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487, 490 (9th Cir. 2024) (quotations and citation omitted). Factors the Ninth Circuit considers include "[1] whether the plaintiffs have articulated a concrete plan to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022) (quotations and citation omitted). While the element "often rises or falls with the enforcing authority's willingness to disavow enforcement," "we cannot go so far as to say that a plaintiff has standing whenever the Government refuses to rule out use of the challenged provision." *Peace Ranch*, 93 F.4th at 490 (quotations and citations omitted).

Unlike constitutional ripeness, "[p]rudential ripeness is discretionary." *Seattle Pac. Univ. v. Ferguson*, 104 F.4th 50, 65 (9th Cir. 2024) (citation omitted). The two "overarching considerations" are "the fitness of the issues for judicial review and the hardship to the parties of withholding court consideration." *Id.* (quotations and citations omitted).

### B.   SpaceX's Claim Regarding A Potential Consistency Certification Is Not Ripe

<u>No constitutional ripeness.</u> SpaceX's claim suffers from the same fatal defect that the Court found in its order dismissing the FAC: the Falcon 9 launch program does not presently fall within either of the classes of activities for which a consistency certification is required. Dkt. No. 51 at 10 n.3. As the SAC admits, the launch program is not a listed license or permit activity in California's coastal management program, nor is it an unlisted federal license or permit activity

approved for review by the National Oceanic and Atmospheric Association

("NOAA"). SAC ¶ 146; *see* 15 C.F.R. §§ 930.53 & 930.54 (procedures for listed

and unlisted activities), 930.11(f) (defining Director of NOAA).

The SAC also does not allege any notifications or other steps taken by the

Commission, much less approvals by NOAA, that would trigger a requirement for a

consistency certification for the Falcon 9 program. *See* 15 C.F.R. §§ 930.53(c) &

930.54(a)-(b) (procedures for listed and unlisted activities), 923.80(b) & 923.84(d)

(procedures for amending State management program). Thus, any potential

consistency certification requirement, let alone any enforcement of it by the

Commission, is "dependent on 'contingent future events that may not occur as

anticipated, or indeed may not occur at all.'" *Trump*, 592 U.S. at 131 (citation

omitted). Given these contingent events, SpaceX cannot allege a future injury that

is certainly impending or a substantial risk of harm. *See Susan B. Anthony List*, 573

U.S. at 158.

No prudential ripeness. The nonexistence of a consistency certification

requirement, as well as the contingent events necessary for one to apply, show that

SpaceX's claim is unfit for judicial review and that withholding review would not

impose undue hardship on SpaceX. *See Ass'n of Am. Med. Colls. v. United States*,

217 F.3d 770, 780-84 (9th Cir. 2000) (challenge to nonfinal agency action unripe).

Nothing requires an immediate and significant change to SpaceX's affairs. *See id.*

at 783-84.

**C.    SpaceX's Claims Regarding A Potential Coastal Development
        Permit Are Not Ripe**

**1.    The claims are not constitutionally ripe**

SpaceX's claims are not constitutionally ripe because SpaceX still has not

alleged a substantial threat of enforcement or an actual or imminent injury.

### a. No substantial threat of enforcement

Even accepting as true the SAC's allegations that the Commission believes that a CDP is required and has repeatedly requested a CDP application,[3] SpaceX falls well short of alleging a substantial threat of enforcement. SpaceX still does not allege that Defendants have initiated any enforcement action against SpaceX or that Defendants have specified any enforcement action they may take. As mentioned, the Commission's Executive Director must provide an alleged violator with notice of intent to commence enforcement proceedings as a prerequisite to any formal administrative enforcement action (unless the alleged violator waives this notice requirement). *See* Cal. Pub. Res. Code § 30809(b) (Executive Director cease and desist order); Cal. Code Regs., tit. 14, §§ 13181(a) (Commission cease and desist order), 13191(a) (Commission restoration order). The SAC does not allege that the Executive Director has issued a notice of intent to commence enforcement proceedings with respect to any CDP requirement. The SAC also does not allege any enforcement, past or present, of a CDP requirement against any commercial space operator.

While the SAC alleges that Mr. Teufel "threatened enforcement" on a call in September 2024 (SAC ¶ 103), this allegation is conclusory, and the SAC does not allege (and cannot) that Mr. Teufel has authority to enforce a possible CDP requirement. The SAC asserts that SpaceX faces an enforcement risk based on vague allegations of disparate treatment motivated by animus. SAC ¶ 125. While the SAC alleges animus by several Commissioners who stated that a CDP is

---

[3] The SAC alleges that Commission staff has taken the position that a CDP is required and have requested a CDP application, and a majority of the Commissioners agreed with that position on the record at the October 10, 2024 meeting. SAC ¶ 106 & Ex. S, ¶ 189. Still, the Commission, as a matter of law, has not determined whether a CDP is required, because it has not voted to require a CDP, and it can only act by majority vote. *See* Cal. Pub. Res. Code §§ 30315(b), 30315.1. Statements by select Commissioners at the Commission's October 10, 2024 meeting regarding a CDP requirement do not constitute an action or findings by the Commission. *See id.* §§ 30315(b), 30315.1. At the October 2024 hearing, only the Air Force's consistency determination was before the Commission. RJN Ex. A.

required (SAC ¶ 189), none of the individual Commissioners can individually initiate any enforcement, and they have no independent authority under the Coastal Act. *See* Cal. Pub. Res. Code §§ 30315(b), 30315.1.[4] The SAC's bare and speculative allegations about the Air Force's proposed annual 100-launch project do not suggest an enforcement risk either. SAC ¶¶ 125 at 42:6-10, 124 at 41:25-27, 81. That proposal is not pending with the Commission. The SAC alleges that the Air Force is currently considering and reviewing the potential project under the National Environmental Policy Act. SAC ¶ 81. The SAC does not allege when the potential project was publicly announced or when the Commission first learned about it, much less any facts about the progress of the environmental review or any other information about the project's timeline. The Commission's general enforcement of the CDP requirement is irrelevant as well. SAC ¶ 126. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1125 (9th Cir. 2009) (declaring "how aggressively [the commission] generally enforces [the antidiscrimination law] against claims of discrimination is irrelevant to examining whether [the commission] is specifically threatening to enforce [the antidiscrimination law] against Appellees.").

Given the lack of allegations of an intent to enforce, along with the Air Force's position that no CDP is required (SAC ¶ 74), SpaceX has not alleged a substantial threat of enforcement to show a ripe Article III controversy.

> **b.    SpaceX does not allege an actual or imminent injury in fact**

The alleged harms in the SAC (¶¶ 123-124, 127-131, 133, 136-138) lack legal and factual foundation and do not show an actual or imminent injury from a potential CDP requirement. **First**, SpaceX's alleged injuries from what it characterizes as a Hobson's choice are based on conjecture and lack immediacy.

---

[4] The SAC further shows no disparate treatment, because it alleges that Commission staff requested a CDP from a different operator in 2022 and also never initiated enforcement. SAC ¶ 74 & Ex. B (letter from the Air Force rejecting the Commission's request that the operator apply for a CDP).

SAC ¶¶ 123-124, 127-128, 131. As discussed above, SpaceX has not alleged a substantial threat of enforcement. "Even a 'Hobson's choice' must be . . . 'imminent.'" *Unified Data*, 39 F.4th at 1211; *Ass'n of Am. Med. Colls.*, 217 F.3d at 783-84 (same). In *Unified Data*, the court held that the plaintiffs did not allege a "credible threat of enforcement" because the complaint alleged that the plaintiffs "face 'serious civil penalties' from violation of the challenged policies, without any indication that such penalties are imminent or realistic." 39 F.4th at 1211. Any penalties here are likewise not imminent and are hypothetical. There has been no issuance of a notice of intent to enforce, and Defendants have not specified what any enforcement might entail. Any potential CDP requirements are not immediate either, given the lack of allegations of a substantial threat of enforcement. SpaceX's allegations that it would have to suspend or delay its launches and may not even obtain a CDP, should it apply for one, are speculative.

**Second**, SpaceX alleges harm based on its own actions, including attending meetings, hiring attorneys to appear before the Commission, and "expend[ing] resources" for planning. SAC ¶¶ 130, 133. Yet voluntary, self-imposed costs are not a basis for an Article III injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves[.]"); *Twitter, Inc.*, 56 F.4th at 1175–76 (finding no injury where Twitter voluntarily incurred costs to respond to a civil investigative demand). *Cf. Fed. Trade Comm'n v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980) (burden of defense in administrative adjudicatory proceedings does not constitute irreparable injury). SpaceX's allegations are also vague and ambiguous (e.g. "expend resources" in SAC ¶ 130 and "other related correspondence and demands" in SAC ¶ 133), making what the alleged costs were incurred for uncertain. Some allegations appear to pertain to attending Commission hearings regarding the Air Force's consistency determinations. SAC ¶ 133 ("attorneys to appear before the Commission").

**Third**, SpaceX's alleged "competitive harm" lacks requisite detail to show plausibility. SAC ¶¶ 136-137. SpaceX does not identify the competitive market, much less that any alleged commercial space operators compete with it in that market. *See PSSI Glob. Servs., L.L.C. v. Fed. Commc'ns Comm'n*, 983 F.3d 1, 11–12 (D.C. Cir. 2020) (no competitor standing where plaintiff did not compete with other alleged competitors in the relevant market). Just because another commercial space launch operator has allegedly not been told by the Commission to apply for a CDP, and that the Air Force allegedly received authorization for 60 annual launches in 2023 for that operator, does not mean that the operator has undertaken (or is in a position to undertake) those launches or competes in the same market as SpaceX. SAC ¶¶ 72, 137.

**Fourth**, SpaceX's alleged harm to its "business reputation" (SAC ¶ 138) is unsupported because none of the alleged statements mention SpaceX, as opposed to Mr. Musk or another one of Mr. Musk's companies (Starlink). SAC ¶¶ 92 & 111 (alleging statements by Defendant Cummings). It is also unknown how this alleged harm relates to Counts I-IV and how any relief obtainable through these claims could redress this alleged harm.

### 2. The claims are not prudentially ripe.

The <u>hardship prong</u> is not met because there is nothing requiring an immediate and significant change to SpaceX's affairs. *See Ass'n of Am. Med. Colls.*, 217 F.3d at 783-84. As discussed above, SpaceX's alleged injuries are speculative and not imminent. The <u>fitness prong</u> is not met either because no facts show that either the Executive Director or the Commission has decided to enforce a CDP requirement. Judicial review now would be advisory and premature. *See US W. Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999) (factoring "[p]rinciples of federalism" in the ripeness analysis when "reviewing a state agency decision at an interim stage in an evolving process.").

## II. SPACEX LACKS STANDING FOR ITS MITIGATION AND MONITORING CLAIM IN COUNT I

The SAC adds new allegations in Count I that seek to challenge the Commission's alleged "demands that SpaceX implement mitigation and monitoring measures on the Base and other federal land." SAC ¶¶ 140, 147-49. SpaceX appears to rest this claim on mitigation and monitoring measures in the Air Force's 36-launch project and the Air Force's 50-launch project. For the 36-launch project, the Commission, on August 8, 2024, conditionally concurred with the Air Force's consistency determination, and the conditions included seven mitigation and monitoring measures, three of which had not yet been agreed to by the Air Force. SAC ¶¶ 96-98 & Exs. M and N. Following the Commission's conditional concurrence, Commission staff and the Air Force consulted further, as intended by the CZMA, and the Air Force voluntarily determined to incorporate the remaining three conditions as part of its project. SAC ¶¶ 99-100 & Exs. O and P. In turn, for the 50-launch project, the Air Force included these mitigation and monitoring measures in its proposed project. SAC ¶ 105 Ex. Q at 13 (describing the proposed project to include "fully implementing the coastal resource protective measures described in Conditions 1 through 7 of the Commission's August 8th conditional concurrence."); RJN Ex. A at 4:15-19. The Air Force is currently proceeding with that project, over the Commission's October 10, 2024 objection, to the Air Force's consistency determination for the project. SAC ¶ 116.

SpaceX lacks Article III standing for this claim. "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

SpaceX does not demonstrate any of the three core standing elements. The mitigation and monitoring measures are part of the Air Force's project and only

12

impose mitigation and monitoring obligations directly on the Air Force. The SAC
does not allege facts regarding the arrangement between the Air Force and SpaceX
for undertaking any of the measures. For example, the SAC does not allege whether
any mitigation and monitoring is required by the terms of SpaceX's lease with the
Air Force or through some other arrangement with the Air Force. As mentioned
above, voluntary costs do not constitute an injury in fact. *See Clapper*, 568 U.S. at
416; *Twitter, Inc.*, 56 F.4th at 1175–76.

Although SpaceX alleges on information and belief that the Air Force "will
withdraw or limit at least some of these requirements" if the Court were to
determine that the Commission had no legal basis to request them (SAC ¶ 100),
such allegations are speculative. Further, under the CZMA regulations, the Air
Force makes the final, independent decision about what constitutes its project,
including what mitigation and monitoring measures to include. *See* 15 C.F.R. §§
930.4(a)(2), (b); 930.43(d). Thus, not only does the SAC fail to allege how the
mitigation and monitoring requirements impose any obligation directly on SpaceX
and thereby cause it any injury at all, this injury, even if it exists, also is not fairly
traceable to Defendants' actions, nor would it be redressable by any court order
against Defendants. Rather, SpaceX must look to the Air Force for relief. *See
Murthy v. Missouri*, 603 U.S. 43, 57 (2024) ("[I]t is a bedrock principle that a
federal court cannot redress 'injury that results from the independent action of some
third party not before the court.'").

### III.  SPACEX LACKS STANDING FOR ITS FIRST AMENDMENT RETALIATION CLAIM (COUNT V)

SpaceX asserts that Defendants undertook a "course of conduct" in 2024 in
retaliation for Mr. Musk's protected speech. SAC ¶¶ 180, 194. SpaceX's claim is
based on (1) the Commission's decision not to concur in the Air Force's
consistency determination on October 10, 2024, and (2) alleged Commission
actions to require a CDP. *Id.* ¶¶ 180, 190, 194. SpaceX has not demonstrated

1    Article III standing for either basis. *See Twitter, Inc.*, 56 F.4th at 1174 (declaring

2    that Article III standing elements apply to First Amendment retaliation claims).

3        Regarding the first basis, the SAC lacks allegations of injury, causation, or

4    redressability related to the Commission's vote not to concur. This absence is

5    unsurprising, given the Air Force's decision to override the Commission's

6    objection, as allowed by law and consistent with the Air Force's long-standing

7    position. SAC ¶¶ 116, 72. *See* 15 C.F.R. § 930.43(d). The only discernable

8    allegation of injury in the SAC is harm to business goodwill, premised on a

9    statement by a Commissioner who voted *to concur* in the Air Force's consistency

10   determination. SAC ¶ 138 at 47:26-28 and 48:1; ¶ 111 at 36:13-19 (comment by

11   Commissioner Cummings). RJN Ex. A at 128:8 & SAC ¶ 113 (Cummings' vote).

12   Thus, the alleged harmful statement does not support SpaceX's retaliation claim

13   premised on the October 10, 2024 vote not to concur. It is also not a basis for a

14   Section 1983 claim. *See*, *e.g.*, *WMX Techs., Inc. v. Miller*, 197 F.3d 367, 375-76

15   (9th Cir. 1999) (en banc) (alleged harm to business reputation and goodwill by

16   official's adverse statement is not a cognizable section 1983 claim). Furthermore,

17   SpaceX makes no allegations to indicate how its alleged injury could somehow be

18   traced to the other Defendants or is redressable through its retaliation claim. *See*

19   *Murthy*, 603 U.S. at 61 ("'[P]laintiffs must demonstrate standing for each claim that

20   they press' against each defendant, 'and for each form of relief that they seek.'").

21       Regarding the second basis of its retaliation claim (alleged actions to require a

22   CDP), SpaceX has not demonstrated an Article III injury in fact for the same

23   reasons discussed above in Section I.C.1.a & b in connection with Counts I through

24   IV as well as immediately above regarding business goodwill. SpaceX also has not

25   shown causation or redressability for each Defendant. Regarding causation, the

26   SAC fails to allege a specific decision or action by the Defendants to require a CDP

27   that could constitute a retaliatory action leading to SpaceX's alleged harm. The only

28   specific retaliatory conduct that SpaceX alleges are statements by four

Commissioners (Hart, Newsom, Cummings, and Wilson) at the October 10, 2024, meeting that a CDP is needed. SAC ¶ 189. But the individual Commissioners have no independent authority under the Coastal Act to require a CDP, as the Commission can only act by majority vote. *See* Cal. Pub. Res. Code §§ 30315(b), 30315.1. Thus, the alleged statements by the four Commissioners have no effect. Government officials also have a First Amendment right to say what they believe the law requires. *See*, *e.g.*, *Blair v. Bethel Sch. Dist.*, 608 F.3d 540, 545 (9th Cir. 2010) ("we assume all of the Board members have a protected interest in speaking out and voting their conscience on the important issues they confront"). For these reasons, the alleged statements cannot serve as a causal basis for SpaceX's alleged injuries for its retaliation claim. Notably, the SAC also does not allege any facts regarding redressability.

## IV.  SPACEX'S PROCEDURAL DUE PROCESS CLAIM (COUNT VI) IS LEGALLY DEFICIENT

### A.  SpaceX Lacks Standing for Its Procedural Due Process Claim

Like its First Amendment claim, SpaceX's procedural due process claim is rooted in (1) the Commission's decision on October 10, 2024, not to concur with the Air Force's consistency determination and (2) alleged "demands" for a CDP. SAC ¶ 207. Again, SpaceX has not demonstrated Article III standing for either basis. *See Dep't of Educ. v. Brown*, 600 U.S. 551, 562 (2023) ("the 'deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing.'"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 572-573 & ns. 7 & 8 (1992) (discussing concrete-interest requirement).

Regarding the first basis, the SAC lacks allegations of injury, causation, and redressability related to the vote not to concur with the Air Force's consistency determination on October 10, 2024. SpaceX does not identify any facts that show a concrete interest affected by the Commission's decision not to concur. This is

undoubtedly because the Air Force overrode the Commission's objection, as allowed by law and consistent with the Air Force's long-standing position. SAC ¶¶ 116, 72. *See* 15 C.F.R. § 930.43(d). The sole allegation of injury associated with the vote not to concur is discussed above in Section III (alleged harm to business goodwill due to a Commissioner's statement). But for similar reasons as discussed in that Section, this allegation does not support SpaceX's standing for its procedural due process claim. In particular, the Commissioner who made the statement voted to concur in the Air Force's consistency determination (RJN Ex. A at 128:8), and thus the statement does not support SpaceX's due process claim premised on the Commission's decision not to concur. The statement is also not a basis for a Section 1983 claim. *See*, *e.g.*, *WMX Techs. Inc.*, 197 F.3d at 375-76. SpaceX, moreover, makes no allegations indicating how its alleged injury could somehow be traced to the other Defendants or is redressable through its due process claim. *See Murthy*, 603 U.S. at 61 ("'[P]laintiffs must demonstrate standing for each claim that they press' against each defendant, 'and for each form of relief that they seek.'").

Regarding the second basis of SpaceX's due process claim (alleged demands for a CDP), the SAC similarly lacks adequate allegations of injury, causation, and redressability. SpaceX does not identify any facts that show a concrete interest affected by any unconstitutional process associated with any alleged CDP demands. There are no allegations that the Commission has held a hearing to consider and vote on a CDP requirement, much less initiated enforcement of such a requirement. The SAC does not allege that the Commission's Executive Director has issued a notice of intent to commence enforcement proceedings, and this notice is a prerequisite for formal administrative enforcement action (unless the alleged violator waives this notice requirement). *See* Cal. Pub. Res. Code § 30809(b); Cal. Code Regs., tit. 14, §§ 13181(a), 13191(a). There are also no allegations suggesting that Defendants would take any action to require a CDP without following required legal procedures affording advanced notice to SpaceX and other due process.

SpaceX simply fails to point to any actual or imminent injury to any concrete interest arising out of a previously concluded proceeding, or some unknown future proceeding, by Defendants in which they could demand a CDP. SpaceX has not demonstrated a plausible Article III injury in fact for additional reasons discussed above in Section I.C.1.a & b in connection with Counts I through IV regarding a potential CDP requirement as well as immediately above regarding business goodwill. Finally, SpaceX has not alleged any facts showing causation or redressability for each Defendant through its due process claim.

### B.    SpaceX Fails to State a Procedural Due Process Claim

To state a procedural due process claim, SpaceX must allege facts showing "the existence of (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process." *Shanks v. Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (quotations and citation omitted). SpaceX fails to allege facts showing (1) and (2).

No protected property interest or deprivation. SpaceX attempts to allege deprivation of three property interests. SAC ¶ 205. **First**, SpaceX asserts it "has constitutionally protected property interests in its government permits, licenses, leases, and contracts." *Id*. Yet the SAC does not identify any specific permits, and includes only scant allegations about SpaceX's licenses, leases, and contracts, which fail to establish that they constitute protected property interests. SAC ¶ 128 at 44:10. Even if they do, SpaceX has not alleged any deprivation of these interests arising out of the Commission's decision not to concur in the Air Force's consistency determination at the October 10, 2024 hearing, particularly because the Air Force overrode the Commission's decision. Nor has SpaceX alleged any deprivation of its property interests arising out of any demands for a CDP. *See also Miller v. City of Santa Monica*, No. CV 16-03142 SJO (ASx), 2017 WL 5974422, at *5-6 (C.D. Cal. Apr. 4, 2017), *aff'd*, 732 F. App'x 602 (9th Cir. 2018) ("Not every interference with contractual expectations constitutes a deprivation of a

constitutionally protected rights however, as a common law breach of contract claim provides adequate due process in most cases.").

**Second**, SpaceX's allegations of harm to its business goodwill only pertain to alleged harm to its reputation, which does not rise to the level of deprivation of a protected property interest. SAC ¶¶ 138, 205. *See WMX Techs. Inc.*, 197 F.3d 367 at 375-76. **Third**, SpaceX asserts an interest in "receiving fair and unbiased regulatory treatment by the Commission in connection with all necessary approvals." SAC ¶ 205. But this alleged interest is an interest in process, not property. *See*, *e.g.*, *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) (distinguishing process from a protected interest).

No protected liberty interest or deprivation. SpaceX alleges that it has "constitutionally protected interests to petition the government and to obtain all needed government authorizations and review." SAC ¶ 204. By characterizing these interests as "liberty interests," SpaceX apparently attempts to assert a liberty interest in a First Amendment right to petition the government. *Id.*

SpaceX's supposed liberty interest is precluded by *WMX Techs. Inc.*, 197 F.3d at 372-73. There, the Ninth Circuit held that an application for a major use permit was not "a petition to 'the Government for a redress of grievances' under the First Amendment," because the application did not implicate the applicant's "associational or speech interests." *Id.* at 372-73. Likewise here, SpaceX does not allege that the Air Force's March 2024 and July 2024 consistency determinations (not SpaceX's consistency determinations), which are the subject of the Commission's proceedings alleged in the SAC, implicated SpaceX's associational or speech interests. SAC Exs. J & R; SAC ¶¶ 88-113. Accordingly, the Air Force's consistency determinations were not petitions to the Commission for a redress of grievances under the First Amendment and cannot somehow constitute a protected liberty interest for SpaceX's procedural due process claim. *See WMX Techs. Inc.*, 197 F.3d at 372-73; *Lutge v. Harrington*, No. 23-15057, 2024 WL 654915, at *2

18

(9th Cir. Feb. 16, 2024) (following *WMX Techs*, *Inc.*). Inasmuch that SpaceX has not applied for a CDP and the Commission has not held any hearings to require a CDP, there has been no "petition" concerning any CDP.

SpaceX fails to allege facts showing deprivation of its purported liberty interest as well. SAC ¶ 204. SpaceX cannot allege deprivation in any event. *See Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues.").

## V.   SOVEREIGN IMMUNITY PRECLUDES THE SAC AS TO THE COMMISSION AND REQUESTED RETROSPECTIVE RELIEF IN COUNTS V AND VI AS TO THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITY

First, sovereign immunity bars the SAC as to the Commission because it is an arm of the State of California and does not consent to suit. There is no question that the Commission is an arm of the State of California. *See*, *e.g.*, SAC ¶ 2 (conceding that the Commission is an agency of the State of California); *Beck v. California*, 479 F. Supp. 392, 396 (C.D. Cal. 1979) (holding that the Coastal Commission is an arm of the State of California for purposes of sovereign immunity). There is also no question sovereign immunity applies to an "arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *see Alden v. Maine*, 527 U.S. 706, 712-13 (1999) (discussing sovereign immunity). Sovereign immunity applies "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). It specifically immunizes "arms of the State" from "suit under § 1983." *Howlett v. Rose*, 496 U.S. 356, 365 (1990). Based on these well-established principles, the court in *Beck* dismissed a federal section 1983 lawsuit against the Commission. 479 F. Supp. at 396.

Second, sovereign immunity precludes requested retrospective relief in Counts V and VI in the SAC as to the fifteen individual defendants sued in their official capacities. *See Lund v. Cowan*, 5 F.4th 964, 969 (9th Cir. 2021) ("State officials

sued in their official capacities are generally entitled to Eleventh Amendment immunity."). Although there is an exception to Eleventh Amendment sovereign immunity for state officials under *Ex parte Young*, 209 U.S. 123, 159-60 (1908), that exception is narrow and inapplicable here. To determine whether the exception applies, a court must "conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,* 535 U.S. 635, 645 (2002) (citations omitted).

Here, Counts V and VI seek impermissible retrospective declaratory and injunctive relief as to the legality of the Commission's past decision on October 10, 2024, not to concur in the Air Force's consistency determination. SAC ¶¶ 194, 207. There is no alleged on-going violation of law with respect to this decision. As discussed above in Argument Section III, the Commission's decision was not the final decision under the CZMA's regulations and was superseded by the Air Force's subsequent decision to proceed with the project. The *Ex parte Young* exception therefore does not apply to bar the individual defendants' immunity. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 146 (1993) (*Ex parte Young* exception "does not permit judgments against state officers declaring that they violated federal law in the past."); *Lund*, 5 F.4th at 969-70 (denying request for retrospective declaratory relief involving past conduct); *Stannard v. State Ctr. Cmty. Coll. Dist*., 733 F. Supp. 3d 946, 959-61 (E.D. Cal. 2024) (rejecting request for alleged prospective injunctive relief where allegations only raised past harm and did not present an ongoing violation).

## CONCLUSION

For the foregoing reasons, the SAC should be dismissed without leave to amend.

Dated:  April 11, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California


/s/ David G. Alderson
DAVID G. ALDERSON
Supervising Deputy Attorney General
JESSICA A. BONITZ
Deputy Attorney General
*Attorneys for Defendants California
Coastal Commission et al.*

OK2024605276
91975980.docx

**MEET AND CONFER CERTIFICATION**

I certify that the parties met in person or by videoconference, thoroughly discussed each and every issue raised in the motion, and attempted in good faith to resolve the motion in whole or in part.

Dated:  April 11, 2025                                   Respectfully submitted,

ROB BONTA
Attorney General of California


/s/ David G. Alderson
DAVID G. ALDERSON
Supervising Deputy Attorney General
JESSICA A. BONITZ
Deputy Attorney General
*Attorneys for Defendants California Coastal Commission et al.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants, certifies that this brief contains 6,598 words, which:

X complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

Dated:  April 11, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California


*/s/ David G. Alderson*
DAVID G. ALDERSON
JESSICA A. BONITZ
Deputy Attorney General
Supervising Deputy Attorney General
*Attorneys for Defendants California
Coastal Commission et al.*

23