VENABLE LLP
Tyler G. Welti (SBN 257993)
101 California Street, Suite 3800
San Francisco, CA 94111
Telephone: (415) 653-3750
Facsimile: (415) 653-3755
tgwelti@venable.com

Colin B. Vandell (SBN 240653)
2049 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9901
cvandell@venable.com

Mitchell Y. Mirviss (*pro hac vice*)
750 East Pratt Street, 9th Floor
Baltimore, MD  21202
Telephone: (410) 244-7412
Facsimile: (410) 244-7742
mymirviss@venable.com

Attorneys for Plaintiff Space Exploration Technologies Corp.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPACE EXPLORATION TECHNOLOGIES CORP., <br><br> Plaintiff, <br><br> v. <br><br> CALIFORNIA COASTAL COMMISSION, et al., <br><br> Defendants. | Case No. 2:24-cv-08893-SB-SK <br><br> **SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** <br><br> Date:          May 30, 2025 <br> Time:         8:30 a.m. <br> Courtroom:  6C <br> Judge:        Hon. Stanley Blumenfeld, Jr. <br><br> Action Filed:  October 15, 2024 <br> Trial Date:    Not Set |

# TABLE OF CONTENTS

I.       INTRODUCTION ..................................................................................1

II.      BACKGROUND ...................................................................................2

III.     ARGUMENT ........................................................................................3

     A.     Standard of review...................................................................3

     B.     Counts I-IV are ripe.................................................................3

          1.     The Commission's enforcement threats harm SpaceX..................................................................3

          2.     SpaceX alleges a credible threat of enforcement..............5

          3.     The Commission has taken harmful regulatory action directly against SpaceX. ..........................12

     C.     Counts I-IV are prudentially ripe. ................................14

     D.     SpaceX shows standing for its First Amendment and Procedural Due Process claims (Counts V-VI)...........................14

     E.     SpaceX states a procedural due-process claim (Count VI). .........18

     F.     Sovereign immunity does not warrant dismissal of any defendant.................................................................22

IV.      CONCLUSION....................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abbott Lab. v. Gardner*,
  387 U.S. 136 (1967)..................................................................................13

*Ariz. Alliance for Ams. v. Mayes*,
  117 F.4th 1165 (9th Cir. 2024) ..................................................................7

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
  824 F.3d 858 (9th Cir. 2016) ...............................................................15, 17

*Arizona v. Yellen*,
  34 F.4th 841 (9th Cir. 2022) .........................................................5, 7, 8, 9

*Armstrong v. Reynolds*,
  22 F.4th 1058 (9th Cir. 2022) ..............................................................19, 21

*Assoc. of Am. Med. Colls. v. United States*,
  217 F.3d 770 (9th Cir. 2000) ......................................................................9

*Bishop Paiute Tribe v. Inyo Cnty.*,
  2018 WL 347797 (E.D. Cal. Jan. 10, 2018) .............................................22

*Bishop Paiute Tribe v. Inyo Cnty.*,
  863 F.3d 1144 (9th Cir. 2017) ...................................................................3

*Cal. Coastal Comm'n v. Granite Rock Co.*,
  480 U.S. 572 (1987)....................................................................................8

*Cal. Trucking Ass'n v. Bonta*,
  996 F.3d 644 (9th Cir. 2021) ..............................................................8, 10

*Cap. Ventures Int'l v. Argentina*,
  552 F.3d 289 (2d Cir. 2009) ......................................................................22

*City & Cnty. of San Francisco v. Trump*,
  897 F.3d 1225 (9th Cir. 2018) ..................................................................10

*City of Auburn v. Qwest Corp.*,
  260 F.3d 1160 (9th Cir. 2001) ...............................................................3, 5

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ................................................................................12

*Cnty. of Santa Clara v. Trump*,
  250 F. Supp. 3d 497 (N.D. Cal. 2017) .......................................4, 8, 9, 11

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*,
  657 F.3d 936 (9th Cir. 2011) ..................................................................12

*Fikre v. FBI*,
  35 F.4th 762 (9th Cir. 2022) ...................................................................21

*FTC v. Lunada Biomedical, Inc.*,
  2015 WL 12911516 (C.D. Cal. Sept. 15, 2015) ........................................8

*FTC v. Standard Oil Co. of Cal.*,
  449 U.S. 232 (1980)................................................................................12

*Goss v. Lopez*,
  419 U.S. 565 (1975)................................................................................21

*Inst. for Fisheries Res. v. Hahn*,
  424 F. Supp. 3d 740 (N.D. Cal. 2019) .......................................................9

*Isaacson v. Mayes*,
  84 F.4th 1089 (9th Cir. 2023) .......................................................5, 7, 8

*Jacobs v. Clark Cnty. Sch. Dist.*,
  526 F.3d 419 (9th Cir. 2008) ..................................................................17

*Leite v. Crane Co.*,
  749 F.3d 1117 (9th Cir. 2014) ..................................................................3

*Lopez v. Candaele*,
  630 F.3d 775 (9th Cir. 2010) ..................................................................10

*LSO, Ltd. v. Stroh*,
  205 F.3d 1146 (9th Cir. 2000) .........................................................10, 15

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)....................................................................3, 18, 20

*Manchester Pac. Gateway LLC v. Cal. Coastal Comm'n*,
  2007 WL 2900475 (S.D. Cal. Oct. 2, 2007)............................8, 11, 22

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)..............................................................................3

*Miller v. City of Santa Monica*,
  2017 WL 5974422 (C.D. Cal. Apr. 4, 2017).................................21, 22

*In re Murchison*,
  349 U.S. 133 (1955)............................................................................18

*Nat'l Audubon Soc'y v. Davis*,
  307 F.3d 835 (9th Cir. 2002) .............................................................10

*Oakley v. DeVos*,
  2020 WL 3268661 (N.D. Cal. June 17, 2020)....................................3

*Olim v. Wakinekona*,
  461 U.S. 238 (1983)............................................................................20

*Pac. Bell v. Pac-West Telecomm, Inc.*,
  325 F.3d 1114 (9th Cir. 2003) ...........................................................22

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev.
  Comm'n*,
  461 U.S. 190 (1983)........................................................................3, 14

*Peace Ranch, LLC v. Bonta*,
  93 F.4th 482 (9th Cir. 2024) .............................................................5, 7

*Portman v. Cnty. of Santa Clara*,
  995 F.2d 898 (9th Cir. 1993) .............................................................19

*Pub. Utilities Comm'n of Cal. v. United States*,
  355 U.S. 534 (1958)............................................................................11

*Reno v. Cath. Soc. Servs., Inc.*,
  509 U.S. 43 (1993)..............................................................................14

*Sayles Hydro Ass'n. v. Maughan*,
  985 F.2d 451 (9th Cir. 1993) ..........................................................4, 14

*Seider v. City of Malibu*,
  2023 WL 6192715 (C.D. Cal. May 2, 2023)...............................8, 9, 14

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Skyline Wesleyan Church v. Cal. Dep't of Managed Health Care,*
  968 F.3d 738 (2020)................................................................13

*Soranno's Gasco, Inc. v. Morgan,*
  874 F.2d 1310 (9th Cir. 1989) ...........................................16, 20

*Stivers v. Pierce,*
  71 F.3d 732 (1995)..........................................................*passim*

*Stormans, Inc. v. Selecky,*
  586 F.3d 1109 (9th Cir. 2009) ...............................................11

*Susan B. Anthony List v. Driehaus,*
  573 U.S. 149 (2014)..........................................................*passim*

*Thomas v. Anchorage Equal Rts. Comm'n,*
  220 F.3d 1134 (9th Cir. 2000) (en banc) ..................................5

*Thomas v. Cnty. of Humboldt,*
  124 F.4th 1179 (9th Cir. 2024) ...........................................8, 16

*Tingley v. Ferguson,*
  47 F.4th 1055 (9th Cir. 2022) ................................................11

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
  578 U.S. 590 (2016) .............................................................9

*UC Rest., LLC v. Maricopa Cnty.,*
  2006 WL 566490 (D. Ariz. Mar. 3, 2006)...............................20, 21

*Unified Data Services, LLC v. FTC,*
  39 F.4th 1200 (9th Cir. 2022) ................................................9

*Van v. LLR, Inc.,*
  61 F.4th 1053 (9th Cir. 2023) ...............................................12

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*
  535 U.S. 635 (2002)............................................................22

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
  592 F.3d 954 (9th Cir. 2010) ..................................................7

*W. Watersheds Project v. Grimm,*
  921 F.3d 1141 (9th Cir. 2019) ...............................................17

vi

*Wedges/Ledges of Cal., Inc. v. City of Phoenix,*
   24 F.3d 56 (9th Cir. 1994) ...................................................................19, 20, 21

*WMX Techs., Inc. v. Miller,*
   197 F.3d 367 (9th Cir. 1999) ......................................................................16, 21

*Wolfson v. Brammer,*
   616 F.3d 1045 (9th Cir. 2010) ...........................................................................18

*Yurok Tribe v. U.S. Bur. of Reclamation,*
   593 F. Supp. 3d 916 (N.D. Cal. 2022) ..............................................................11

**California Cases**

*McAllister v. Cal. Coastal Comm'n,*
   169 Cal. App. 4th 912 (2008) ............................................................................10

**Federal Statutes**

5 U.S.C. § 704 .......................................................................................................9

**California Statutes**

Cal. Bus. & Prof. Code
   § 14100 ..............................................................................................................16

Cal. Pub. Res. Code
   § 30320(a) ..........................................................................................................19
   § 30320(b) ..........................................................................................................19
   § 30334(b) ..........................................................................................................22
   § 30604 ..............................................................................................................19
   § 30803 ..........................................................................................................4, 22
   § 30805 ................................................................................................................4
   § 30809 ..........................................................................................................4, 10
   § 30810 ..............................................................................................................10
   § 30811 ................................................................................................................4
   § 30820(b) ............................................................................................................5
   § 30821 ................................................................................................................4
   § 30821.3 ..............................................................................................................4
   § 30821.6 ..............................................................................................................5

**Other Authorities**

Fed. R. Civ. P. Rule 12(b) ....................................................................................3

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# I.    INTRODUCTION

The U.S. government launch program depends on active, stable commercial space launch programs at federal launch facilities. For this reason, the Air Force has long held that commercial space launch programs at Vandenberg Space Force Base (the Base) are "federal agency activities" under the Coastal Zone Management Act (CZMA) that are not subject to state control. For many years, the California Coastal Commission agreed.

But last year the Commission abruptly changed course—but only with respect to Space Exploration Technologies Corp. (SpaceX). It claims SpaceX's Falcon 9 launch program is a "federally licensed or permitted activity" requiring a "coastal development permit" (CDP) under the California Coastal Act and a "consistency certification" under the CZMA. It repeatedly demanded that SpaceX obtain these approvals to launch; threatened enforcement absent compliance; required costly mitigations concerning impacts beyond its jurisdiction; and rejected Air Force findings that SpaceX's launch program is federal agency activity that complies with the California coastal program. In a series of extraordinary admissions, Commissioners acknowledged that they are selectively targeting SpaceX due to animus against its CEO Elon Musk and his political beliefs.

SpaceX sued to stop the Commission. SpaceX asserts that the Commission's actions to regulate it as a federally permitted actor in the coastal zone and require a CDP and/or consistency certification violate the CZMA (Count I), the Supremacy Clause (Count II), the Federal Enclave Clause (Count III), the Coastal Act applied as federal law (Count IV), and the Fourteenth Amendment's protections of the fundamental rights to free speech (Count V) and due process (Count VI).

Defendants argue these claims must be dismissed because SpaceX does not allege harms showing ripeness, standing, or a deprivation of a constitutionally protected interest. Their arguments fail.

SpaceX amply alleges a credible threat of enforcement of the Commission's

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

biased and retaliatory permit demands, along with other ongoing harms from its actions singling out SpaceX for burdensome regulation. The Commission's conduct impairs SpaceX's protected interests in its leases, licenses, federal contracts, and goodwill, and in running its business free from biased application of the Coastal Act. The relief SpaceX seeks—declaratory and injunctive relief to stop Defendants' unlawful conduct, and damages to remedy and deter their blatantly unconstitutional conduct—can redress these harms.

Defendants' motion to dismiss should be denied.

## II.    BACKGROUND

SpaceX started launching Falcon 9 from the Base in 2013. SAC ¶ 57. Due to high demand for launch services, and to meet new national security priorities, the Air Force increased SpaceX's launches from the Base to 36 and then 50 launches per year. *Id*. ¶¶ 83, 105. It now proposes up to 100 Falcon 9 launches annually. *Id*. ¶ 81.

For over a decade, the Commission agreed the Base's commercial launch programs are "federal agency activities" under the CZMA requiring no state permit or consistency certification. *Id*. ¶ 72-73. But it now contends SpaceX's launches are federally permitted activities requiring a CDP and/or consistency certification. *E.g.*, *id*. ¶¶ 101-108, 119. The Commission repeatedly demanded these approvals and threatened to enforce the Coastal Act against SpaceX absent compliance. *Id*. It also demanded that SpaceX implement costly measures to address alleged impacts on federal land outside of the coastal zone it can regulate. *Id*. ¶¶ 100, 134. And it rejected the Air Force's determination that SpaceX's launch program is federal agency activity that complies with the California coastal management program. *Id*. ¶¶ 101, 106.

Commissioners admitted their disparate treatment of SpaceX is motivated by animus against SpaceX due to their views on the political beliefs and alleged labor practices of SpaceX's largest shareholder and CEO, Elon Musk. *Id*. ¶¶ 92, 110.

## III.    ARGUMENT

### A.    Standard of review.

Under Rule 12(b)(1) and 12(b)(6), the Court assumes the Second Amended Complaint's (SAC) allegations are true and draws all inferences in SpaceX's favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). At this stage, "general factual allegations of injury resulting from the defendant's conduct may suffice" to show jurisdiction. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### B.    Counts I-IV are ripe.

Counts I-IV challenge the Commission's position that the Falcon 9 launch program is federally permitted activity in the coastal zone requiring a CDP and/or consistency certification. Contrary to Defendants' arguments, these claims are ripe because they "present issues that are definite and concrete, not hypothetical or abstract," and of immediate consequence to SpaceX. *Bishop Paiute Tribe v. Inyo Cnty.*, 863 F.3d 1144, 1153 (9th Cir. 2017) (citation omitted).

#### 1.    The Commission's enforcement threats harm SpaceX.

The Commission's threatened enforcement of its CDP and consistency certification demands harms SpaceX by placing it in an "untenable position": comply at great expense or risk enforcement. *Oakley v. DeVos*, 2020 WL 3268661, at *6 (N.D. Cal. June 17, 2020); SAC ¶¶ 123-32. This "Hobson's Choice" has present consequences for SpaceX. *City of Auburn v. Qwest Corp.*, 260 F.3d 1160, 1172 (9th Cir. 2001); *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 129 (2007); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983) ("[T]o require [businesses] to proceed without knowing whether [a California agency's regulation] is valid would impose a palpable and considerable hardship on [them].").

On the one hand, if SpaceX complies with the Commission's demands, SpaceX will suffer economic and competitive harm. Seeking these approvals would cost money and consume employee time. SAC ¶¶ 127-28, 131-33. As the Ninth

Circuit held, "[t]he hardship [to federal licensees disputing a California agency's permitting authority over them] is the process itself. Process costs money." *Sayles Hydro Ass'n. v. Maughan*, 985 F.2d 451, 454 (9th Cir. 1993). Moreover, launch delays during that process would delay or prevent SpaceX's receipt of billions of dollars of revenue. SAC ¶¶ 123, 127-32. SpaceX also is harmed because the Commission has not demanded these burdensome approvals from SpaceX's competitors, giving them a competitive advantage over SpaceX. *Id.* ¶¶ 129, 135-36. Delaying SpaceX launches would also allow U.S. geopolitical rivals to get ahead in deploying satellite constellations that compete with SpaceX's. *Id.* ¶ 129. Given the animus motivating the Commission's disparate treatment of SpaceX, there is also no certainty it would permit SpaceX. *Id.* ¶ 127. Even if it did, its demands to date—including limiting launch azimuths and scheduling and mitigating impacts outside the coastal zone—show it would impose extreme measures. *Id.* ¶¶ 86, 127, 134.

On the other hand, SpaceX faces costly enforcement by continuing to operate and expand its launch program without meeting the Commission's demands. The Commission enforces its permitting demands through cease-and-desist orders, which are effective immediately, restoration orders, and penalties. *Id.* ¶¶ 52-55, 124; Cal. Pub. Res. Code (PRC) §§ 30803, 30805, 30809, 30811, 30821, 30821.3. The threat of a cease-and-desist order burdens SpaceX given the advanced planning necessary to schedule launches and conduct them safely. SAC ¶¶ 131-33; *Cnty. of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 529-30 (N.D. Cal. 2017) (pre-enforcement challenge ripe where plaintiffs must "expend[] time and resources planning"). SpaceX faces over $1 million in fines for past launches alone, for which the Commission demands "after-the-fact" permits. SAC ¶¶ 106, 124. Its total exposure is far higher. SpaceX launches up to 50 times per year at the Base, seeks to launch 100 times, and operates daily without a CDP. *Id.* ¶ 124. SpaceX faces more penalties for "knowing and intentional" violations of the Commission's unlawful demands. *Id.* ¶ 54; PRC §§ 30820(b), 30821.6.

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### 2.    SpaceX alleges a credible threat of enforcement.

Defendants argue these harms are insufficiently immediate because SpaceX does not allege a credible enforcement threat of the Commission's CDP or consistency certification demands. Mot. 9-11. To assess pre-enforcement ripeness, courts consider: (1) whether plaintiffs "plan to violate the law in question," (2) "specific warning[s] or threat[s] to initiate proceedings," and (3) the "history of past … enforcement." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc).[1] This inquiry focuses on whether an alleged enforcement threat is "plausible and reasonable," not "imaginary or wholly speculative." *Isaacson*, 84 F.4th at 1100 (citation omitted). All factors show ripeness here.

**Factor 1 (Concrete Plan):** Defendants concede SpaceX will continue launching without Commission approval. *City of Auburn*, 260 F.3d at 1170-72 (factor met where plaintiff continued operating without allegedly required permit).

**Factor 2 (Specific Threat):** The Commission has repeatedly demanded a CDP and/or consistency certification, and threatened enforcement absent compliance. For example:

- A May 2024 report found the Commission can require a CDP regardless of CZMA review and that, without "further support …that SpaceX's proposed project is a federal agency activity …, SpaceX must [obtain] a CDP." SAC, ¶

---

[1] The Ninth Circuit "toggle[s] between" these factors and those in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158-59 (2014), which also considered plaintiffs' "intention to engage in a course of conduct arguably affected with a constitutional interest." *Peace Ranch, LLC v. Bonta*, 93 F.4th 482, 487 (9th Cir. 2024); *Arizona v. Yellen*, 34 F.4th 841 (9th Cir. 2022) (combining the tests). Defendants concede this factor. SpaceX's conduct and claims implicate interests in free speech and due process, property rights, and federal preemption of adverse state action concerning a federal enclave. *See Peace Ranch*, 93 F.4th at 488 (ability to raise rents implicates constitutional interests); *Isaacson v. Mayes*, 84 F.4th 1089, 1098-99 (9th Cir. 2023) (license).

93. It warned, "*a failure to do so may result in an enforcement action against SpaceX if it commences development without a Commission-approved CDP.*" *Id.*

- A July 2024 report stated "the Commission's position that SpaceX's space launch activities are not a government program and are carried out solely by a private entity on a portion of [the Base] leased to SpaceX by the [Air Force]." *Id.* ¶ 96. It reiterated, "SpaceX may be required to ... submit[] a [CDP] application and/or consistency certification." *Id.* Commissioners unanimously adopted the report. *Id.* ¶ 98.

- On a September 2024 call and in emails, the Commission demanded a CDP for launches. *Id.* ¶¶ 102-103. *Commission staff threatened enforcement and said, "[w]ithout a permit, there is no path forward.*" *Id.* ¶ 103.

- A September 2024 report explained "*the Commission and Commission staff have consistently rejected ... characterization of the project as a 'federal agency activity.'*" *Id.* ¶ 105-06; Ex. Q, 9. "*SpaceX will be required to seek the Commission's authorization through submittal of a consistency certification and/or [CDP]*." *Id.* ¶ 105. Indeed, the Commission already informed SpaceX it must obtain an "*after-the-fact [permit] and continuing authorization for its ongoing rocket launch, landing and associated activities.*" *Id.* ¶ 106.

- That month, the Commission also sent a letter on its letterhead "*formally respond[ing] to SpaceX's position that its Falcon 9 launch and landing activities are a federal agency activity and that it does not need to obtain a CDP.*" *Id.* ¶ 106 & Ex. S at 1. It said, "*[t]he Commission continues to take the position that its CDP authority extends to SpaceX's Falcon 9 launches and landings and associated activities and development within and outside of [the Base],*" and "SpaceX's rocket launch and landing activities are not federal agency activities." *Id.* *The Commission ordered SpaceX to obtain*

*CDPs for past and future launches and associated activities. Id.*

- At an October 2024 hearing, at least six of ten voting Commissioners stated that SpaceX must obtain a CDP. *Id.* ¶ 107-113.

- After SpaceX sued, the Commission refused to drop its CDP demand and enforcement threats. ECF 14 at 3, 5; SAC ¶ 121. It then doubled down in a January 2025 report, restating its expectation "that SpaceX will be required to seek the Commission's authorization through submittal of a consistency certification and/or [CDP] application." *Id.* ¶¶ 119-120.[2]

SpaceX alleges other statements evidencing a credible enforcement threat too. *Id.* ¶¶ 90-96, 102-113, 118-120. The Commission's express animus against SpaceX and its CEO heightens enforcement risk, as does the pending 100-launch-cadence proposal. *Id.* ¶¶ 110, 125, 192, 203-204. Shockingly, Defendants acknowledge they are selectively targeting SpaceX. *Id.* ¶¶ 108-09, 192.

Courts consistently find pre-enforcement challenges ripe on far slimmer allegations. They hold a failure to disavow enforcement, like the Commission's refusal here, shows a credible threat. *Driehaus*, 573 U.S. at 165; *Peace Ranch*, 93 F.4th at 490; *Arizona*, 34 F.4th at 850-51. They so hold even where, unlike here, agencies have not "communicated an explicit warning to the plaintiff." *Isaacson*, 84 F.4th at 1100. Courts also find credible threats where agencies do disavow enforcement but as a "mere litigation position." *Ariz. Alliance for Ams. v. Mayes*, 117 F.4th 1165, 1182 (9th Cir. 2024). They find heightened enforcement risk where, as here, third parties also can enforce. *Driehaus*, 573 U.S. at 164; *Isaacson*, 84 F.4th at 1101. Indeed, courts have not questioned that pre-enforcement challenges to the Commission's authority to demand a CDP are ripe where, as here, the Commission

---

[2] Plaintiff objects to Defendants' request for judicial notice of the January report if they seek to notice the truth of its contents, including the reasons for the Commission's October 10 decision. *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010); *see* SAC ¶ 118.

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

demanded a CDP. *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 576-77 (1987); *Manchester Pac. Gateway LLC v. Cal. Coastal Comm'n*, 2007 WL 2900475, at *2-3 (S.D. Cal. Oct. 2, 2007).

Defendants' various ripeness arguments fail against this overwhelming evidence of a credible enforcement threat.

First, they argue SpaceX "does not allege that Defendants have initiated any enforcement action against" it or issued a notice of intent letter. Mot. 9-10. But where, as here, an "agency has threatened enforcement, the actual commencement of administrative enforcement proceedings is not necessary to establish ripeness."[3] *Thomas v. Cnty. of Humboldt*, 124 F.4th 1179, 1190 (9th Cir. 2024) (citation omitted). Indeed, "contingent future events' … are always at issue in a pre-enforcement case." *Cnty. of Santa Clara*, 250 F. Supp. 3d at 529-30. What matters is whether there is evidence of a credible threat, and courts take a "broad view of this factor." *Isaacson*, 84 F.4th at 1100; *e.g.*, *Arizona*, 34 F.4th at 850 ("affirmative conduct … evincing an intent to enforce," including letters, showed credible threat); *Cal. Trucking Ass'n v. Bonta*, 996 F.3d 644, 653 (9th Cir. 2021) (agency "letters to businesses notifying them" of its legal interpretation showed credible threat). Indeed, this Court has rejected the Commission's same "line of reasoning," under which "virtually all pre-enforcement cases would be non-justiciable." *Seider v. City of Malibu*, 2023 WL 6192715, at *6 (C.D. Cal. May 2, 2023) (citation omitted).

Moreover, the Commission *has* issued a formal letter and reports asserting authority over SpaceX, demanding a CDP and/or consistency certification, and threatening enforcement. SAC ¶¶ 93-98, 106 & Ex. S. Such formal agency notices

---

[3] Defendants fail to cite caselaw supporting many arguments and cannot for the first time in reply. *FTC v. Lunada Biomedical, Inc.*, 2015 WL 12911516, at *1 (C.D. Cal. Sept. 15, 2015).

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

asserting permit authority and alleging violations show ripeness.[4] *Seider*, 2023 WL 6192715, at *6 ("[G]iven the Commission's notice of violation, there is no question that [plaintiffs] face a credible threat of prosecution if they" proceed without a CDP). Even letters demanding compliance, "albeit in a cooperative fashion inviting 'ongoing dialogue,'" show a credible enforcement threat. *Arizona*, 34 F.4th at 850.

Defendants only cite, *Unified Data Services, LLC v. FTC*, 39 F.4th 1200 (9th Cir. 2022), in arguing SpaceX's Hobson's Choice is not sufficiently imminent. That pre-enforcement challenge was unripe because, unlike here, plaintiffs did not plead intent to engage in the proscribed conduct or "any facts showing … any future warning of prosecution." *Id.* at 1211. SpaceX pleads these facts. SAC ¶¶ 81, 117-126.

Second, the Commission mistakenly argues, without case support, that "Defendants have not specified what any enforcement might entail." Mot. at 10. SpaceX alleges how CDP demands are enforced. SAC ¶ 52-55. Moreover, "uncertainty concerning how the Government will enforce" *supports* ripeness. *Cnty. of Santa Clara*, 250 F. Supp. 3d at 529-30.

Third, Defendants argue their statements cannot evince a credible threat because no Defendant "can individually initiate any enforcement." Mot. 8-9. The

---

[4] The Administrative Procedure Act's final agency action requirement, 5 U.S.C. § 704, does not apply here. Still, the Commission's approved reports and formal letter show final agency action. They consummate decision-making (on whether launches are federally permitted activities requiring a CDP and/or consistency certification) and determine legal consequences (SpaceX must obtain permits to avoid enforcement and penalties, including for knowing violations). *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 597-99 (2016) (agency finding of permitting authority is final agency action); *Inst. for Fisheries Res. v. Hahn*, 424 F. Supp. 3d 740, 749 (N.D. Cal. 2019) ("'[L]egal consequences flow from' the interpretation for the party who must take immediate steps to avoid a penalty") (citation omitted). The facts here are nothing like *Association of American Medical Colleges v. United States*, which concerned "quintessentially non-final" audits and no threatened enforcement. 217 F.3d 770, 781-83 (9th Cir. 2000).

Commission cites *McAllister v. California Coastal Commission*, which only recognized "a general duty to support a *decision to grant or deny a permit* with written findings." 169 Cal. App. 4th 912, 941 (2008) (emphasis added). As explained above, numerous lines of evidence show credible enforcement threats, not just formal threats made by agency leaders with unilateral enforcement power. *See also City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1237 (9th Cir. 2018) (press secretary's statements). Regardless, Commission staff *can* enforce CDP demands. PRC §§ 30809-30810. And Commissioners *have* formally found SpaceX's launch program is federally permitted activity requiring a CDP and/or consistency certification. SAC ¶¶ 96, 98.

Fourth, straining credulity, Defendants argue SpaceX does not allege Defendants are aware of the plan to increase launch cadence, so this evidence of increased enforcement risk does not count. Mot. 9. This proposal is publicly noticed, subject to Commission review, and flagged in its reports. *See id.* ¶¶ 81, 124-25; Ex. Q at 5, 14; Ex. T at 23.

Fifth, Defendants argue their concession that commercial launches are not a listed permitted activity "approved for review" under the CZMA means there is no enforcement threat of its consistency certification demand. Mot. 6-7. But the Commission has not disavowed enforcement of this demand. SAC ¶ 121; *see Cal. Trucking*, 996 F.3d at 653 (finding sufficient enforcement threat where agency acknowledged a challenged law might be preempted but did not disavow enforcement); *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155-56 (9th Cir. 2000). Moreover, "disavowal must be more than a mere litigation position" to undermine ripeness. *Lopez v. Candaele*, 630 F.3d 775, 788 (9th Cir. 2010); *Nat'l Audubon Soc'y v. Davis*, 307 F.3d 835, 850-51 (9th Cir. 2002). In any case, Defendants do not argue this listing issue bears on threatened enforcement of its CDP demand, which independently shows ripeness.

Sixth, Defendants state without explanation that the Air Force's disagreement

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

with the Commission's permit demands undermines ripeness. Mot. 9. This disagreement only highlights the ripe dispute. Indeed, the United States may intervene against the Commission, which would not defeat jurisdiction. *See Pub. Utilities Comm'n of Cal. v. United States*, 355 U.S. 534, 536 (1958) (government's pre-enforcement challenge to state law prohibiting carriers from transporting government property without state agency approval ripe); *Yurok Tribe v. U.S. Bur. of Reclamation*, 593 F. Supp. 3d 916, 924 (N.D. Cal. 2022) (government's pre-enforcement challenge to "state order that it believes is trumped by federal law" ripe). If Defendants suggest their permit demands are preempted, "standing does not require analysis of the merits." *Id*.

**Factor 3 (Past Enforcement):** This factor also shows ripeness. The Commission aggressively enforces the CDP requirement. SAC ¶ 126. Indeed, it has unlawfully required other businesses operating on military bases in California to obtain a CDP, and is enforcing CDP demands (now through cease-and-desist orders and over $18 million in penalties) against nearby pipeline operators who similarly argue preemption. *See id.* ¶¶ 74, 126; *Manchester*, 2007 WL 2900475, at *1-2. Defendants wrongly argue such enforcement history is irrelevant under *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1125 (9th Cir. 2009). The cited discussion addressed a different factor (specific warnings), and the Supreme Court since held that a credible threat is evidenced where agency enforcement proceedings in general are not a "rare occurrence." *Driehaus*, 573 U.S. at 164-66. In any case, the shorter history of enforcement against commercial space operators carries "little weight" because the industry is "relatively new," and the Commission specifically threatened SpaceX. *Tingley v. Ferguson*, 47 F.4th 1055, 1069 (9th Cir. 2022). Indeed, the Commission's demands against SpaceX mark an about-face, reflecting deliberate, disparate treatment motivated by animus towards SpaceX. SAC ¶¶ 74-79, 84-85, 93, 98, 108-12, 118, 136-37. These facts show a high risk of enforcement. *Cnty. of Santa Clara*, 250 F. Supp. 3d at 524 ( "Government's specific criticisms of [plaintiffs]

support a well-founded fear that [they] will face enforcement directly.").

### 3. The Commission has taken harmful regulatory action directly against SpaceX.

This case is also ripe because the Commission has already taken action to regulate SpaceX directly, harming it in several ways.

First, SpaceX has been forced to divert funds and employees to address the Commission's demands that SpaceX submit to the Commission's review and attend hearings. SAC ¶ 133-34; *Van v. LLR, Inc.*, 61 F.4th 1053, 1064 (9th Cir. 2023) ("Any monetary loss … is sufficient."); *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 943-44 (9th Cir. 2011) (finding injury where challenged action caused plaintiff to divert resources). These harms are not "voluntary, self-imposed costs." Mot. 10. They are the direct result of the Commission's asserted authority over SpaceX, backed by threats to enforce the Coastal Act. SAC ¶ 102-07. Defendants' cited cases are thus irrelevant. In *Clapper v. Amnesty International USA*, the agency did not demand action by plaintiffs. 568 U.S. 398, 416 (2013). And *FTC v. Standard Oil Co. of California* held that "litigation expense," which is not alleged here, "does not constitute irreparable injury." 449 U.S. 232, 244 (1980).

Second, SpaceX must implement costly measures the Commission demands concerning resources outside the coastal zone.[5] SAC ¶¶ 100, 134 & Exs. M, 7-12; N, 1-2; O, 3-7; P, 2-4, Q, 13. These measures have not been required of other operators. *Id.* ¶¶ 100, 134-135. Contrary to Defendants' arguments, standing is shown where, as here, "defendant's actions produce injury through their 'determinative or coercive effect upon the action of someone else.'" *Skyline*

---

[5] Defendants treat the first cause of action as asserting a distinct "mitigation and monitoring claim." Mot. 12. It does not. The costs of these demands are one of several reasons the dispute addressed in the first cause of action—whether SpaceX's launch program is federal agency activity in the coastal zone—is ripe.

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Wesleyan Church v. Cal. Dep't of Managed Health Care*, 968 F.3d 738, 749 (2020) (citation omitted). As the SAC alleges, the Commission's repeated mitigation demands had a determinative and coercive effect on the Air Force. SAC ¶¶ 85-93, 96-100, 127, 134. The Air Force will limit these demands, reducing costs to SpaceX, given declaratory relief that the Base is beyond the Commission's jurisdiction. *Id*. ¶¶ 100, 135. Indeed, the Air Force's repeated disagreement with these demands shows limiting them is the "predictable effect" of an order finding the Commission lacks authority to make them. *Skyline*, 968 F.3d at 750.

Third, SpaceX suffers competitive harm. The Commission has not required SpaceX's competitors to implement these measures or acted to regulate them as federally permitted actors requiring a CDP and/or consistency certification. SAC ¶¶ 73-74, 100, 135-37, 192. Defendants' argument that SpaceX does not "identify the competitive market" or competitors is absurd. Mot. 11. Other businesses that operate at the Base and compete with SpaceX for launch and/or low Earth orbit satellites services—such as one that was recently authorized to launch up to 60 times a year—have not been subjected to the same costly regulation. SAC ¶ 135-37.

Finally, this disparate treatment harms SpaceX's goodwill. Defendants repeatedly stated SpaceX requires heightened regulatory control because it cannot be trusted to act in the interests of the United States and its allies, and its CEO has "bigoted beliefs." SAC ¶¶ 92, 111, 138. The reputational harm to SpaceX from these baseless allegations for disparately regulating SpaceX supports ripeness, particularly given that government launch services and communications are "a sensitive industry, in which public confidence … is especially important." *Abbott Lab. v. Gardner*, 387 U.S. 136, 153 (1967). In arguing these harms concern Mr. Musk and Starlink (Mot. 11), Defendants ignore that Mr. Musk is SpaceX's CEO and Starlink is SpaceX's product. *See* SAC ¶¶ 109-11. Declaratory and injunctive relief that the Commission cannot regulate SpaceX's launch program will help remedy the Commission's harmful reasons for targeting it.

### C. Counts I-IV are prudentially ripe.

If prudential ripeness doctrine has "continuing vitality," its "fitness" and "ripeness" factors are easily met. *Driehaus*, 573 U.S. at 167.

SpaceX's claims are fit for decision because they are "predominantly legal." *Pac. Gas & Elec. Co.*, 461 U.S. at 201. Substantial further factual development is unneeded as the parties have set out their positions on the Commission's authority to regulate SpaceX. SAC ¶¶ 103-07, 116-17; Exs. Q, 7; R at 1-5; S at 1; T at 2. Defendants' improper factual assertion that the Commission has not yet "decided to enforce a CDP requirement" (Mot. 11) again ignores that "contingent future events … are always at issue in a pre-enforcement case." *Seider*, 2023 WL 6192715, at *6.

Postponing judicial resolution would impose undue hardship on SpaceX. Absent relief, SpaceX must either: (i) suspend its launch operations and submit to additional costly and political regulatory processes before a hostile state agency lacking authority; or (ii) proceed with launches and risk enforcement and penalties. SAC ¶¶ 54-55, 122-132; *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 57 (1993) (claim ripe where plaintiffs must "choose between complying with newly imposed, disadvantageous restrictions [or] risking serious penalties for violation"); *Sayles*, 985 F.2d at 454.

### D. SpaceX shows standing for its First Amendment and Procedural Due Process claims (Counts V-VI).

Defendants do not dispute that SpaceX has pled conduct establishing a First Amendment retaliation claim or that the Commission has employed a biased, partisan process for deciding the conditions for SpaceX's business on the Base. Instead, they argue the Commission's wrongful conduct has not harmed SpaceX, so it lacks standing. This contention fails for the reasons Counts I-IV are ripe: Defendants have not renounced their biased, retaliatory permit demands and enforcement threats, which continue to harm SpaceX and are redressable by

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

injunctive relief and damages.

Defendants' argument rests on a fundamental misstatement of SpaceX's claims. SpaceX does not state *separate* claims challenging "the Commission's decision not to concur in the Air Force's consistency determination" and "actions to require a CDP." Mot. 13-15. Rather, the Commission's non-concurrence and demands for a CDP and/or consistency certification are part of the Commission's ongoing action to regulate SpaceX. SAC ¶¶ 84-90, 94, 105-09, 117-22 & Exs. L, Q, T. Indeed, the Commission's *stated* reason for not concurring at the October hearing was that SpaceX is a federally permitted actor requiring a CDP and/or consistency certification. *Id.* ¶¶ 108, 118-21, Ex. T at 10. Thus, while the Air Force rejected the Commission's non-concurrence, the Commission's biased, retaliatory demands that SpaceX submit to its regulatory authority remains live, causing SpaceX injury the Court can redress.

These facts establish injury-in-fact, causation, and redressability.

**Injury-in-Fact:** SpaceX properly alleges the Commission's threatened enforcement of its retaliatory, biased permit demands harms SpaceX. *See LSO*, 205 F.3d at 1155 ("[T]he threatened enforcement effort implicates First Amendment rights, [and thus] the inquiry tilts dramatically toward a finding of standing."). In addition to the threat's intended suppressive effect, the Commission's biased actions selectively regulating SpaceX cause SpaceX economic harm, competitive harm, and harm to business goodwill. SAC ¶¶ 91-92, 107-12, 133-38, 184-89; *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016) (Standing for a retaliation claim exists if plaintiff "suffered some injury as a result [of the retaliatory conduct]; the plaintiff is not required to demonstrate that its speech was actually suppressed or inhibited"). Defendants' arguments that these injuries do not show standing fail.

Defendants argue that SpaceX fails to allege concrete harm because it does not allege a vote on the CDP requirement, any enforcement proceedings, or a notice

15
SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

of intent letter. Mot 16. This argument fails on several levels, as explained above. The Commission and its staff have formally found SpaceX's launch program is federally permitted activity requiring a CDP and/or consistency certification, threatened enforcement, and acted to regulate SpaceX directly. SAC ¶¶ 84-90, 105-09, 117-22 & Exs. L, Q, T. SpaceX need not wait to sue until the Sword of Damocles drops on it, given the credible enforcement threat. *Driehaus*, 573 U.S. at 159; *Thomas*, 124 F.4th at 1190. Defendants' passing argument that SpaceX does not "suggest[] that Defendants would take any action to require a CDP" without affording SpaceX "due process" also misses the point. Mot. 16. The animus SpaceX alleges taints the Commission's ongoing demands and threatened enforcement, regardless of whether it might now follow procedure. *See Stivers v. Pierce*, 71 F.3d 732, 745-48 (1995).

Defendants do not dispute their disparagement of SpaceX harms its business goodwill, but incorrectly argue such harm is incognizable. Mot. 14, 16. "California recognizes business goodwill as a property interest," and courts routinely find damage to goodwill confers standing for procedural due process claims. *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1316 (9th Cir. 1989) (Business "owner[s] cannot be deprived of [goodwill] without due process."). Here, harm to goodwill supports standing because Defendants not only hurt SpaceX's reputation but also its ability to use its government launch licenses and lease and fulfill government contracts. SAC ¶¶ 128-35. Thus, Defendants' bias interfered with "the expectation of continued public patronage." Cal. Bus. & Profs. Code § 14100 (defining business goodwill). Defendants' cited authority, *WMX Techs., Inc. v. Miller*, 197 F.3d 367 (9th Cir. 1999), merely holds that damage to a business's reputation "is not the equivalent" to damage to its goodwill. 197 F.3d at 374. SpaceX alleges injury to protected property interests plus reputational harm.

Finally, Defendants' contention that the Air Force erased SpaceX's injuries by overriding the non-concurrence vote, Mot. 14, ignores the Commission's larger,

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

ongoing course of action selectively targeting SpaceX for heightened regulation. *See* SAC ¶¶ 100, 104, 109, 125, 136-37. Even assuming SpaceX's business interests were not harmed, SpaceX has standing to seek nominal damages based on deprivation of its constitutional rights. *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 426 (9th Cir. 2008) (plaintiffs who suffer deprivation of constitutional right but no economic loss can bring nominal damages claims); SAC ¶¶ 195, 208.

**Causation:** A plaintiff pleads causation "if the complaint alleges plausible circumstances connecting the defendant's retaliatory intent to the suppressive conduct." *Ariz. Students' Ass'n*, 842 F.3d at 870. For procedural due process claims, plaintiffs must allege injury that is "not too tenuously connected" to the asserted violation. *W. Watersheds Project v. Grimm*, 921 F.3d 1141, 1147 n.1 (9th Cir. 2019). SpaceX connects Defendants' bias and retaliatory animus with SpaceX's injuries. For example, at the May 10 and August 8 hearings, Commissioners Cummings and Wilson cited concern that SpaceX's CEO would "engage in misinformation" and work against U.S. national security interests as bases for regulating SpaceX. SAC ¶¶ 91-92, 98. Following these hearings, Commission staff reversed their prior concurrence recommendation and insisted SpaceX obtain a CDP and implement costly measures regarding resources beyond the coastal zone. *Id.* ¶¶ 93, 100. Defendants' statements at the October 2024 hearing also show retaliation and bias against SpaceX based on animus against Mr. Musk and his political speech. *Id.* ¶¶ 107-11, 188-89. Indeed, these comments were offered precisely to explain their decision not to concur and ongoing CDP demand, providing ample causal nexus between the injury and Defendants' biased conduct.

Defendants' contention that the biased statements were harmless because "the Commission can only act by majority," Mot. 14-15, lacks any case support, and for good reason. "[B]ias on the part of a single member of a tribunal taints the proceedings and violates due process." *Stivers*, 71 F.3d at 748. SpaceX alleges biased statements by *four* Commissioners across several hearings. SAC ¶¶ 91-92,

98, 108-12, 184-89. No Commissioner denounced the biased statements offered for acting against SpaceX. *Id.* ¶ 112. SpaceX also alleges "irregularities in the treatment … [it] receives" from Commissioners and staff—who have never demanded other operators obtain a CDP—further shows "impermissible bias." *Stivers*, 71 F.3d at 745; SAC ¶¶ 7, 100, 104, 109, 125, 136-37, 203-04.

Defendants' contention that Commissioners' biased statements "have no effect" fails for the same reason. Mot. 15. SpaceX "is not required to show" any one member's bias "affected the [Commission's] ultimate decision" where bias and adverse action are shown. *Stivers*, 71 F.3d at 748. Their argument goes to individual liability, not causation. As in *Stivers*, SpaceX has alleged "the entire [Commission] … accorded [SpaceX] unusually harsh treatment" by singling it out for heightened regulation. *Id.* at 750.

**Redressability:** "A plaintiff meets the redressability requirement if it is likely … his injury can be redressed by a favorable decision." *Wolfson v. Brammer*, 616 F.3d 1045, 1056 (9th Cir. 2010). Where plaintiff is "an object of the [challenged action] … there is ordinarily little question that the action … has caused him injury, and that a judgment preventing … the action will redress it." *Lujan*, 504 U.S. at 561-62. Enjoining Defendants from continuing to act on their biased, retaliatory intent by targeting SpaceX for heightened regulatory burdens, declaring their conduct unlawful, and compensating SpaceX will redress its injuries.

### E.    SpaceX states a procedural due-process claim (Count VI).

The Due Process Clause prevents government entities from infringing protected interests without "[a] fair trial in a fair tribunal," which "of course requires an absence of actual bias." *In re Murchison*, 349 U.S. 133, 136 (1955). "This requirement applies … to state administrative agencies charged with applying eligibility criteria for licenses." *Stivers*, 71 F.3d at 741. "A section 1983 claim based upon procedural due process … has three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government;

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

(3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). SpaceX alleges each. Defendants do not argue the third element, so the first two are addressed here.

**Protected Interests:** "A protected property interest is present where an individual has a reasonable expectation of entitlement deriving from 'existing rules or understandings that stem from an independent source such as state law.'" *Wedges/Ledges of Cal., Inc. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (citation omitted). "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Id.* (citation omitted). "[S]uch an interest is created 'if the procedural requirements are intended to be a significant substantive restriction on ... decision making.'" *Id.* (citation omitted). SpaceX alleges several protected interests.

**1.** SpaceX has a reasonable expectation of entitlement under California law to receive unbiased regulatory treatment by the Commission in connection with all approvals needed for its launch business. SAC ¶ 205. The Coastal Act prohibits the Commission from administering it based on bias. PRC §§ 30320(a)-(b), 30604. Prohibitions against bias are property interests where, as here, the requirements are a "substantive restriction" on decision-making. *Wedges/Ledges*, 24 F.3d at 62-64 (holding that game operators had protected property rights in obtaining new licenses and keeping existing ones where state law limited the licensing agency's discretion with an "articulable standard"); *Armstrong v. Reynolds*, 22 F.4th 1058, 1077 (9th Cir. 2022) (state law gave employee a protected property interest in not losing her at-will job because of whistleblowing, and in a state investigation of her whistleblower complaint). *Stivers* similarly found plaintiffs had "a protected property interest in ... licenses that were denied them" based on alleged bias because state law limited a board's discretion to deny licenses. 71 F.3d at 740-41, n.4.

Defendants' distinction that an interest in fair process "is an interest in process, not property," Mot. 18, does not account for the express statutory restraint

on Commission discretion. Their authority, *Olim v. Wakinekona*, addressed an asserted liberty interest, not a property interest, based on a law that placed *no* substantive limits on an administrator's discretion to grant prison transfers. 461 U.S. 238, 250 (1983).

**2.** SpaceX further alleges the Commission's biased conduct interferes with its permits, licenses, leases, and contracts with the federal government concerning SpaceX's business at the Base. SAC ¶ 205. These are protected interests. *Wedges/Ledges*, 24 F.3d at 63-64. Contrary to Defendants' arguments (Mot. 17-18), further details of these interests are not required at the pleading stage. *Lujan*, 504 U.S. at 561. Regardless, SpaceX "need not establish a legally protected interest in the permits," contracts, or leases to state a claim because it alleges that the actions adversely affecting them resulted from animus against its CEO's constitutionally protected speech and beliefs. *Soranno's Gasco*, 874 F.2d at 1314.

**3.** SpaceX also alleges harm to its business goodwill, another interest protected under California law. *Id.* at 1316. For example, the Commissioners' claims that Mr. Musk has "bigoted belief[s]" that "raise[] concerns about the motivations for [SpaceX's] request for government support," and that SpaceX acted against U.S. security interests damage SpaceX's business goodwill and jeopardize its economic relationship with the United States. SAC ¶¶ 98, 138. Adding salt to wound, Defendants celebrated their biased treatment on social media, *id.* ¶ 114, further harming SpaceX's business goodwill. *See UC Rest., LLC v. Maricopa Cnty.*, 2006 WL 566490, at *3 (D. Ariz. Mar. 3, 2006) (Murguia, J.) (Plaintiff alleged due process claim where county "gave [it] citations without offering a right of appeal and then immediately offered access of those citations to the media."). This is not just reputational harm. Because of their animus, the Commission required more of SpaceX *and* its customer, the Air Force, to launch Falcon 9 from the Base, showing an "actual, direct interference with business goodwill." *Id*. Regardless, SpaceX alleges interference with goodwill *plus* harm to other protected interests: Defendants

also interfered with SpaceX's government contracts, leases, and permits, and deprived it of unbiased application of the Coastal Act. *Fikre v. FBI*, 35 F.4th 762, 776 (9th Cir. 2022) (procedural due-process claim properly pled where "plaintiff suffers stigma … plus alteration or extinguishment of a right or status previously recognized by state law" (cleaned up)).

**4.** SpaceX also alleges a liberty interest to pursue its business at the Base without biased, retaliatory interference by the Commission. *Wedges/Ledges*, 24 F.3d at 65 n.4 ("[P]ursuit of an occupation or profession is a protected liberty interest"). Defendants' reliance on *WMX Techs. Inc.*, 197 F.3d at 372-73, is misplaced. That case involved an alleged right to petition the government, not a right to pursue business and use licenses and leases without biased, retaliatory state action.

**Deprivation:** SpaceX alleges deprivation of these interests. *See* SAC ¶¶ 133-138. "[A]s long as a property deprivation is not de minimis, its gravity is irrelevant to … whether account must be taken of the Due Process Clause." *Goss v. Lopez*, 419 U.S. 565, 576 (1975). In rejecting the Air Force's consistency determination and continuing to demand a CDP and/or consistency certification based on illegal animus, the Commission infringed SpaceX's protected interests to use its property and perform launches on the Base free from biased regulation under the Coastal Act. The Commission has neither withdrawn its demands and enforcement threats nor stopped selectively regulating SpaceX as a federally permitted actor. SAC ¶¶ 74, 117-121. This shows deprivation. *Stivers*, 71 F.3d at 741 (deprivation shown where "the proceedings and surrounding circumstances … demonstrate actual bias on the part of the adjudicator"); *Armstrong*, 22 F.4th at 1078-79.

Defendants' argument that no property interests were deprived because the Air Force overrode a non-concurrence vote again ignores the Commission's continuing permit and mitigation demands. Their cited authority, *Miller v. City of Santa Monica*, 2017 WL 5974422 (C.D. Cal. Apr. 4, 2017), did not involve such improperly motivated agency demands; it found a plaintiff did not have a protected

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

property interest in a parking garage it did not own that was denied permits. *Id.* at
*5-6. The Air Force's decision is beside the point, as the Commission has not
withdrawn its improperly motivated permit demands. SAC ¶ 117.

> **F.    Sovereign immunity does not warrant dismissal of any defendant.**

The Court need not reach the question of "[w]hether the Commission waived
its immunity … because … even absent waiver, [SpaceX] may proceed against the
individual commissioners in their official capacities." *Verizon Md., Inc. v. Pub. Serv.
Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Pac. Bell v. Pac-West Telecomm, Inc.*,
325 F.3d 1114, 1124 (9th Cir. 2003); *Manchester*, 2007 WL 2900475, at *1, *4; *see*
I Civil Sheet Instructions at I(a) ("identify the agency first, then the official" where
the "defendant is an official within a government agency").

Additionally, the Commission waived immunity. The Coastal Act states that
"*[t]he commission may* … [s]ue and *be sued*" and "[t]he Attorney General shall
represent the commission *in any* litigation … before *any court … of the* state or
*federal government*." PRC § 30334(b) (emphasis added); *see also id.* § 30803. This
shows consent to "be sued" in a "court … of the … federal government," not only
state courts. *Cap. Ventures Int'l v. Argentina*, 552 F.3d 289, 295 (2d Cir. 2009).

The individual defendants should not be dismissed because SpaceX seeks
prospective relief for ongoing violations of federal law under *Ex Parte Young*. SAC
¶¶ 156-158, 162, 171 & Requests for Relief D, E.; *Bishop Paiute Tribe v. Inyo Cnty.*,
2018 WL 347797, at *9 (E.D. Cal. Jan. 10, 2018).

## IV.    CONCLUSION

Defendants' Motion to Dismiss should be denied.

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated:  April 28, 2025

VENABLE LLP

By:   */s/ Tyler Welti*

Tyler G. Welti
Colin B. Vandell
Mitchell Y. Mirviss (*pro hac vice*)

Attorneys for Plaintiff Space
Exploration Technologies Corp.

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff SpaceX, certifies that this brief contains 6,970 words, which:

_X_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated [date].

VENABLE LLP

Dated: April 28, 2025

By:    _/s/ Tyler Welti_

Tyler G. Welti

Attorneys for Plaintiff Space Exploration Technologies Corp.

SPACEX'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS