1  VENABLE LLP
   Tyler G. Welti (SBN 257993)
2  101 California Street, Suite 3800
   San Francisco, CA 94111
3  Telephone: (415) 653-3750
   Facsimile: (415) 653-3755
4  tgwelti@venable.com

5  Colin B. Vandell (SBN 240653)
   2049 Century Park East, Suite 2300
6  Los Angeles, CA 90067
   Telephone: (310) 229-9900
7  Facsimile: (310) 229-9901
   cvandell@venable.com

8
   Mitchell Y. Mirviss (*pro hac vice*)
9  750 East Pratt Street, 9th Floor
   Baltimore, MD  21202
10 Telephone: (410) 244-7412
   Facsimile: (410) 244-7742
11 mymirviss@venable.com

12 Attorneys for Plaintiff Space Exploration Technologies
   Corp.
13
   **[Additional Counsel on Signature Page]**
14
                UNITED STATES DISTRICT COURT
15
              CENTRAL DISTRICT OF CALIFORNIA
16

| | |
|---|---|
| Space Exploration Technologies Corp. | Case No. 2:24-cv-08893-SB-SK |
| Plaintiff, | Referred to Magistrate Judge Steve Kim |
| v. | **DISCOVERY MATTER:** |
| California Coastal Commission, et al. | **JOINT STIPULATION RE: PLAINTIFF'S MOTION TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS AND INFORMATION WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS** |
| Defendants. | |
| | Courtroom:   Room 540 |
| | Date:           December 17, 2025 |
| | Time:           10:00 a.m. |
| | Action Filed:                           10/15/2024 |
| | Fact Discovery Cutoff Date: 1/30/2026 |
| | Pretrial Conference Date:    6/12/2026 |
| | Trial Date:                             6/29/2026 |

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTORY STATEMENTS...................................................1

   A.    SpaceX's Introductory Statement..........................................1

   B.    Defendants' Introductory Statement .....................................3

II.     SPACEX'S CONTENTIONS AND POINTS AND AUTHORITIES.....5

   A.    Factual Background................................................................5

   B.    Argument ...............................................................................7

     1.    The Deliberative Process Privilege Does Not Apply Here. ...............7

     2.    The Commission Has Not Properly Invoked the Privilege................8

     3.    The Commission Has Not Demonstrated the Documents Are Subject to the Privilege........................................................9

       (a)    The Withheld Documents Are Not Predecisional. ........................9

       (b)    The Withheld Documents Are Not Deliberative. .........................12

     4.    Even if the Privilege Applied, It Must Yield Here...........................13

       (a)    The Withheld Documents Are Relevant......................................14

       (b)    Other Evidence is Unavailable. ..................................................16

       (c)    The Commission is Central to this Litigation...............................17

       (d)    Disclosure Would Not Chill Internal Discussion. .......................17

       (e)    There is Great Interest in Accurate Fact Finding Here................19

       (f)    The Litigation Concerns Serious Issues. .....................................19

       (g)    The Litigation Concerns Government Misconduct. .....................20

       (h)    There is an Interest in Enforcement of Federal Law. ..................20

     5.    The Parties' Stipulated Protective Order is Sufficient to Mitigate Any Alleged Harms of Disclosure....................................21

     6.    The Order Should Apply to Related Discovery. ..............................21

JOINT STIP. RE: PLAINTIFF'S MOT.TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS AND INFORMATION WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS

C.    Plaintiff's Conclusion ...................................................................21

III.    DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES .............................................................................22

A.    Factual Background.......................................................................22

B.    Argument .....................................................................................23

    1.    The Declaration of Kate Huckelbridge Supports Defendants' Deliberative Process Privilege Assertions..........................................24

    2.    The Documents Withheld Are Predecisional and Deliberative. ......25

        (a)    The Documents Are Predecisional. ...............................25

        (b)    The Documents Are Deliberative. .................................27

    3.    The Overriding Purpose of the Deliberative Process Privilege—Promoting Quality Decision-Making by Fostering Free and Candid Internal Agency Debate and Dialogue—Supports Application of the Privilege Here.......................................................30

        (a)    Disclosure Would Have a Disastrous Chilling Effect on Internal Discussion and Deliberation. ...........................30

        (b)    The Vast Majority of the Withheld Documents Are Irrelevant to SpaceX's Claims.........................................32

        (c)    Other Evidence Is Available...........................................34

        (d)    The Commission's Role in the Case Does Not Support Disclosure. ...................................................................36

        (e)    The Remaining Factors Do Not Support Disclosure of the Withheld Documents. ...........................................37

    4.    The Protective Order Will Not Prevent Harm to the Commission's Decision-Making Process.......................................38

    5.    Given the Specific Circumstances of this Case and the Case Schedule, the Commission Agrees that the Court's Order Should Apply to Related Discovery.......................................39

C.    Defendant's Conclusion ................................................................39

JOINT STIP. RE: PLAINTIFF'S MOT.TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS AND INFORMATION WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS

# I. INTRODUCTORY STATEMENTS

## A. SpaceX's Introductory Statement

This case concerns the California Coastal Commission's unlawful efforts to regulate Space Exploration Technologies Inc.'s (SpaceX's) Falcon 9 launch program at Vandenberg Space Force Base in retaliation for the political beliefs of SpaceX's CEO, Elon Musk.

For many years, the U.S. Air Force has maintained that commercial space launch programs at the Base are "federal agency activities" under the Coastal Zone Management Act (CZMA) and thus not subject to state control. The California Coastal Commission (Commission) has long agreed and consistently reviewed the Base's commercial space launch operations as federal agency activities that are not subject to permitting requirements under the California Coastal Act.

Last year, the Commission abruptly changed course, but only with respect to SpaceX. The Commission claimed that the Falcon 9 launch program is not federal agency activity but instead "federally permitted or licensed activity" occurring within the Coastal Zone subject to its jurisdiction. On that basis, it demanded that SpaceX apply for a Coastal Development Permit (CDP) under the California Coastal Act and repeatedly threatened enforcement for operating an Air Force-authorized launch program without one. In a series of extraordinary admissions, several Commissioners acknowledged that this selective targeting of SpaceX was motivated by bias and animus toward the First Amendment-protected activity of Elon Musk, including his public support for President Trump during the 2024 presidential campaign.

SpaceX brought this action to stop the Commission's retaliatory abuse of its authority. In its operative complaint, SpaceX alleges that the Commission's conduct violates the CZMA (Claim 1), the Supremacy Clause (Claim 2), the Federal Enclave Clause (Claim 3), the Coastal Act applied as federal law (Claim

4), and the Fourteenth Amendment's protection of the fundamental right to free speech (Claim 5).  Central to these claims is why the Commission singled out SpaceX, and its motivations for: (1) suddenly taking the position that the Falcon 9 launch program is not federal agency activity, (2) demanding that SpaceX apply for and obtain a CDP to conduct Air Force-authorized launches, (3) imposing costly mitigation and monitoring requirements on SpaceX, and (4) treating SpaceX differently than other commercial space launch operators.

To resolve its claims, SpaceX has sought discovery into the Commission's decision-making process, including from its officials and regarding bias against the speech and beliefs of SpaceX's CEO, which several Commissioners publicly acknowledged motivated the Commission's adverse and disparate regulatory treatment of SpaceX.  SpaceX also seeks evidence rebutting Defendants' assertions that SpaceX has not shown a credible threat the Commission intends to enforce the Coastal Act against it.

On September 5, 2025, Defendants served their third privilege log (Privilege Log 3), withholding 180 documents under the deliberative process privilege.  Yet SpaceX's review revealed that nearly all the withheld materials are relevant, likely not privileged, and subject to disclosure.  After meeting and conferring on October 31, 2025, Defendants agreed to produce roughly half of the documents but refused to release the rest, which include documents that are highly relevant to Defendants' intent to enforce the Coastal Act against SpaceX and the reasons for doing so.

The deliberative process privilege Defendants have invoked does not apply here.  First, the Commission's internal discussions are not peripheral to this dispute, they are at its heart.  Second, the Commission has not met its burden to invoke the privilege: it has not shown the withheld documents are predecisional or deliberative, nor has it provided the required agency-head declaration.

Even if the deliberative process privilege applied (it does not), that privilege

is qualified and, as precedent clearly supports, must yield to the unique needs of this case.  The withheld documents are relevant and are unavailable elsewhere; the government officials asserting the privilege are parties to the litigation; the interests at stake are of constitutional and national importance; and there is no evidence that disclosure would chill frank internal discussion.  Moreover, if the Court determines the privilege applies, disclosure is proper because the Parties' Protective Order safeguards deliberative process materials.

Just two months ago, the Ninth Circuit rejected the federal government's attempt to withhold relevant documents under the deliberative process privilege in a case alleging the Executive Branch exceeded its Constitutional authority in conducting mass reductions of federal employees.  *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, --- F.4th ----, No. 25-3293, 2025 WL 2716266, at *5 (9th Cir. Sept. 19, 2025).  The Ninth Circuit's message was clear: when credible claims of governmental overreach are at issue, the deliberative process privilege must yield to the truth-seeking function of discovery.

Accordingly, the Court should compel Defendants to produce the remaining documents withheld in Privilege Log 3 and related documents and information subject to discovery, including deposition testimony regarding internal discussions and decision-making related to Defendants' regulatory treatment of SpaceX. Given the close of fact discovery in this action on January 30, 2026, along with depositions and other discovery to be conducted beforehand, the prompt production of withheld content is especially important.

## B.    Defendants' Introductory Statement

In this case SpaceX seeks declaratory and injunctive relief that federal law precludes the Commission from requiring SpaceX to obtain a Coastal Development Permit (CDP) under the California Coastal Act for its Falcon 9 launches at Vandenberg Space Force Base, including for numerous Falcon 9 launches of Starlink satellites for the internet service that SpaceX offers for sale

and provides to people throughout the world.

The Commission has never initiated enforcement of a CDP requirement for SpaceX's launches.  To date, the United States Air Force and the Commission have reviewed SpaceX's launches through the consistency determination process in the federal Coastal Zone Management Act for "federal agency" activities.  *See* 16 U.S.C. 1456(c)(1).  In August 2024, the Commission conditionally concurred with the Air Force's consistency determination for a project to increase SpaceX's launches at Space Launch Complex (SLC) 4 on the Base from 6 to 36 annual launches.  In October 2024, the Commission objected, based on a lack of information, to the Air Force's consistency determination for a project to increase SpaceX's annual launches at SLC-4 from 36 to 50, but the Air Force, as allowed by federal regulations, chose to proceed with the project over the Commission's objection.  *See* 15 C.F.R. § 930.43(d).  Following the Commission's objection, SpaceX filed this lawsuit.  In August 2025, the Commission objected, again based on a lack of information, to the Air Force's consistency determination for a project to increase SpaceX's Falcon 9 annual launches on the Base from 50 to 95 per year and to add 5 annual Falcon Heavy launches from the Base.  According to the Air Force's description of this project, some of the launches will occur on SLC-4, but others will occur on a second site, SLC-6, which must first be re-developed before SpaceX can conduct launches on it.

The motion before the Court involves approximately 180 documents that Defendants withheld from production on deliberative process privilege grounds. To put this in context, Defendants have produced over 14,000 documents, including documents collected from the Commission's files and email servers, as well as from Defendants' personal text message, email, and social media accounts. Defendants produced virtually everything, but drew a very narrow line around certain documents protected by the deliberative process privilege.

While Defendants produced thousands of emails and other documents

-4-

pertaining to its review of SpaceX's launch programs and the launch programs of
other companies, Defendants withheld certain documents containing deliberative
discussions on topics that were so sensitive that even disclosure to SpaceX under
the protective order would chill internal agency deliberations.  As the caselaw
makes clear, quality agency decisions depend on open and candid internal
discussions.  The deliberative process privilege exists to protect those discussions,
and thereby preserve the quality of the agency's decision-making process.  The
Court should uphold Defendants' deliberative process privilege assertions here so
as not to impair the Commission's decision-making process in future matters.

## II.     SPACEX'S CONTENTIONS AND POINTS AND AUTHORITIES

### A.     Factual Background

On March 6, 2025, SpaceX propounded its First Set of Requests for
Production on Defendants.  *See* Vandell Decl., ¶ 2, Ex. A.  Since then, Defendants
have produced documents and privilege logs on a rolling basis.  *Id.* at ¶ 3.  The
Parties have met and conferred numerous times to resolve disputes regarding
Defendants' discovery responses and productions.  *See id.* at ¶ 4, Ex. B at 5–6.

At the same time, the Parties spent significant time drafting and negotiating
the terms of a protective order, which the Court entered on September 15, 2025.
*See id.* at ¶ 5, Ex. C.  The Protective Order expressly applies to deliberative process
material.  *See id.*

Nevertheless, on September 5, 2025, Defendants served Privilege Log 3 on
SpaceX, withholding 180 documents under the deliberative process privilege.  *See
id.* at ¶ 6, Ex. D.  SpaceX's review of Privilege Log 3 revealed that numerous
highly relevant documents were being withheld.  *See id.* at ¶ 8–9.  For example,
according to the privilege log, these withheld documents concern topics such as:
(1) the Commission's assertion that SpaceX obtain a CDP; (2) SpaceX's alleged
environmental impacts; (3) the Air Force's plans to increase the number of Falcon
9 launches from the Base; (4) the Commission's discussions of SpaceX's purported

violations of state law; (5) news coverage of SpaceX; (6) the activities of other commercial space launch operators on the Base; and (7) space launch activities at the Space Launch Complex 5.

On October 24, 2025, SpaceX sent Defendants a 12-page meet-and-confer letter detailing how Defendants improperly invoked the deliberative process privilege and that it must be withdrawn.  *See* Vandell Decl., ¶ 8, Ex. E.  SpaceX explained that: (1) Defendants had not carried their burden to show that each document was deliberative or pre-decisional; (2) Defendants did not provide the required agency-head declaration; and (3) even if properly invoked, the deliberative process privilege would yield to the need for disclosure in this case.

The Parties met and conferred via Zoom on October 31, 2025.  *Id.* at ¶ 9.[1] SpaceX reiterated its objections and Defendants agreed to produce certain documents, acknowledging that some had been mistakenly designated as privileged.  *Id.*[2]  However, Defendants refused to withdraw their privilege assertions as to the remaining documents, including those discussing the Commission's view that Falcon 9 launches are not federal agency activity and asserting that SpaceX is required to obtain a CDP.  *Id.* at ¶ 9–10.  When asked to explain the basis for their privilege determinations, Defendants stated that the

---

[1] The parties previously met and conferred regarding the deliberative process privilege when discussing a broader set of issues related to Defendants' discovery responses and production.  For example, at the Parties' July 17, 2025 and August 12, 2025 conferences—as well as in emails dated August 22, 2025, and September 4, 2025—SpaceX raised the issue of when and how Defendants would be asserting the deliberative process privilege.  Vandell Decl., ¶ 4.  Defendants ultimately produced only a limited set of documents addressing core issues in this action (*e.g.*, reflecting Commission members' and staff's thoughts and comments regarding SpaceX and Elon Musk), while withholding significant content designated as deliberative process privileged.  *Id.*  As a result, this motion became necessary.

[2] Defendants have withdrawn their privilege assertions as to the documents in Category 5, which applies to news coverage of SpaceX.  Defendants otherwise continue to withhold documents in the remaining categories.  In addition, Defendants have withdrawn their deliberative process privilege assertions over nine entries that are also purportedly attorney-client privileged.  To the extent they have not, Defendants must produce the portions of those documents that are not attorney-client privileged, as explained below.

privilege applied to ***discussions relating to*** topics on which the Commission might render a decision—a broad interpretation that encompasses virtually all internal communications. *Id.* at ¶ 9.

SpaceX then asked which of the deliberative process balancing factors Defendants believed outweighed disclosure. *Id.* at ¶ 10. Defendants responded that the risk of chilled agency speech predominated over the remaining factors. *Id.* The Parties thus agreed they had reached an impasse despite their efforts to resolve this dispute. *Id.*

Defendants' decision to withhold over 100 highly relevant documents simply because they relate to a Commission decision against SpaceX is an overly broad application of the deliberative process privilege. Moreover, even if the privilege were appropriately invoked, the balancing factors courts consider when determining whether to the compel the production of deliberative process materials overwhelmingly support disclosure.

**B.    Argument**

**1.    The Deliberative Process Privilege Does Not Apply Here.**

Numerous "courts have held that the deliberative process privilege does not apply in actions where the government's decision making is central to the plaintiff's case." *Thomas v. Cate*, 715 F. Supp. 2d 1012, 1020–21 (E.D. Cal. 2010), *order clarified*, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010) (citing *In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424–25 (D.C. Cir. 1998)); *United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 526 (N.D. Ind. 2005)). Rather, "[t]he privilege was fashioned in cases where the governmental decision making process is collateral to the plaintiff's suit." *In re Subpoena*, 145 F.3d at 1424.

Here, there is no doubt that the Commission's decision-making is "central to" SpaceX's claims. *See* Vandell Decl., Ex. F (SAC) at ¶¶ 180–94. SpaceX asserts that bias against SpaceX's CEO's protected First Amendment activity

-7-

motivated the Commission's disparate regulatory treatment of SpaceX, including threatened enforcement of the CDP requirement. *See id.* Defendants have also themselves placed the Commission's decision-making squarely at issue—including by asserting that there is insufficient evidence that the actions of Commission staff were motivated by bias or animus toward SpaceX, and that SpaceX's claims are unripe because there is no credible threat of an enforcement action. *See, e.g., id.*, Ex. G at 7–9; *id.* at Ex. H at 6–7. The Commission's reasoning and decision-making processes are thus central to both SpaceX's claims and Defendants' arguments. The privilege therefore cannot apply. *See In re Subpoena*, 145 F.3d at 1424–25. The Court should hold that the privilege is categorically inapplicable here and that the Commission must withdraw its assertions over Privilege Log 3.

> **2.    The Commission Has Not Properly Invoked the Privilege.**

In any event, the privilege cannot be invoked because Commission leadership has not submitted the requisite declaration. As this Court explained in *Mayfield v. United States*, the deliberative process privilege "may be invoked only by the agency head, who must ***first*** personally review the documents for which the privilege is asserted." No. 2:19-cv-1298-FMO-SK, 2020 WL 2510649, at *1 (C.D. Cal. Mar. 20, 2020) (cleaned up) (emphasis added). "That agency head must then file a sworn declaration with specific facts demonstrating why each document (or portion of each document) is 'deliberative' and 'predecisional' and why a protective order would be inadequate to reduce the degree and type of harm that might result from requiring production." *Id.* (citation omitted). The Court concluded that, "[w]ithout this declaration, the [agency] has not met its prima facie burden of even invoking the privilege," which may waive the privilege altogether. *Id.* ("Indeed, [the agency] may have even waived the privilege as a result" of asserting the privilege "[w]ithout this declaration."").

As in *Mayfield*, the Court should find that the Commission waived the privilege here by failing to provide the required declaration. This is not a mere

ministerial oversight; as discussed below, the privilege log itself does not establish that the documents are deliberative or predecisional, underscoring the absence of the Commission's proper invocation of the privilege. *See* § 2(a)–(b), *supra*. Moreover, the declaration requirement serves the important function of "deter[ring] governmental units from too freely claiming a privilege that is not to be lightly invoked . . . by assuring that someone in a position of high authority could examine the materials involved from a vantage point involving both expertise and an overview-type perspective." *Osinek v. Permanente Med. Grp., Inc.*, 2024 WL 4906067, at *14 (N.D. Cal. Nov. 27, 2024) (internal quotation marks and citation omitted) (ellipses in original). Because the Commission has not met its burden to assert the privilege, the documents in Privilege Log 3 must be produced.

> ### 3. The Commission Has Not Demonstrated the Documents Are Subject to the Privilege.

Even if the privilege were not categorically barred from applying in cases like this one where the government's decision making is central to claims, and even if the Commission had not waived the privilege by failing to properly invoke it, the Commission has not met its burden of showing that the deliberative process privilege applies to the documents at issue. *Ecological Rts. Found. v. Fed. Emergency Mgmt. Agency*, 2017 WL 24859, at *3 (N.D. Cal. Jan. 3, 2017). To assert the deliberative process privilege, the Commission must demonstrate that each document is "predecisional" and "deliberative." *See Mayfield v. Cnty. of Los Angeles*, 2020 WL 2510649, at *1 (C.D. Cal. Mar. 20, 2020). The Commission has not demonstrated either.

> #### (a) The Withheld Documents Are Not Predecisional.

To be "predecisional," documents must satisfy five requirements. First, they "must have been generated before the adoption of [a] [distinct] policy or decision." *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1121 (N.D. Cal. 2003)

-9-

(quotation marks and citation omitted).  <u>Second</u>, "the agency must identify the role [the] contested document" played in "a specific deliberative process." *Russell v. U.S. Dep't of State*, 2011 WL 13161993, at *13 (C.D. Cal. Dec. 27, 2011) (quotation marks omitted).  <u>Third</u>, "[t]he agency must also describe the nature of the decision making authority vested in the office or person issuing the disputed documents, and the positions in the chain of command of the parties to the documents." *Ecological Rts. Found.*, 2017 WL 24859, at *3.  <u>Fourth</u>, the Commission must demonstrate how these documents have not lost their purported predecisional status and are not "post hoc explanation[s] of past actions." *See Russell*, 2011 WL 13161993 at *12–13 (a predecisional document "can lose that status if it is used by the agency in its dealings with the public." (cleaned up)). <u>Fifth</u>, "the agency must show that the privileged information in the documents could not be segregated out and the non-privileged information provided to the [] requester." *Id.* at *11.  None of the entries in Privilege Log 3 satisfy all five requirements.

Privilege Log 3 broadly fails to state the "role" each document played in "a specific deliberative process" or the "decisionmaking authority vested in" those authoring or reviewing the documents and their place in the Commission's "chain of command."  Vandell Decl., at Ex. D (Privilege Log 3 entries do not address these issues); *see Ecological Rts. Found.*, 2017 WL 24859, at * 3–4 (agency must describe "the positions in the chain of command of the parties to the document," and "the role played by the documents in issue in the course of [a] process").  Defendants must therefore produce the documents withheld in Privilege Log 3 in full.

***Category 1 (CDP Requirement for SpaceX):***  The Commission has not demonstrated that the Category 1 documents are predecisional.  Beyond failing to identify the specific role each document played in enforcing a CDP requirement against SpaceX or the decision-making authority of the parties to the documents,

the Commission also fails to explain how the purportedly predecisional content: (1) has not been adopted into the Commission's public positions, (2) is not a post-hoc rationalization, or (3) could not be segregated from the rest of the document. *See Ecological Rts. Found.*, 2017 WL 24859, at *4; *see also* Vandell Decl., Ex. D at PRIVCCC-00004820 (vague and limited privilege log entry referencing "[i]nternal communication . . . regarding the reasons SpaceX's launch activities require a Coastal Development Permit and draft communication to SpaceX regarding same").

*Categories 2 (SpaceX's Environmental Impacts), 3 (Falcon 9 Cadence Increase), 4 (SpaceX's Purported Violations), 6 (Other Commercial Space Launch Operators), and 7 (SLC-5):* Moreover, the entries in Categories 2–4 and 6–7 are not predecisional because they do not identify a specific, relevant agency decision, or when that decision was made or will be made. *See Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, --- F.4th ----, No. 25-3293, 2025 WL 2716266, at *4 (9th Cir. Sept. 19, 2025) (rejecting government's argument that documents were predecisional and noting that "[a]ny memorandum always will be 'predecisional' if referenced to a decision that possibly may be made at some undisclosed time in the future"). For example, PRIVCCC-00006179 states the document is an "[i]nternal, draft document containing deliberative, predecisional discussions or content regarding actual versus aspirational launch numbers for SpaceX and other rocket launch operators." There is no indication of which decision this document relates to, let alone the timing of such a decision. *See also* PRIVCCC-00004477 (withholding "[i]nternal communication containing deliberative, predecisional discussions or content regarding proposal to have Space Force provide an informational briefing for the Commission regarding SpaceX launch cadence increase").

Even if these documents relate to a prior agency decision, the Commission has not explained how they continue to be predecisional. *See Russell*, 2011 WL

13161993 at *12–13.  For example, the Commission has not explained how an August 16, 2022 email discussing whether the "Blue Origin launch project should be addressed as a consistency determination" has not lost its predecisional status since the Commission made its decision on this issue and approved the Blue Origin launch program years ago.  *See* Vandell Decl., Ex. D at PRIVCCC-00006488. And for documents that post-date the relevant agency decision, the Commission has not explained how they are not post hoc explanations and thus presumptively not predecisional.  *See Ecological Rts. Found. v. U.S. EPA*, 2021 WL 2258554, at *8 (N.D. Cal. June 3, 2021) (holding deliberative process privilege does not apply to documents prepared "for a post-hoc explanation of past actions." (internal quotation marks omitted)).  Finally, the Commission has not stated how the purportedly privileged information in the documents cannot be segregated from the non-privileged information contained therein.

Defendants have thus not established that any of the documents in Privilege Log 3 are predecisional.

### (b)   The Withheld Documents Are Not Deliberative.

"A document is 'deliberative' if 'disclosure of materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions.'" *Transgender L. Ctr.*, 46 F.4th at 783 (citation omitted). And deliberative documents must clearly indicate that the opinions expressed therein are of the individual authors personally, not the agency.  *Id.* (finding documents were not deliberative because they "represent the considered position of the agency submitted for approval by OMB, and not the personal opinions of an individual").  The documents must also "actually be related to the process by which policies are formulated." *Ecological Rts. Found.*, 2017 WL 24859, at * 3 (quotation marks and citation omitted).  The documents in Privilege Log 3 must be produced because the Commission has not carried its burden to show that they are

deliberative.

**First**, the entries in Privilege Log 3 do not explain how the disclosure of these documents would "undermine the agency's ability to perform its functions." *Transgender L. Ctr.*, 46 F.4th at 783; *see generally* Vandell Decl., Ex. D (failing to discuss how disclosure would undermine the Commission's ability to perform its functions).

**Second**, the Commission does "not explain how the . . . [withheld documents] reflect the 'give-and-take' of the consultative process" or reflect its "decisionmaking process in a way that would undermine the agency." *Ecological Rts. Found.*, 2017 WL 24859, at *5. Instead, Privilege Log 3 uses stock language that each entry is an "internal" document "containing deliberative, pre-decisional discussions or content." *See* Vandell Decl., Ex. D. These labels do not explain how the documents reflect an exchange of views or internal debate in evaluating or formulating a Commission decision and thus do not satisfy Defendants' burden to show the privilege applies. Defendants thus must produce the documents in Privilege Log 3. *See Ecological Rts. Found.*, 2017 WL 24859, at *5 (concluding that deliberative process privilege did not apply where defendant did not explain how each document reflected the give-and-take of the consultative process or reflect the decision-making process in a manner that would undermine the agency).

### 4.    Even if the Privilege Applied, It Must Yield Here.

The Commission has not remotely approached its burden to establish that the deliberative process privilege applies to Privilege Log 3, but even if it had, the privilege is a qualified one and this case's needs strongly weigh in favor of disclosure. *See Mayfield*, 2020 WL 2510649, at *1 (The deliberative process privilege is "a qualified privilege only that may yield to the demands of discovery.").

"In determining whether the privilege is overridden," courts consider: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the

government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Am. Fed'n of Gov't Emps., AFL-CIO*, 2025 WL 2716266, at \*5. "Other factors that a court may consider include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law." *N. Pacifica, LLC*, 274 F. Supp. 2d at 1122. As explained below, every factor weighs against the application of the privilege.

### (a)    The Withheld Documents Are Relevant.

SpaceX alleges that "years after the Base's Falcon 9 program was first approved by the Air Force and other federal agencies—and after the Commission itself recently found Falcon 9 launches are consistent with coastal resource protections—the Commission has decided to ignore the law . . . [and] its own established practices and findings, . . . to impose a different standard on SpaceX." Vandell Decl., Ex. F (SAC) at ¶ 3. Instead, the Commission now asserts that SpaceX's "launch program at the Base is federally licensed or permitted activity," and SpaceX must "obtain a [CDP] from the Commission to conduct launches, regardless of compliance with the CZMA." *Id.* And SpaceX alleges the Commission's newfound attempts to subject SpaceX to "heightened regulation and adverse action" is motivated by "overt political bias" against the First Amendment expressions and conduct of Elon Musk. *See id.* at ¶ 4. SpaceX thus asserts that the Commission has violated its First Amendment rights by disparately subjecting it to harmful regulatory action due to the First Amendment protected activity of its CEO. *See id.* ¶ 179–197. In response, Defendants argue that SpaceX's claims are unripe because the Commission has not made a sufficiently credible threat of an enforcement action.

Each of the six categories of documents the Commission has withheld are

-14-

directly relevant to SpaceX's allegations and claims, and at least Categories 1 and 4 are highly relevant to whether the Commission has credibly threatened enforcement of the Coastal Act against SpaceX.

- Category 1—requiring SpaceX to obtain a CDP—is highly relevant to SpaceX's assertion that the Commission's demands that SpaceX obtain a CDP are unlawful and motivated by discriminatory bias and animus, as well as the Commission's contentions that SpaceX has not shown a credible threat of enforcement. *See generally* Vandell Decl., Ex. F.

- Category 2—SpaceX's environmental impacts—relates to SpaceX's assertion that the Commission seeks to regulate SpaceX due to bias against its CEO's First Amendment protected conduct rather than any genuine environmental concerns, as illustrated by the fact that the Commission previously found "Falcon 9 launches are consistent with coastal resource protections." *E.g.*, *id.* ¶¶ 3, 179–197.

- Category 3—increasing the number of Falcon 9 launches from the Base—is likewise relevant because the Commission's wrongful conduct targets SpaceX's Falcon 9 launch program at the Base. *E.g.*, *id.* ¶ 83–121.

- Category 4—SpaceX's purported violations—is relevant to show the motivations for and nature of the Commission's disparate regulatory treatment of SpaceX, and to Defendants' assertions that SpaceX has not shown a credible threat of enforcement of the Coastal Act against SpaceX. *E.g.*, *id.* ¶ 122–26 (discussing threat of Commission enforcement and fines against SpaceX).

- Categories 6 and 7—other commercial space launch operators' conduct on the Base and activity at SLC-5—are relevant because SpaceX alleges the Commission treats SpaceX disparately from other commercial space launch operators. *E.g., id.* ¶¶ 73, 104, 109, 136.

-15-

1    Where, as here, the purportedly privileged documents are relevant to claims

2    of government discrimination and misconduct, courts have held that this factor

3    weighs strongly in favor of disclosure.  *See N. Pacifica, LLC*, 274 F. Supp. 2d at

4    1124 ("The motive and intent of the City Council members are undisputably

5    relevant . . . .  Because the City Council's motive and intent are central to

6    [Plaintiff's] equal protection claim, and at issue is alleged governmental

7    misconduct, these factors weigh strongly in favor of disclosure.").  Even where the

8    documents "do not necessarily demonstrate the [agency's] intent," and instead

9    merely "corroborate the [agency's] intent," this factor still weighs against

10    withholding.  *See Marilley v. McCamman*, 2012 WL 4120633, at *6 (N.D. Cal.

11    Sept. 19, 2012) (quotation marks omitted).  Because the Commission's documents

12    are highly relevant to SpaceX's allegations, to its First Amendment retaliation

13    claim, and to Defendants' ripeness arguments, and will likely shed light on the

14    Commission's motivations for disparately regulating SpaceX, the first factor

15    strongly favors disclosure.

16                    **(b)    Other Evidence is Unavailable.**

17    Privilege Log 3 states that the Commission is the custodian for every

18    document withheld and that each document is internal to the Commission.

19    Because "the evidence [SpaceX] seek[s] . . . , namely that of a discriminatory

20    intent, does not typically lay dormant in an administrative record," there is no

21    reasonable basis to claim that other sources, such as public documents, are

22    sufficient here.  *See Newport Pacific Inc. v. Cnty. of San Diego*, 200 F.R.D. 628,

23    639 (S.D. Cal. 2001).  This factor thus supports disclosure because the withheld

24    documents are unavailable from other sources and Defendants have not identified

25    any alternate sources.  *See Marilley*, 2012 WL 4120633, at *5 ("Defendant has not

26    demonstrated that Plaintiffs would be able to obtain comparable analyses

27    elsewhere" that is contained in the agency's "draft advice, opinions,

28    recommendations, and proposals").  Indeed, the Ninth Circuit recently held that

-16-

JOINT STIP. RE: PLAINTIFF'S MOT.TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS
AND INFORMATION WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS

this factor tips the scale towards the party seeking disclosure where the information

concerns an agency's internal communications and draft materials. *See Am. Fed'n*

*of Gov't Emps., AFL-CIO*, 2025 WL 2716266, at \*5 ("The evidence provided by

the [agency] cannot be obtained elsewhere (second *Warner* factor)").

### (c)    The Commission is Central to this Litigation.

The Commission is a state agency, and Defendants have been sued in their

official capacities at the Commission.  And the Commission's "decisionmaking

process . . . is by no means collateral to the litigation; indeed, the decisionmaking

process 'is not swept up into the case, it *is* the case'" in substantial part.  *See N.*

*Pacifica, LLC*, 274 F. Supp. 2d at 1124 (emphasis in original) (citation omitted).

As the D.C. Circuit has explained, where the "'the plaintiff's cause of action is

directed at the government's intent, . . . it makes no sense to permit the government

to use the privilege as a shield.'"  *In re Subpoena*, 145 F.3d at 1422.  Because the

Commission's intent—and its decision-making process—is central to this

litigation, the third factor favors disclosure.  *See also Karnoski v. Trump*, 2019 WL

6894510, at \*2 (W.D. Wash. Dec. 18, 2019), *order clarified*, 2020 WL 606493

(W.D. Wash. Feb. 7, 2020).

### (d)    Disclosure Would Not Chill Internal Discussion.

Shedding light on the unlawful motivations of government officials does not

chill speech.  To the contrary, where documents are relevant to allegations of an

agency's retaliatory bias and animus, courts have held there is little risk that

disclosure of those materials would hinder frank and independent discussion.

*Newport Pacific, Inc.*, 200 F.R.D. at 640 (finding no chilled speech in civil rights

action, holding and "a useful purpose will have been served" if "members of

government agencies acting on behalf of the public at large are reminded that they

are subject to scrutiny."); *Marilley*, 2012 WL 4120633, at \*6.

The Commission's public statements have already revealed that its disparate

treatment of SpaceX is motivated by unlawful bias and animus.  For example, the

-17-

Commission's own officials stated at a public hearing on SpaceX's launch program that:

- "The problem here is SpaceX."
- "The concern is with SpaceX increasing its launches, not with the other companies increasing their launches."
- "[W]e're dealing with a company . . . the head of which has aggressively injected himself into the Presidential race and made it clear what his point of view is."
- "Elon Musk is hopping about the country, spewing and tweeting political falsehoods and attacking FEMA while claiming his desire to help the hurricane victims with free Starlink access to the internet."
- "[J]ust last week" Elon Musk was "speaking about political retribution on a national stage."
- "[L]ast year we did see the owner of Starlink shut down Starlink when one of our allies was going to attack one of our adversaries."
- "[W]e do know that the person who controls these companies has enough power to not work in the best interest, when they feel like it, of our allies."
- "[W]e are pursuing a CDP with SpaceX."

Vandell Decl., Ex. F at ¶ 107–11. Defendants' improper public statements are likely the tip of the iceberg, and SpaceX is entitled to discover the extent to which animus and bias permeated the Commission's conduct. Disclosure of the withheld materials thus serves "a useful purpose"—to uncover the extent of the Commission's disparate treatment of SpaceX and its unlawful motivations. *Marilley*, 2012 WL 4120633, at *6 (producing documents would not chill speech in equal protection case, as disclosure serves the "useful purpose" of "remind[ing] [government agencies] that they are subject to scrutiny"). Even if there were a reasonable argument that disclosure would chill frank and independent discussion

-18-

1  (there is not), the Parties' "protective order will help mitigate these concerns." *Id*.

2  This factor thus weighs against the application of the privilege.

3            **(e)**     **There is Great Interest in Accurate Fact Finding Here.**

4       "In every case, the desirability of accurate fact finding weighs in favor of

5  disclosure." *N. Pacifica, LLC*, 274 F. Supp. 2d at 1124.  However, where unlawful

6  discrimination is at issue, "the interest in accurate judicial fact finding is

7  heightened." *Id.* (citing *Newport Pacific Inc.*, 200 F.R.D. at 638).  As explained in

8  *Newport Pacific Inc.*, "the public is entitled to know" how government employees

9  "did their analysis" if there is a concern government conduct was motivated by

10  bias and animus.  *See* 200 F.R.D. at 639.  The same is true here: SpaceX, along

11  with the public, is entitled to know how and why the Commission decided to

12  disparately treat SpaceX, including by demanding that SpaceX obtain a CDP to

13  conduct launches from the Base.  Especially here, where the public record is

14  already so damning, SpaceX and the public deserve to know how much that

15  animus pervaded the Commission's internal decision-making.  "As a result, . . . the

16  interest of the litigant in accurate judicial fact finding . . . weighs in favor of

17  disclosure." *Id.*

18            **(f)**     **The Litigation Concerns Serious Issues.**

19       The seriousness of the issues in this litigation cannot be overstated and

20  strongly favor disclosure of the documents in Privilege Log 3.  Whether a state

21  agency has acted to punish a company because of its CEO's speech squarely

22  implicates "our constitutional command of free speech," which "is basic and

23  fundamental" and "so important to the preservation of the freedoms treasured in a

24  democratic society."  *See Bridges v. State of Cal.*, 379 U.S. 559, 574 (1965); *see*

25  *also Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 501 (1949) ("[W]e are

26  mindful of the essential importance to our society of a vigilant protection of

27  freedom of speech.").  But the interests here extend beyond the First Amendment:

28  This litigation concerns the Commission's attempted interference with SpaceX's

operation of a launch program that is critical to the Federal government's national security and space transportation objectives.  *E.g.*, Vandell Decl. Ex. F at ¶ 56–74, 128–138.  Taken either alone or together, the constitutional and national security issues at stake in this litigation are extraordinarily serious.  *See N. Pacifica, LLC*, 274 F. Supp. 2d at 1123 (finding "the federal interest in the enforcement of federal constitutional rights weighs in favor of disclosure").  This factor also strongly supports disclosure.

### (g)    The Litigation Concerns Government Misconduct.

As discussed above, the Commission's misconduct is central to SpaceX's First Amendment retaliation claim.  *See* §§ 3(a), (d), *supra*.  This factor thus weighs in favor of disclosure.  *See Marilley*, 2012 WL 4120633, at *6 (government misconduct factor weighs in favor of disclosure where an agency's "decisionmaking process . . . 'is' the case" and the documents could "corroborate" unlawful "intent").

### (h)    There is an Interest in Enforcement of Federal Law.

Courts have repeatedly held that "the federal interest in the enforcement of federal constitutional rights weighs in favor of disclosure."  *N. Pacifica, LLC*, 274 F. Supp. 2d at 1123; *see also Newport Pacific Inc.*, 200 F.R.D. at 640 ("1983 claims serve a vital public interest").  For example, the Court in *Academy of Our Lady of Peace v. City of San Diego* held that allegations "that the City discriminated against Plaintiff based upon Plaintiff's religious beliefs . . . by denying the permits at issue, . . . involves allegations of violations of federal constitutional magnitude," which "favors disclosure."  2011 WL 6826636, at *8 (S.D. Cal. Dec. 28, 2011).  Because the instant action involves allegations of governmental retaliation for protected First Amendment expressions, this factor also favors disclosure.

### 5.    The Parties' Stipulated Protective Order is Sufficient to Mitigate Any Alleged Harms of Disclosure.

The Court entered the Stipulated Protective Order that allows the Parties to designate materials produced in discovery as "confidential;" "highly confidential – attorney's eyes only;" and/ or "sensitive – subject to U.S. export control laws." Vandell Decl., Ex. C.  The Protective Order defines confidential information or items to include "agency predecisional, deliberative process information that may otherwise qualify for protection under the deliberative process privilege." *Id.* at 3–4.  Therefore, to the extent any harm would result from the disclosure of the materials in Privilege Log 3, the Protective Order mitigates those impacts.[3]

For the foregoing reasons, the Court should compel Defendants to produce the documents withheld under Privilege Log 3.

### 6.    The Order Should Apply to Related Discovery.

The deliberative process issues implicated by the documents withheld by Defendants have broader application than Privilege Log 3.  For example, the parties will soon be engaged in depositions during which internal Commission discussions and decision-making are discussed.  The documents sought herein, along with related testimony, will be relevant to those depositions. Given the January 30, 2026 scheduled close of fact discovery, it is essential that deliberative process issues be resolved at this juncture and not interfere with the remainder of discovery.

### C.    Plaintiff's Conclusion

SpaceX respectfully requests that the Court order Defendants to produce the documents withheld under Privilege Log 3 and provide related discovery for four straightforward reasons.  ***First***, the privilege simply does not apply to the withheld documents because they are central to SpaceX's claims of misconduct in the

---

[3] SpaceX does not concede that these materials are subject to the Protective Order. It expressly reserves the right to challenge any such designations.

JOINT STIP. RE: PLAINTIFF'S MOT.TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS
AND INFORMATION WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS

Commission's decision-making process. **Second**, even if the Court were to find the privilege applies (it should not), the Commission waived it by failing to provide the required agency-head declaration. **Third**, assuming this defect does not amount to waiver, the Commission has not carried its burden to show that any of the withheld documents are predecisional or deliberative. **Fourth**, even if the privilege applied, it must yield to the unique circumstances of this case, as each of the eight balancing factors weighs decisively in favor of disclosure.

## III.  DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES

### A.  Factual Background

Defendants do not repeat the facts set forth in SpaceX's Factual Background section, but provide only the following additional facts.

Since SpaceX served requests for production on Defendants in March 2025, Defendants have been diligently collecting, reviewing, and producing documents. (Declaration of Paul Batcher in Support of Joint Stipulation Re: Plaintiff's Motion to Compel Defendants to Produce Documents and Information Withheld on Deliberative Process Privilege Grounds ("Batcher Decl.") ¶¶ 4-6.)  The document collection, review, and production process has been especially time-consuming in this case due to the large number of custodians and document sources from which Defendants collected documents; the sheer number of documents collected and reviewed; and the complexity of the document review, including technical issues related to the collection of text messages and privilege issues, including the deliberative process privilege. (*Id*. ¶ 6-10.)  The parties filed a stipulated motion to continue trial dates and deadlines on September 23, 2025, which the Court granted in part. (*Id*. ¶ 11; Dkt. No. 72.)  In the joint stipulation, Defendants informed the Court that they anticipated being able to substantially complete their document production by October 31, 2025. (Batcher Decl. ¶ 11.)  Defendants subsequently focused on continuing their document collection, review, and production efforts,

1  and substantially completed their document production by October 31, 2025. (*Id.*)

2      In the meantime, Defendants served Privilege Log 3 on SpaceX on

3  September 5, 2025. (*Id.* ¶ 12.) SpaceX sent Defendants a meet and confer letter

4  on October 24, 2025, raising various issues with Defendants' assertion of the

5  deliberative process privilege, and requesting a meet and confer by October 31,

6  2025. (*Id.*) The parties met and conferred on October 31, 2025. (*Id.*)

7      At that time, Defendants informed SpaceX that they were still reviewing the

8  documents on Privilege Log 3 in light of the issues raised in SpaceX's October 24,

9  2025, meet and confer letter. (*Id.* ¶ 13.) Defendants informed SpaceX that they

10 would likely withdraw the deliberative process privilege as to certain documents

11 on the log and produce those documents. (*Id.*) Defendants further informed

12 SpaceX that they would provide a declaration from Dr. Kate Huckelbridge,

13 Executive Director of the Commission, in support of their deliberative process

14 privilege assertions. (*Id.*)

15     Defendants estimated that they would identify the additional documents for

16 production and provide the declaration from Dr. Huckelbridge within two weeks,

17 or by November 14, 2025. (*Id.* ¶ 14.) Defendants were performing these tasks

18 when they received SpaceX's portion of this joint discovery motion on November

19 14, 2025. (*Id.*)

20     **B.    Argument**

21     The Court should uphold the deliberative process privilege for the

22 documents identified on Privilege Log 3. Defendants' privilege assertion is

23 supported by a declaration from Kate Huckelbridge, Executive Director of the

24 Coastal Commission, and the documents withheld are pre-decisional and

25 deliberative. Additionally, the application of the privilege is supported by nearly

26 all the factors courts use to determine if the needs of the litigation outweigh the

27 privilege.

28

JOINT STIP. RE: PLAINTIFF'S MOT.TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS
AND INFORMATION WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS

### 1. The Declaration of Kate Huckelbridge Supports Defendants' Deliberative Process Privilege Assertions.

The deliberative process privilege is properly asserted by an agency head after personally reviewing the documents for which the privilege is claimed. *In re McKesson Governmental Entities Average Wholesale Price Litig.*, 264 F.R.D. 595, 601 (N.D. Cal. 2009). The purpose of this requirement is to deter agencies from "too freely claiming a privilege that is not to be lightly invoked ... by assuring that some one [*sic*] in a position of high authority could examine the materials involved from a vantage point involving both expertise and an overview-type perspective." *Id.* (quoting *Coastal Corp. v. Duncan*, 86 F.R.D. 514, 517 (D. Del. 1980)). "That agency head must then file a sworn declaration with specific facts demonstrating why each document (or portion of each document) is 'deliberative' and 'predecisional' and why a protective order would be inadequate to reduce the degree and type of harm that might result from requiring production." *Mayfield v. Cnty. of Los Angeles*, No. 219CV1298FMOSKX, 2020 WL 2510649, at *1 (C.D. Cal. Mar. 20, 2020).

Defendants' deliberative process privilege assertions are supported by the declaration of Dr. Kate Huckelbridge, the Commission's Executive Director. (Declaration of Kate Huckelbridge in Support of Defendants' Deliberative Process Privilege Assertions ("Huckelbridge Decl.") ¶¶ 1-3.) In her declaration, Dr. Huckelbridge confirms that she reviewed each document being withheld on deliberative process privilege grounds. (*Id.* ¶ 6.) Dr. Huckelbridge explains how each such document is pre-decisional and deliberative, how disclosure of each document would impair the quality of the Coastal Commission's decision-making process, and why a protective order would be inadequate to reduce the harm from disclosure of the document. (*Id.* ¶¶ 12-52.) Defendants have therefore satisfied the requirement of having an agency head support the deliberative process privilege assertions.

## 2.    The Documents Withheld Are Predecisional and Deliberative.

Aside from support by an agency head declaration, a document must meet two requirements for the deliberative process privilege to apply.  *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984).  First, the document must be predecisional, meaning that it must have been generated before the adoption of an agency's policy or decision.  *Id*.  Second, the document must be deliberative in nature, containing opinions, recommendations, or advice about agency policies.  *Id*.  The documents withheld here satisfy both requirements.

### (a)    The Documents Are Predecisional.

A "predecisional" document is one prepared to assist an agency decision-maker in arriving at their decision, and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Assembly of State of Cal. v. U.S. Dep't of Com.*, 968 F.2d 916, 920 (9th Cir. 1992), as amended on denial of reh'g (Sept. 17, 1992) (quoting *Formaldehyde Inst. v. Department of Health and Human Services*, 889 F.2d 1118, 1122 (D.C. Cir. 1989)).

Each document withheld here satisfies the pre-decisional requirement.  Dr. Huckelbridge's declaration identifies the specific agency decision that each document preceded.  (*See* Huckelbridge Decl. ¶¶ 12-17 [Consistency Determination No. CD-0003-24]; 18-23 [Consistency Determination No. CD-0007-24]; 24-28 [whether proposed revised findings prepared by staff accurately reflected the Commission's decision at the October 10, 2024 meeting]; 29-34 [Consistency Determination No. CD-0010-22]; 35-39 [whether the project described in ND-0009-23 was being undertaken in a manner consistent to the maximum extent practicable with the enforceable policies of the California Coastal Management Program]; 40-42 [whether SpaceX's launch activities require a CDP,

-25-

and, if so, whether the Commission should require SpaceX to apply for a CDP]; 44 [whether the Commission should concur in Space Force's negative determination for ABL Space's proposed space launch activities]; 45 [whether the Commission should review Blue Origin's launch program as a consistency determination, a consistency certification, or a CDP]; 46 [whether the Commission should object to the consistency determination for Blue Origin's launch program]; 47-48 [whether the Commission should concur in Space Force's negative determination for the SpaceX Dragon landing project, including whether the landings are federal agency activity]; 49-50 [whether the Commission should concur with the consistency determination for SpaceX's proposed 100 launch cadence increase]; 51 [whether the Commission should find SpaceX in violation of the Coastal Act].)  Each of the withheld documents predates the Commission's decision to which the document pertains.  (*Id*. ¶¶ 6, 12-51.)

Dr. Huckelbridge's declaration identifies the role each document played in the decision-making process, and the role of each person involved in preparing the document.  (Huckelbridge Decl. ¶¶ 12-51.)  None of the withheld documents post-date the decisions at issue, and the Commission has not used any of the documents in its dealings with the public.  (*Id*. ¶¶ 6, 12-51.)  Dr. Huckelbridge's declaration confirms for each document that either the entire document is privileged, or a redacted version has been or will be produced.  (*Id*. ¶¶ 12-51.)

SpaceX's contentions as to certain specific documents do not change this result.[4]  In the email string identified as PRIVCCC-00004820, Dr. Huckelbridge, Cassidy Teufel (Deputy Director), and Joseph Street (Manager, Energy, Ocean Resources and Federal Consistency) discuss the reasons why SpaceX's Falcon 9 launch program may require a CDP, and discuss strategies for drafting a letter to

---

[4] Defendants are withdrawing the deliberative process privilege for the other documents cited by SpaceX (PRIVCCC-0000617).  (Batcher Decl. Ex. K.)  This document will be produced and is therefore not at issue in this motion.

JOINT STIP. RE: PLAINTIFF'S MOT.TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS AND INFORMATION WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS

1  SpaceX regarding the need for a CDP.  (Huckelbridge Decl. ¶ 42.c)  Similarly, in

2  PRIVCCC-00004477 (produced as CCC-00146080) Commissioner Hart expresses

3  her personal view as to whether SpaceX's Falcon 9 launch program requires a

4  CDP.  (*Id*. ¶ 42.b.)  The Commission has not yet decided this issue, meaning the

5  discussion is necessarily not a post-hoc rationalization.  (*Id*. ¶ 40.)

6      SpaceX questions why PRIVCCC-00006488 has not lost its privileged status

7  because the decision at issue was made "years ago."  (Joint Stipulation Re:

8  Plaintiff's Motion to Compel Defendants to Produce Documents and Information

9  Withheld on Deliberative Process Privilege Grounds ("JS") 12:1-5.)  However,

10 documents do not lose their privileged status simply because a decision has

11 occurred, especially where the decision was relatively recent and the deliberation

12 at issue is potentially relevant to other issues and decisions that are still before the

13 Commission.  *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1120

14 (9th Cir. 1988) (noting that disclosure of deliberative documents after a decision

15 was made would vitiate the purpose of the privilege since "[s]ubjecting a

16 policymaker to public criticism on the basis of such tentative assessments is

17 precisely what the deliberative process privilege is intended to prevent"); *Fed.*

18 *Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 360 (1979) ("It

19 follows that documents shielded by executive privilege remain privileged even

20 after the decision to which they pertain may have been effected, since disclosure at

21 any time could inhibit the free flow of advice, including analysis, reports, and

22 expression of opinion within the agency.").

23          **(b)    The Documents Are Deliberative.**

24      A document is deliberative if the disclosure of the materials would expose

25 an agency's decision-making process, "in such a way as to discourage candid

26 discussion within the agency and thereby undermine the agency's ability to

27 perform its functions."  *Assembly of State of Cal.*, 968 F.2d at 920.

28      Each of the withheld documents pertains to a decision before the

-27-

1  Commission and involves Commission staff or Commissioners providing their
2  personal, candid views on an issue or decision before the Commission.  One
3  category of documents withheld is draft staff reports, many of which include
4  revisions, comments, and tracked changes.  (Huckelbridge Decl. ¶¶ 12, 18, 29, 35.)
5  The drafting of staff reports is an iterative process, with staff drafting preliminary
6  analyses and conclusions, which may and often do change based on additional
7  information gathered during the review process, back and forth with the applicant,
8  and/or feedback and discussion with other staff members.  (*Id*. ¶ 16.)  During the
9  writing process, staff will propose and flesh out ideas, have those ideas critiqued
10 by other staff, and revise their analyses and conclusions based on that feedback.
11 (*Id*.)

12        If staff knew that, during their review of consistency determinations and
13 other issues before the Commission, their preliminary ideas, analyses, and
14 conclusions, as well as any feedback or criticism of those preliminary positions,
15 would be subject to disclosure, it would have an unavoidable chilling effect on the
16 free flow of ideas during the drafting process.  (*Id*.)  Without a robust and rigorous
17 drafting process, staff analyses and conclusions would be less accurate, considered,
18 and thoughtful, thereby impairing the quality of the final recommendation made to
19 the Commission.  (*Id*.)  This, in turn, would negatively impact the decision-making
20 quality of the Commission itself.  (*Id*.); see *Nat'l Wildlife Fed'n*, 861 F.2d at 1121
21 ("Recommendations on how best to deal with a particular issue are themselves the
22 *essence* of the deliberative process.  So long as such recommendations do not
23 represent final agency policy, it is clear that they fall within the deliberative
24 process privilege."); *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health
25 Admin*., 610 F.2d 70, 86 (2d Cir. 1979) (disclosure of even factual portions of draft
26 reports that could reveal internal decision-making process within the agency was
27 impermissible because "disclosure of the internal workings of the agency is exactly
28 what the law forbids").

1    Another category of documents withheld is internal communications about

2    various specific decisions before the Commission. (*See, e.g.*, Huckelbridge Decl.

3    ¶¶ 17, 23, 34, 42, 44-51.) Commission staff use emails during the decision-making

4    process to voice ideas and propose preliminary positions, so that those ideas and

5    positions can be considered, discussed, probed, and debated by other staff. (*Id*.

6    ¶ 17.a.) If staff knew that emails containing their preliminary ideas, analyses, and

7    conclusions, as well as any feedback or criticism of those preliminary positions,

8    would be subject to disclosure, this would also have an unavoidable chilling effect

9    on the free flow of ideas during the decision-making process. (*Id*.) Staff would be

10   reluctant to make preliminary recommendations or, worse, would be reluctant to

11   change preliminary recommendations that they later determined to be wrong. (*Id*.)

12   Without robust debate and exchange of ideas, staff positions would be less

13   accurate, considered, and thoughtful. (*Id*.) This, in turn, would negatively impact

14   the decision-making quality of the Commission itself. (*Id*.); *see Moye, O'Brien,*

15   *O'Rourke, Hogan & Pickert v. Nat'l R.R. Passenger Corp.*, 376 F.3d 1270, 1279

16   (11th Cir. 2004) (concluding that the deliberative process privilege applies to "the

17   entire body of collaborative work" performed by auditors conducting an

18   investigation, including "the staff auditors' notes and/or memoranda summarizing

19   site visits, interviews, meetings, and/or telephone conversations . . . ; and

20   suggestions and critiques from the auditors' peers and superiors, including

21   recommendations for further action").

22       Courts have held that documents similar to those withheld here are

23   deliberative in nature. For example, in *In re Camp Lejeune Water Litigation*, the

24   plaintiff sought draft cancer incidence studies from the defendant, which the

25   defendant claimed were protected by the deliberative process privilege. *In re*

26   *Camp Lejeune Water Litig.*, 707 F. Supp. 3d 509, 512, 514 (E.D.N.C. 2023). The

27   court held that the draft studies were deliberative in nature, reasoning that they

28   were preliminary drafts containing revisions and comments, and were subject to

-29-

revision based on internal comment and feedback.  *Id*. at 514-15.  The same
rationale applies to the draft staff reports and other draft documents withheld here.

Similarly, in *Scalia v. International Longshore & Warehouse Union*, the
U.S. Department of Labor ("DOL") sued the defendant to invalidate the election of
certain union officers.  *Scalia v. Int'l Longshore & Warehouse Union*, 336 F.R.D.
603, 608-09 (N.D. Cal. 2020).  The defendant sought various internal records and
memoranda from DOL, and DOL objected based on the deliberative process
privilege.  *Id*. at 613.  The court held that internal memoranda containing
predecisional recommendations, analyses, and assessments were deliberative in
nature.  *Id*. at 613-14.  The same reasoning applies to the Commission's internal
communications here.

### 3. The Overriding Purpose of the Deliberative Process Privilege—Promoting Quality Decision-Making by Fostering Free and Candid Internal Agency Debate and Dialogue—Supports Application of the Privilege Here.

In addition to being predecisional and deliberative, nearly all the relevant
factors support the application of the deliberative process privilege here.

#### (a) Disclosure Would Have a Disastrous Chilling Effect on Internal Discussion and Deliberation.

The primary purpose of the deliberative process privilege is "protecting the
'decision making processes of government agencies.'"  *N.L.R.B. v. Sears, Roebuck
& Co*., 421 U.S. 132, 150 (1975).  The privilege "rests on the obvious realization
that officials will not communicate candidly among themselves if each remark is a
potential item of discovery and front page news, and its object is to enhance the
quality of agency decisions by protecting open and frank discussion among those
who make them within the Government."  *Dep't of the Interior v. Klamath Water
Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) (quotation marks and internal
citation omitted).  Absent candid discussions, "the decisions and policies
formulated would be the poorer as a result."  *N.L.R.B*, 421 U.S. at 150 (internal

-30-

1    quotation marks omitted); *see In re McKesson Governmental Entities Average*

2    *Wholesale Price Litig*., 264 F.R.D. at 600 ("The underlying premise of the

3    privilege is that agency decision-making might be impaired if discussions within

4    the agency were subject to public review, thereby discouraging 'frank discussion

5    of legal or policy matters.'").

6            As noted above, disclosure to SpaceX or the public of Commission staff's

7    internal discussions, draft reports, preliminary analyses, and personal opinions

8    would discourage free and candid discussion about issues before the Commission.

9    (Huckelbridge Decl. ¶¶ 16, 17.a, 52.)  If staff knew, for example, that an email in

10   which they were about to propose an idea, or push back on a colleague's proposal,

11   or play devil's advocate on a legal or policy issue would be subject to disclosure,

12   they would hesitate to write that email.  They would impose a filter on their written

13   communication.  Their number one concern would no longer be, "is what I'm

14   about to write going to help us get to the right result," but, rather, "what will

15   happen if what I am about to write is disclosed to SpaceX, or Space Force, or the

16   public?"  They might not put a countervailing, contentious, or novel idea into

17   writing.  Or, instead of emailing they might pick up the phone, and the more

18   rigorous and detailed dialogue that takes place in written communications,

19   including email, would be lost.  *See Env't Prot. Agency v. Mink (Mink)*, 410 U.S.

20   73, 87 (1973) ("[I]t would be impossible to have any frank discussion of legal or

21   policy matters in writing if all such writings were to be subjected to public

22   scrutiny.").

23           A reduction in honest, candid discussions among staff during the process of

24   formulating a recommendation would, in turn, harm the quality of the

25   Commission's decision-making process.  (Huckelbridge Decl. ¶¶ 16, 17.a, 52.)

26   Staff recommendations and analyses would lack the refinement and robustness that

27   comes from being challenged by different perspectives, counterarguments, and

28   countervailing evidence.  The recommendations would be more one-sided, more

-31-

1  insular, and more likely to contain inaccuracies and errors.  The Commission relies

2  on information and analysis provided by staff, so having less effective staff reports,

3  recommendations, and analyses would impair the Commission's decision-making

4  process.  (*Id.*); *see Mink*, 410 U.S. at 87 (noting that the "efficiency of Government

5  would be greatly hampered if, with respect to legal and policy matters, all

6  Government agencies were prematurely forced to 'operate in a fishbowl'").

7              **(b)    The Vast Majority of the Withheld Documents Are
                        Irrelevant to SpaceX's Claims.**
8

9          The documents being withheld are only tangentially relevant to SpaceX's

10  claims.  Staff's personal opinions are not relevant to SpaceX's claims that

11  Defendants' actions violate the Coastal Zone Management Act (Count I), the

12  Supremacy Clause (Count II), the Federal Enclave Clause (Count III), or the

13  California Coastal Act applied as federal law (Count IV).  While SpaceX contends

14  the documents are relevant to show bias in connection with its free speech claim

15  (Count V), most of the allegedly biased statements SpaceX identifies in its motion

16  have nothing to do with the categories of documents being withheld.  For example,

17  SpaceX points to statements made during the October 10, 2024, hearing by

18  Commissioners Bochco, Newsom, Cummings, Hart, and Wilson.  (JS 17:27-18:24;

19  Batcher Decl. ¶ 15.)  Yet, no communications or documents drafted or prepared by

20  Commissioners Newsom, Cummings, or Wilson are withheld on Privilege Log 3.

21  (See Batcher Decl. Ex. L.)  Only a single email from Commissioner Hart and a

22  single email from Commissioner Bochco are withheld.  (*Id.*; *see* Huckelbridge

23  Decl. ¶¶ 42.a, 42.b.)

24          The vast majority of the emails and documents listed on Privilege Log 3

25  were prepared by staff during the process of reviewing and analyzing the

26  consistency determinations and other issues before the Commission.  (Batcher

27  Decl. Ex. L; Huckelbridge Decl. ¶¶ 12-51.)  SpaceX has proffered no evidence that

28  any of these staff were biased or motivated by an improper purpose.  (*See* JS

-32-

18:20-24.)  To the contrary, SpaceX all but admits it is engaged in a fishing expedition, speculating it might find some imagined "iceberg" of wrongdoing under the surface.  (*Id.*)  The only statement by staff that SpaceX points to is Dr. Huckelbridge's statement that "we are pursuing a CDP with SpaceX."  (JS 18:19.) SpaceX does not explain how this statement shows bias or would justify abrogating the deliberative process privilege in the hopes of finding some scintilla of evidence to support its claims.

The cases SpaceX cites do not support its position.  In *North Pacifica, LLC v. City of Pacifica*, the deliberative material at issue was not draft documents and communications going to the heart of the agency's decision-making process, but rather anticipated questioning at trial regarding the motive and intent of city council members in approving the challenged government action.  *N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1120 (N.D. Cal. 2003).  While trial questioning might implicate the deliberative process privilege, it is far different and potentially far less chilling to agency deliberations than disclosure of predecisional communications and draft documents.  Put differently, trial questioning about motives and intent is far less likely to reveal the "give-and-take that occurs among agency members in the formulation of policy," which is the core concern of the deliberative process privilege.  *Nat'l Wildlife Fed'n.*, 861 F.2d at 1117.

Similarly, *Marilley v. McCamman* did not involve core deliberative documents analyzing, debating, and deliberating about a decision before the agency, but rather reports and analyses regarding bills pending before the legislature.  *Marilley v. McCamman*, No. C 11-02418 DMR, 2012 WL 4120633, at *2-3 (N.D. Cal. Sept. 19, 2012).  This information was directly relevant to the plaintiff's claims in the case.  (*Id*. at *4-5.)  The risk of chilling agency deliberations is far less when it comes to documents disclosing an agency position on proposed legislation, than important decisions pending before the agency itself.

-33-

(c)    **Other Evidence Is Available.**

Another factor supporting the deliberative process privilege is that SpaceX has access to numerous other sources of documents and information relevant to its claims.  In discovery, SpaceX served documents requests for all documents referencing Elon Musk, SpaceX, Starlink, or Tesla, as well as all documents pertaining to the Commission's review of SpaceX launch programs, among other requests.  (Batcher Decl. ¶ 4.)  Defendants collected and produced documents from the Commissioners' personal email, personal text messages, and social media accounts.  (*Id*. ¶ 5.)  Many of these produced documents post-date the Commission's October 10, 2024, decision SpaceX challenges in this litigation, and many such communications discuss the merits and reasons for the decision.  (*Id*. ¶ 16.)

Additionally, the basis for the Commission's October 10, 2024, decision is well-documented in the record, including a detailed staff report, supporting documents, and a staff presentation.  (Batcher Decl. ¶ 17.)  There is a transcript of the hearing in which the Commission considered, discussed, and voted on the Space Force consistency determination before the Commission on that date.  (*Id*.)  The Commission's decision was subsequently memorialized in revised findings, adopted by the Commission at its February 6, 2025, meeting.  (*Id*.)  The availability of other sources of information regarding the issues SpaceX raises militates against abrogation of the deliberative process privilege.  *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp*., 429 U.S. 252, 268 (1977) (noting that evidence of whether a government policy or decision was motivated by an invidious purpose could exist in non-deliberative portions of the administrative history, "especially where there are contemporary statements by members of the decisionmaking body, minutes of its meetings, or reports"); *Scalia*, 336 F.R.D. at 617 (noting that a party's generic assertions about relevance "explain nothing about what [that party] expects the documents to show or how that information is

-34-

1  not available from other sources, including its own discovery and investigation and

2  the documents already produced by [the agency]").

3      SpaceX contends the documents should be disclosed because information

4  about the Commission's deliberations cannot be obtained elsewhere. (JS 16:23-

5  28.) This is not the law. Privileged documents reflecting an agency's internal

6  deliberations cannot, by definition, be obtained anywhere else. If an agency's

7  deliberative discussions were available elsewhere, they would not qualify as

8  internal, privileged, deliberative documents. More is required to compel disclosure

9  than simply the fact that the deliberative discussions cannot be obtained elsewhere;

10  otherwise, the deliberative process privilege would be self-defeating. *See In re*

11  *Camp Lejeune Water Litig.*, 707 F. Supp. 3d at 516 (chilling effect of disclosure

12  justified withholding documents even though certain documents were solely in the

13  agency's possession).

14      The cases SpaceX cites do not require a different result. In *American*

15  *Federation of Government Employees, AFL-CIO v. Trump*, for example, the

16  documents at issue were the entirety of the agency's reduction in force plans

17  (referred to as ARRPs), which the court had serious doubts were even privileged in

18  the first place. 155 F.4th 1082, 1092 (9th Cir. 2025) ("[A]ll available evidence…

19  indicates that the ARRPs represent the considered position of the agency submitted

20  for approval by OMB, and not the personal opinions of an individual."). In this

21  case Defendants have not withheld any documents comprising the final, considered

22  position of the agency, and thus *American Federation of Government Employees* is

23  inapposite.

24      Again, *Marilley v. McCamman* involved directly relevant bill analyses, not

25  deliberative documents about a consequential decision pending before the agency

26  itself. *Marilley*, 2012 WL 4120633, at *2. The situation here is different, and

27  Defendants' privilege claim is much stronger.

28

-35-

1

2

### (d) The Commission's Role in the Case Does Not Support Disclosure.

3    The agency's role in the litigation is just one factor courts consider when

4    applying the deliberative process privilege.  While SpaceX suggests that the

5    government's role as a party automatically precludes application of the deliberative

6    process privilege, that is not what the cases say.  (See JS 7:17-8:11.)  In *Thomas v.*

7    *Cate*, the petitioner, like SpaceX here, contended that the deliberative process

8    privilege was categorically unavailable when the government's decision-making

9    process was at issue in the litigation.  715 F. Supp. 2d 1012, 1020 (E.D. Cal. 2010).

10   After examining caselaw from other circuits, the court declined to apply

11   petitioner's categorical bar, adopting instead the balancing approach set forth in

12   *FTC v. Warner Communications, Inc.*, 742 F.2d 1156 (9th Cir. 1984).  *Id.* at 1021.

13   In fact, the Commission's role in the litigation weighs *against* disclosure.

14   The purpose of the deliberative process privilege applies most strongly in cases

15   like this, where an agency's decision-making is challenged in court.  Again, the

16   purpose of the privilege is to ensure quality agency decision-making by permitting

17   free and candid internal discussions, including debate, argument, brainstorming,

18   and playing devil's advocate.  This dialogue is most critical when the agency is

19   making decisions that are likely to be challenged in court.  In such cases, it is most

20   important that the agency reach the right result, which it can only do when staff are

21   free to engage in an unrestricted deliberative process.  Thus, the centrality of the

22   Commission's decision-making process to this litigation supports application of the

23   deliberative process privilege.

24   At the very least, the Commission's role in the litigation counts for less than

25   the other factors, all of which strongly support the privilege.  *See Scalia*, 336

26   F.R.D. at 617 (holding that the deliberative process privilege applied even though

27   the government was a party to the litigation because other factors supported

28   application of the privilege).

1

2

### (e)    The Remaining Factors Do Not Support Disclosure of the Withheld Documents.

3      Aside from the main factors discussed above, there are four factors courts

4  may also consider:  the interest in accurate judicial fact finding; the seriousness of

5  the litigation and the issues involved; the presence of issues concerning alleged

6  governmental misconduct; and the federal interest in the enforcement of federal

7  law.  *N. Pacifica, LLC*, 274 F. Supp. 2d at 1122; *see F.T.C. v. Warner Commc'ns*

8  *Inc.*, 742 F.2d at 1161.  None of these other factors require disclosure here.

9      The interest in fact-finding is lessened because of the ample availability of

10  other evidence pertaining to the Commission's decision.  As noted above,

11  Defendants produced documents from the Commissioners' personal email and text

12  message accounts, many of which discuss the Commission's decision at issue in

13  this litigation.  (Batcher Decl. ¶ 16.)  There is a full transcript and administrative

14  record pertaining to the decision.  (*Id.* ¶ 17.)  Defendants produced thousands of

15  documents related to its review and consideration of SpaceX's launch programs

16  and the launch programs of other commercial space launch operators.  (*Id.*)

17      The seriousness of the litigation also supports the deliberative process

18  privilege.  Again, when the most serious issues are before a government body, it is

19  most important that its decision-making process is accurate and robust.  This can

20  only be accomplished if the deliberative process privilege is permitted to shield

21  and thereby foster open and candid discussion and dialogue that goes into

22  formulating that agency decision.

23      While the last two factors—allegations of government misconduct and the

24  federal interest in enforcement of federal law—may tend to support disclosure,

25  these factors are lessened here because of the ample other sources of evidence

26  available to SpaceX.  This is not the case where a government body made a secret

27  decision that a plaintiff is challenging as discriminatory.  Commission staff

28  prepared a detailed report with supporting documents, and the Commission

-37-

conducted an extensive hearing on this matter, which is memorialized in video and in a transcript.  (Batcher Decl. ¶ 18.)  The Commission's decision and findings are in writing.  (*Id.*)  Defendants have produced thousands of documents related to SpaceX and other space launch operators at Vandenberg.  (*Id.*)  These last two factors therefore cannot overcome the imperative that agency decision-making be protected to preserve open and candid dialogue that is the key ingredient in all sound decision-making.

### 4.   The Protective Order Will Not Prevent Harm to the Commission's Decision-Making Process.

The protective order is insufficient to prevent harm to the Commission's decision-making process if the withheld documents were ordered to be produced. (Huckelbridge Decl. ¶ 52.)  This is because the discrete categories of documents over which Defendants are asserting the deliberative process privilege pertain to contentious matters involving SpaceX, many of which are the subject of this lawsuit.  (*Id.*)  If staff knew, for example, that their emails discussing whether SpaceX's launch activities required a CDP would be disclosed to SpaceX or its attorneys, staff would undoubtedly hesitate to play devil's advocate, offer countervailing views, point out contrary evidence or authorities, or debate the merits of the issue.  (*Id.*)  This would impair the Commission's decision-making function by removing a key ingredient to all good decision-making—robust, unrestrained, and critical internal debate.  (*Id.*)  The same rationale applies to the other categories of information being withheld.  (*Id.*)  In each case, disclosure to SpaceX or its attorneys of communications pertaining to the given topic would have an unquestionable chilling effect on open and honest dialogue within the agency, to the detriment of its decision-making function.

While Defendants produced numerous documents under the protective order in this case, those documents pertained to less sensitive issues, such as analysis of biological impacts, potential mitigation strategies, communications with Space

Force, and the like. (*Id.* ¶¶ 5-6.) Only documents pertaining to the most sensitive issues were withheld, because only those issues presented the risk of being chilled if disclosed to SpaceX, even under the protective order. (*Id.*)

### 5.    Given the Specific Circumstances of this Case and the Case Schedule, the Commission Agrees that the Court's Order Should Apply to Related Discovery.

Given the tight timelines in this case, considerations of judicial economy and efficiency, and the fact that discovery is ongoing, it makes sense to apply the Court's guidance in its ruling on this motion to other written and deposition discovery. Defendants reserve their right to assert the deliberative process privilege as to documents and other discovery that is not the subject of this motion, but anticipate the Court's ruling on this motion will provide valuable guidance to the parties with respect to remaining discovery.

### C.    Defendant's Conclusion

The Court should uphold the deliberative process privilege for the documents identified on Privilege Log 3. As set forth in Dr. Huckelbridge's declaration, the documents being withheld are core predecisional and deliberative documents that courts routinely hold are protected by the privilege. Nearly all the factors support the application of the deliberative process privilege in this case. Disclosure of the documents would have a disastrous chilling effect on internal discussions and debate, thereby harming the quality of the Commission's decisions. SpaceX has ample alternative sources of information from among the more than 14,000 documents produced in this case, including the hearing transcript and record; staff reports and supporting documents; internal Commission emails and correspondence; and text messages, social media posts, and emails collected from Defendants' personal accounts. There is simply no reason to invade the very narrow sphere of privileged material that Defendants have withheld in this case. SpaceX's motion should be denied.

JOINT STIP. RE: PLAINTIFF'S MOT.TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS
AND INFORMATION WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS

1

Respectfully submitted,

2

3

Dated: November 25, 2025

VENABLE LLP

4

By:    */s/ Tyler G. Welti*

5

Tyler G. Welti

Colin B. Vandell

6

Mitchell Y. Mirviss (admitted *pro*
*hac vice*)

7

Attorneys for Plaintiff Space
Exploration Technologies Corp.

8

9

Dated: November 25, 2025

10

By:    */s/ Paul Batcher*

11

David Alderson

Paul Batcher

12

California Department of Justice
Office of the Attorney General

13

1515 Clay Street, Suite 2000
Oakland, CA 94612

14

Telephone: (510) 879-0003
Facsimile: (510) 622-2270

15

david.alderson@doj.ca.gov
paul.batcher@doj.ca.gov

16

Attorneys for Defendants

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIP. RE: PLAINTIFF'S MOT.TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS
AND INFORMATION WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS

## SIGNATURE ATTESTATION

Pursuant to L.R. 5-4.3.4(a)(2), I hereby attest that Paul Batcher, counsel for Defendants, concurs in the content of this filing and has authorized this filing.

Dated: November 25, 2025                    VENABLE LLP

                                            By:    /s/ Tyler Welti
                                            Tyler G. Welti
                                            Colin B. Vandell
                                            Mitchell Y. Mirviss (admitted *pro hac vice*)

                                            Attorneys for Plaintiff Space Exploration Technologies Corp.

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2025, I electronically filed the foregoing document with the Clerk of the Court, using the CM/ECF system, which will automatically send email notification of such filing to all counsel who have entered an appearance in this action.

                                            /s/ Tyler Welti
                                            Tyler Welti

JOINT STIP. RE: PLAINTIFF'S MOT.TO COMPEL DEFENDANTS TO PRODUCE DOCUMENTS AND INFORMATION WITHHELD ON DELIBERATIVE PROCESS PRIVILEGE GROUNDS